# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR VARGAS TORRES, | : | |
| Plaintiff | : | No. 4:17-CV-1977 |
| | : | |
| v. | : | Judge Brann |
| | : | |
| CAPT. B. HARRIS, LT. WENDLE, | : | Electronically Filed Document |
| C/O K. MYERS, C/O B. A. OWNS | : | |
| *and* C/O MCCALLISTER, | : | *Complaint Filed 10/30/17* |
| | : | |
| Defendants | : | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                                                                           **Respectfully submitted,**

                                                                           **JOSH SHAPIRO**
                                                                           Attorney General

                                    **By:**  *s/ Allison L. Deibert*
                                                     **ALLISON L. DEIBERT**

**Office of Attorney General**        **Deputy Attorney General**
**15th Floor, Strawberry Square**    **Attorney ID 309224**
**Harrisburg, PA 17120**
**Phone: (717) 705-2532**             **KAREN M. ROMANO**
                                          **Chief Deputy Attorney General**
[adeibert@attorneygeneral.gov](mailto:adeibert@attorneygeneral.gov)    **Civil Litigation Section**

**Date: February 7, 2020**            **Counsel for Defendants**

# INTRODUCTION

Plaintiff Hector Vargas-Torres ("Torres") has brought this claim alleging excessive force against Department of Corrections ("Department") staff. In his various pleadings, Torres gives a version of events that is wholly and completely contradicted by video evidence, which exists for the entirety of the events alleged in the Complaint. Because the video, which cannot be disputed, clearly shows no excessive force was used, Defendants are entitled to summary judgment.

# PROCEDURAL HISTORY

Torres filed a complaint on October 30, 2017 against Defendants Wendle, Owens, Myers, McCallister, and Sichko[1], bringing Eighth Amendment claims for excessive force and failure to intervene, along with state law claims. Doc. 1. Defendants filed an Answer and Affirmative Defenses. Doc. 17.

The parties subsequently engaged in discovery, including a dispute over documents not provided to Torres and his refusal to participate in a deposition. Docs. 29, 41, and 44. The dispute was eventually settled, with the Court specifically finding that Torres was not entitled to third party inmate discovery and his deposition shall proceed. Doc. 55.[2] Torres' deposition was delayed for several months due to a

---

[1] Defendant Sichko (misspelled as Cischko in the complaint) passed away during the pendency of the action. A Suggestion of Death was filed (Doc. 48), which resulted in Defendant Sichko being dismissed from the action. Docs. 54 and 57.

[2] The Court additionally ordered a limited *in camera* review of the redacted records provided to Torres. The undersigned complied with this order on January 28, 2019.

2

medical issue, during which the undersigned provided requested regular updates to the Court. Docs. 59, 60, 65, 68.

Torres filed a premature motion for summary judgment and supporting papers in August 2019. Docs. 69-72. This motion remains pending; however, this Honorable Court entered a scheduling order on November 14, 2019 setting discovery deadlines for January 13, 2020 and a dispositive motion deadline for February 13, 2020. Doc. 78. Torres filed a nearly identical unsupported motion for summary judgment in December 2019. Docs. 81-83.[3] Defendants requested an extension of time to respond to this motion so it could correspond with their own motion for summary judgment. Doc. 85. This motion was granted. Doc. 86. Defendants have now filed their motion for summary judgment. This brief is in support of that motion.

## **STATEMENT OF FACTS**[4]

Before the sequence of events, as captured on video, can be examine, a brief explanation on dry cell placement is required. Department Policy and Procedure 6.3.1 "Facility Security" details the procedures for the use of a dry cell. SMF, ¶4. An inmate

---

[3] Torres appears to attempt to now wedge in two additional claims for his dry cell placement; however, these claims were not included in his Complaint and he has not amended. Therefore, they should be disregarded. *See Treaster v. Conestoga Wood Specialties Corp.*, 2010 WL 2606481, at *3 (M.D.Pa. June 25, 2010) ("courts need not consider additional claims that are raised for the first time in briefing").

[4] Pursuant to Local Rule 56.1, Defendants have filed a separate Statement of Undisputed Material Facts ("SMF") and a set of exhibits. The paragraphs will be identified throughout this brief when appropriate.

may be placed in a dry cell when he has ingested an item. SMF, ¶5. Upon placement in a dry cell, the inmate is handcuffed to the bed by security an arm to the bunk furthest away from the toilet. SMF, ¶6. The medical department examines the restraint to ensure proper circulation. SMF, ¶6. Every two hours, the handcuffs must be removed so that the inmate can exercise his arm. SMF, ¶6. Even if an inmate refuses the exercise, the medical department must check an inmate's circulation. SMF, ¶9. These checks are called "dry cell exercises" and are recorded on video. SMF, ¶¶7 and 10.

With that context in mind, the following took place on April 18, 2017. Torres had swallowed a razor blade and went to the hospital. SMF, ¶1. The razor blade was not removed at the hospital. SMF, ¶2. Therefore, when he was returned to SCI Huntingdon, he was placed in a dry cell and secured to the wall. SMF, ¶¶3 and 11.

On April 18, 2017 at approximately 6:30AM, Torres was scheduled for a dry cell exercise. SMF, ¶13. A team consisting of Defendants Owens, Myers, and Wendle, Officer Barger, and LPN Wgaman, was assembled to perform this task. SMF, ¶¶14 and 15. Torres did not want to exercise. SMF, ¶16. The team entered the dry cell to attempt to check his circulation. SMF, ¶17. Torres was covered with a blanket and did not comply with the several attempts to check his circulation. SMF, ¶¶18 and 21. Defendant Owes used a control technique to secure Torres' hand and to stop Torres from pulling the blanket over his hand. SMF, ¶19. Defendants Owens and

Myers attempted to remove the blanket covering Torres when he became combative and struggled. SMF, ¶¶22 and 23. Therefore, Defendants Owens and Myers to utilize a control technique to restrain him by securing his free arm and legs. SMF, ¶24. At no time was Torres struck, slapped, punched, nor did he have his head banged off the bunk or the wall. SMF, ¶29.

Two hours later, at approximately 8:30AM, Torres was scheduled for another dry cell exercise. SMF, ¶30. Again, he did not want to exercise, and became verbally combative almost immediately. SMF, ¶31. He began yelling "assault" as soon as his door was open and before the officers were in his cell. SMF, ¶32. Much like the first exercise, Torres became resistant after Defendants Owens and Myers removed the blanket. SMF, ¶¶35 and 36. And much like the first exercise, Defendants Owens and Myers were required to use control techniques to restrain his free arm and legs. SMF, ¶37. After the attempted circulation check, the officers began to walk away when Defendant Myers retrieved something he had dropped when on Torres' legs. SMF, ¶¶38 and 39. Torres jumped up and in the direction of Defendant Myers and so Defendant Owens, sensing danger, pushed Torres away. SMF, ¶¶40 and 41. Again, at no time was Torres struck, slapped, punched, nor did he have his head slammed off the bunk. SMF, ¶43.

## QUESTIONS PRESENTED

5

**I.      DOES TORRES FAIL TO STATE AN EIGHTH AMENDMENT CLAIM?**

**II.     DOES TORRES' STATE LAW CLAIMS FAIL?**

**III.    ARE DEFENDANTS ENTITLED TO QUALIFIED IMMUNITY?**

## ARGUMENT

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F.Supp.2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F.Supp.2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  "The non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex Corp.*, 477 U.S. at 324. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. 242, 247-48. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco,* 651 F.3d 367, 373 (3d Cir. 2011)(*citing Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson*, 477 U.S. at 249. Indeed, to defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue").

7

## I. AN EIGHTH AMENDMENT CLAIM CANNOT BE SUSTAINED.

The crux of Torres' Complaint, as refined by his motion for summary judgment, is that the Defendants violated his Eighth Amendment rights when Defendants Owens and Myers used excessive force against him while he was in a dry cell at SCI Huntingdon and that Defendants McCallister and Wendle failed to intervene. However, the undisputed facts captured by video show that any force that was used was necessary and *de minimus*. Accordingly, Defendants are entitled to summary judgment.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life (i.e., food), clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Part of the determination in assessing whether a particular deprivation in a confinement claim amounts to cruel and inhumane treatment is the duration of the Plaintiff's exposure to the alleged unconstitutional conditions and the "totality of the circumstances." *Hinterlong v. Hill*, 2006 WL 2303106 *5-6 (E.D. Pa. August 8, 2006); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996).

### A. Defendant Myers and Owens Did Not Use Excessive Force.

The Eighth Amendment unquestionably protects inmates from the "wanton and unnecessary infliction of pain." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir.

8

2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In order to constitute cruel and unusual punishment, the use of force must be "repugnant to the conscience of mankind" and "inconsistent with contemporary standards of decency." *Whitley*, 475 U.S. at 327. Prison officials are to be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22.

Specifically, in inmate excessive force cases, the pivotal inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). To make this inquiry, the following factors should be considered: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. *Smith*, 293 F.3d at 649 (*quoting Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) and citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimus* uses of physical

9

force, provided that the use of force is not of a sort repugnant to the conscience of mankind. The Third Circuit has found that "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002). Indeed, courts regularly dismiss prisoner excessive force cases when the amount of force used was *de minimus*. *See, e.g., Reyes*, 54 Fed. Appx. at 47 (3d Cir. 2002) (punching inmate in shoulder who looked like he was about to spit on officer *de minimus* use of force that could not state excessive force claim); *Taylor v. Sanders*, 2012 WL 4104871 at *7 (M.D. Pa. 2012) (pushes from behind and physical contact in the back without evidence of injury is *de minimus* use of force that cannot sustain an excessive force claim); *Caldwell v. Luzerne County Corrections Facility Management Employees*, 732 F.Supp.2d 458, 470 (M.D. Pa. 2010) (single punch to back of inmate's head was *de minimus* force that cannot give rise to excessive force claim).

In this case, there is video for both allegations of excessive force that occurred on April 18, 2017, which clearly contradicts Torres' version of events in his Complaint[5]. To wit, no Defendant ever strikes him or slams his head off of the bunk. SMF, ¶¶29 and 43. Therefore, this ludicrous claim cannot be sustained.

---

[5] When there is a video that contradicts the plaintiff's version of events, the plaintiff's version is not to be credited in considering whether to grant a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372 at 378-79 (2007). Summary judgment is

Further, any force that was used was necessary. Torres' circulation needed to be checked, which was the only reason staff entered the cell. SMF, ¶¶9, 17 and 34. When he struggled against Defendants Owens and Myers removing the blanket, the officers were required to maintain control because Torres could have kicked or punched Department staff, including a nurse, with his free arm and leg. SMF, ¶¶22-24 and 35-37. His limbs and body were merely secured to stop them from moving and the force stopped as soon as the circulation check was complete. SMF, ¶24 and 37; Video 1 and 2, generally. Such a *de minimus* application of force can hardly be found to be sadistic and wanton when it was applied in good faith and only used to maintain control when Torres began to struggle.

At one point, Defendant Owens pushes Torres. SMF, ¶41. This was a small push and was only because it appeared that Torres was moving towards Defendant Myers while he was retrieving a dropped item. SMF, ¶39 and 40. Defendant Owens was simply ensuring Torres did not have a chance to hit Defendant Myers while his head was down. This small push clearly did not cause Torres' head to bounce off the bunk. SMF, ¶43. Indeed, Torres' head never hits the bed or the wall. SMF, ¶43.

---

regularly granted for the defendants in inmate excessive force claims that are contradicted by video evidence. *See, e.g., Fennell v. Cambria County Prison*, 607 Fed.Appx. 145 (3d Cir. 2015); *Nifas v. Coleman*, 528 Fed.Appx. 132 (3d Cir. 2013).

Because Defendants utilized *de minimus* force that was necessary to maintain control of Torres, they are entitled to summary judgment on the excessive force claim.

### B.     Defendants Wendle and McCallister Did Not Fail to Intervene.

To the extent Torres' complaint brings a failure to protect claim against Defendants Wendle and McCallister, this claim must fail because the force was not excessive. The Third Circuit has found that a corrections officer's failure to intervene in a beating can be the basis of liability if there is a reasonable opportunity to intervene and the officer simply refused to do so. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The brevity of an incident of force can defeat a failure to intervene claim. *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018). Thus, liability can only attach if the opportunity is "realistic and reasonable." *Shover*; *Smith*, 293 F.3d at 651.

In this case, for the same reasons outlined above, an Eighth Amendment claim against Defendants Wendle and McCallister cannot be sustained. First, the force used by Defendants Owens and Myers took a matter of seconds. *See* Video 1 and 2, *generally*. As a result, there was no reasonable opportunity for either to intervene. Further, there was no "beating" that occurred. As outlined above, the force that was used was required to maintain control of Torres and was *de minimus*. Therefore, there was nothing to actually intervene in. As a result, Defendants Wendle and McCallister are entitled to summary judgment for any Eighth Amendment claim.

## II. PENDANT STATE LAW CLAIMS FAIL.

In addition to the Eighth Amendment claim, Torres attempts to bring pendant state law claims of assault and battery. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). As outlined, *supra*, there was no intentional attempt to cause an injury because the Defendants were merely attempting to maintain control of Torres and used *de minimus* force to achieve this goal. Thus, any force that was applied was for a legitimate penological purpose and not for any malicious or sadistic intent. Further, the video does not reflect an injury suffered by Torres during the force and therefore, batter has not been achieved. Therefore, Defendants are entitled to summary judgment on these claims.[6]

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

It is well-established that a state official "is entitled to qualified immunity where 'a reasonable officer could have believed that his or her conduct was lawful, in light of clearly established law and the information in the officer's possession.'" *Esposito v. Galli*, 2006 WL 2322487, *7 (M.D.Pa. Aug. 9, 2006) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997)). The Third Circuit Court of Appeals has

---

[6] In the alternative, the Court should decline to exercise jurisdiction over the state law claims. 28 U.S.C. 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).

adopted the Supreme Court's two-prong qualified immunity test announced in *Saucier v. Katz*, 533 U.S. 194 (2001). Therefore, in order to determine whether a state official is entitled to qualified immunity, a district court must ask whether the facts as alleged in the complaint make out a violation of an actual constitutional right, and whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Officials who reasonably but mistakenly conclude that their actions were lawful are still entitled to qualified immunity. *Claggett v. Frantz*, 2011 WL 846092, *6 (M.D. Pa. Feb. 1, 2011) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Here, the facts do not demonstrate that the Defendants have violated Torres' Constitutional rights, meeting the first prong of *Saucier*. However, even if the Court determines that the Defendants violated Plaintiff's Eighth Amendment rights, these rights were not clearly established given the facts of this case and the information in the Defendants' possession. The clearly established case law recognizes the constitutionality of *de minimus* force that is used to maintain control and not for sadistic purposes. Defendants were simply doing their jobs on April 18, 2017 when they went in to perform the dry cell exercise pursuant to policy. Further, the Courts have not invalidated DOC Policy 6.3.1 which outlines dry cell exercises and the requirement for the medical department to check circulation. Therefore, Defendants could not have reasonably have foreseen that performing a dry cell exercise and using

14

*de minimus* force to restrain a struggling inmate violated the Constitution in light of the established case law. Accordingly, they are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of the Defendants.

                **Respectfully submitted,**

                **JOSH SHAPIRO**
                **Attorney General**

        **By:**  *s/ Allison L. Deibert*
                **ALLISON L. DEIBERT**

**Office of Attorney General**      **Deputy Attorney General**
**15th Floor, Strawberry Square**   **Attorney ID 309224**
**Harrisburg, PA 17120**
**Phone: (717) 705-2532**           **KELI M. NEARY**
                                            **Chief Deputy Attorney General**
[adeibert@attorneygeneral.gov](mailto:adeibert@attorneygeneral.gov)    **Civil Litigation Section**

**Date:  February 7, 2020**         **Counsel for Defendants**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR VARGAS TORRES,** | : | |
| Plaintiff | : | No. 4:17-CV-1977 |
| | : | |
| v. | : | Judge Brann |
| | : | |
| **CAPT. B. HARRIS, LT. WENDLE, LT. R. CISCHKO, C/O K. MYERS, C/O B. A. OWNS** and **C/O MCCALLISTER,** | : | **Electronically Filed Document** |
| | : | *Complaint Filed 10/30/17* |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Allison L. Deibert, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on February 7, 2020, I caused to be served a true and correct copy of the foregoing document titled Defendants' Brief in Support of Their Motion for Summary Judgment to the following:

**VIA U.S. MAIL**

**Smart Communications/PADOC**
**Hector Vargas Torres, JT-1711**
**SCI Huntingdon**
**PO Box 33028**
**St. Petersburg, FL 33733**
*Pro Se Plaintiff*

                                *s/ Allison L. Deibert*
                                **ALLISON L. DEIBERT**
                                Deputy Attorney General