# EXHIBIT 1

RECEIVED
Office of Attorney General

AUG 2 7 2019

Civil Law Division

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PA

\* \* \* \* \* \* \* \* \*

HECTOR VARGAS        \*

TORRES,              \*

    Plaintiff        \*    Case No.

    vs.              \*    4:17-CV-1977

CAPT. B. HARRIS,     \*

LT. WENDLE,          \*

LT. R. CISCHKO,      \*

CO K. MYERS,         \*

CO B.A. OWENS and    \*

CO MCCALLISTER,      \*

    Defendants        \*

\* \* \* \* \* \* \* \*

ORIGINAL

DEPOSITION OF

HECTOR VARGAS TORRES

July 25, 2019

Any reproduction of this transcript
is prohibited without authorization
by the certifying agency.

Sargent's Court Reporting Service, Inc.
(814) 536-8908

1                    D E P O S I T I O N

2                         O F

3    HECTOR VARGAS TORRES, taken on behalf

4    of the Defendants herein, pursuant to

5    the Rules of Civil Procedure, taken

6    before me, the undersigned, Lacey C.

7    Scott, a Court Reporter and Notary

8    Public in and for the Commonwealth of

9    Pennsylvania, at SCI Huntingdon, 1100

10   Pike Street, Huntingdon, Pennsylvania,

11   on Thursday, July 25, 2019, beginning

12   at 10:41 a.m.

13

14

15

16

17

18

19

20

21

22

23

24

25

Sargent's Court Reporting Service, Inc.
(814) 536-8908

3

1                    A P P E A R A N C E S

2

3    HECTOR VARGAS TORRES, PRO SE

4         PLAINTIFF

5

6    ALLISON DEIBERT, ESQUIRE

7    Office of Attorney General

8    Litigation Section

9    Strawberry Square, 15th Floor

10   Harrisburg, PA   17120

11        COUNSEL FOR DEFENDANTS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                                I   N   D   E   X

2

3        WITNESS: HECTOR VARGAS TORRES

4        EXAMINATION

5            By Attorney Deibert            7  -  75

6        CERTIFICATE                            76

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1                        EXHIBIT PAGE

2

3                                              PAGE

4    NUMBER          DESCRIPTION        IDENTIFIED

5    Exhibit 1       Complaint              45

6    Exhibit 2       Drawing                58

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

# OBJECTION PAGE

ATTORNEY                                    PAGE

NONE MADE

7

1              S T I P U L A T I O N

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

3    (It is hereby stipulated and agreed by

4    and between counsel for the respective

5    parties that reading, signing,

6    sealing, certification and filing are

7    waived.)

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

9              P R O C E E D I N G S

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

11            HECTOR VARGAS TORRES,

12   CALLED AS A WITNESS IN THE FOLLOWING

13   PROCEEDING, AND HAVING FIRST BEEN DULY

14   SWORN, TESTIFIED AND SAID AS FOLLOWS:

15                   - - -

16             EXAMINATION

17                   - - -

18   BY ATTORNEY DEIBERT:

19   Q.      All right.

20           Good morning, Mr. Torres.  My

21   name is Allison Deibert.  I represent

22   the Commonwealth in a lawsuit that you

23   have filed against Captain Harris,

24   Lieutenant Wendle, Lieutenant Cischko

25   and Corrections Officers Myers, Owens

8

1    and McCallister.   The Docket Number is

2    17-1977.

3           I'm here today at SCI

4    Huntingdon to take your deposition.

5    Have you ever been deposed before?

6    A.      Yeah, from Camp Hill.

7    Q.      So you have been deposed.   So

8    you are aware that you have just been

9    placed under oath by the court

10   reporter.   She is taking down

11   everything that you say.

12          This is just a question and

13   answer session.   It is to gather

14   information and, you know, basically,

15   you know, have you tell me what

16   happened and what was the basis of

17   your Complaint.

18          So that being said, since you

19   have been deposed before, I won't go

20   through all of the rules, but the

21   number one rule is basically we need a

22   clear record.   So let me finish a

23   question, asking a question before you

24   start answering and I in turn will let

25   you finish answering before I ask the

9

1    next one, so that we're not talking

2    over each other.

3           Does that make sense to you?

4    A.    Yeah.

5    Q.    If at any time you don't

6    understand my question or maybe you

7    don't hear me, just let me know.  I

8    can repeat it.  I can rephrase the

9    question.  But if you do answer a

10   question, then I'm going to assume

11   that you understood what I asked.

12          Is that fair?

13   A.    Yes.

14   Q.    Okay.

15          So with that, I just want to

16   get some background information.  What

17   is your full name?

18   A.    Hector Vargas Torres.

19   Q.    And we're currently at SCI

20   Huntingdon.

21          Is that correct?

22   A.    Yes.

23   Q.    How long have you been here?

24   A.    Three years.

25   Q.    And before SCI Huntingdon, were

10

1    you housed at a different prison?

2    A.    Yeah.

3    Q.    Where were you housed before?

4    A.    Last one was Fayette.

5    Q.    Fayette, okay.

6          Maybe I should ask it this way,

7    how long have you been incarcerated?

8    A.    Eight.

9    Q.    Eight years.  And it sounded

10   like you said you were at Camp Hill.

11   So aside from Camp Hill, Fayette and

12   Huntingdon, have you been anywhere

13   else?

14   A.    Yes, I went from Retreat, Camp

15   Hill to Fayette and here.

16   Q.    Thank you.  I appreciate that.

17         And here at SCI Huntingdon,

18   where in the prison are you housed,

19   what block?

20   A.    B Block.

21   Q.    Okay.

22         And is that the RHU?

23   A.    No.

24   Q.    Is that general population?

25   A.    Yeah.

11

1    Q.    Okay.

2          And how long have you been in

3    general population?

4    A.    Eight or nine months.

5    Q.    Do you have a cell mate?

6    A.    No.  I'm Z Code.

7    Q.    Do you know how long you have

8    been Z Code?

9    A.    Eight years now.

10   Q.    For the entire time that you

11   have been incarcerated?

12   A.    (Indicates yes).

13   Q.    Do you know why you are a Z

14   Code?

15   A.    It is because of two SMUs I

16   have been on.

17   Q.    So you were in an SMU?

18   A.    Yes.

19   Q.    Where were you in SMUs?

20   A.    Camp Hill and Fayette.

21   Q.    Are you in any --- is the B

22   Block any kind of specialized housing?

23   A.    Just regular block.

24   Q.    It is not a mental health unit

25   or anything like that?

12

1    A.     No.

2              GUARD:

3              It is all single cell.

4              ATTORNEY DEIBERT:

5              Thank you.

6    BY ATTORNEY DEIBERT:

7    Q.     So I want to turn to the events

8    of the Complaint and that's basically

9    why we're here today.  So in your

10   Complaint you are alleging an assault

11   that took place by these officers on,

12   I believe the date was April 18th,

13   2017.

14             Is that correct?

15   A.     Yeah.

16   Q.     Was that here at SCI

17   Huntingdon?

18   A.     Yeah.

19   Q.     And on April 18th, 2017, here

20   at SCI Huntingdon, where were you

21   housed?

22   A.     On BB.

23   Q.     On BB?

24   A.     Yeah, that's the POC cells.

25   Q.     What is a POC?

13

1    A.      Just like --- like mental

2    health, like they put you there like

3    suicide watch and all that stuff.

4    Q.      Were you on suicide watch?

5    A.      Just a razor that I swallowed.

6    Q.      So you were in the POC on April

7    18 because you had swallowed a razor?

8    A.      (Indicates yes).

9    Q.      And how long had you been in

10   the POC?  Do you know when they put

11   you in?

12   A.      Went in there 15th to the 26th.

13   Q.      So from April 15th to April

14   26th you were in the POC.  Okay.

15           When did you swallow the razor?

16   A.      On the 15th.

17   Q.      On the 15th, okay.

18           So you had swallowed a razor

19   blade.  Do you know why they would

20   have put you in a POC because of that?

21   A.      They said it is something about

22   suicide and all that.

23   Q.      Okay.

24           Do you know what your mental

25   health code is?

14

1   A.      It was a C.

2   Q.      It was a C at that time ---

3   A.      Yeah.

4   Q.      --- in April of 2017?

5           What is it now?

6   A.      It is a B.

7   Q.      A B Code.  Do you have a copy

8   of the inmate handbook?

9   A.      Not with me.

10  Q.      I know you don't have it with

11  you, but have you received a copy?

12  A.      Yeah, I got the old one.

13  Q.      When did you receive that?

14  A.      Got that two years back when I

15  was in O.

16  Q.      Two years back?

17  A.      Yeah.

18  Q.      So you have had it for about

19  two years.  Are you familiar with the

20  grievance process?

21  A.      Yeah.

22  Q.      Can you explain it to me in

23  your own words?

24  A.      Just like --- I don't even know

25  how it is.  You just --- just like you

1    got to go through the whole process,

2    the way through it.  I file requests

3    first and then to get it resolved

4    through that.  Then at that --- then

5    we got to file the grievances.

6    Q.    Let me back up for a second.

7    You said file requests first.  What

8    are these requests?

9    A.    Request to staff.

10   Q.    Request to staff member?

11   A.    Yeah.

12   Q.    Is that kind of like an attempt

13   at an informal ---

14   A.    Yeah.

15   Q.    --- resolution?  Okay.

16         And then if that doesn't

17   resolve the problem you file a

18   grievance?

19   A.    Yes.

20   Q.    And do you know what happens

21   after you file a grievance?

22   A.    Well, you got to wait until you

23   get a response.  And then you got to

24   appeal the response, go the

25   superintendent and then you go to the

16

1    central office.

2    Q.    So there's three levels of

3    appeals is what it sounds like?

4    A.    Yeah.

5    Q.    Okay.

6          Do you file grievances

7    regularly?

8    A.    Once in a while.

9    Q.    Once in a while

10   A.    Mostly medical because of my

11   arm.

12   Q.    Okay.

13         What is going on with your arm?

14   I see it is in a sling.

15   A.    Still didn't heal from the

16   surgery.

17   Q.    When was your last surgery?

18   A.    Eight months.

19   Q.    Really.

20   A.    I've been in and out of

21   Smithfield.

22   Q.    Well, I know that we have had

23   the deposition scheduled and then you

24   couldn't come back, I think it was a

25   problem with your shoulder or your

17

1    elbow?

2    A.      Yeah, my elbow.

3    Q.      Your elbow.

4    A.      Had two surgeries.

5    Q.      Two surgeries.  Where were

6    those surgeries performed?

7    A.      J.C. Blair.

8    Q.      So you just said the majority

9    of the grievances that you file are

10   medical ---

11   A.      Yeah.

12   Q.      --- related?  Okay.

13           And you said once in a while,

14   so it is not something that is like

15   once a week ---

16   A.      No.

17   Q.      --- or anything like that?

18           Would you say once a month?

19   A.      Yeah, like once a month.

20   Q.      Once a month, okay.

21           So you had said that you are

22   now a B Code.  In April 2017, you were

23   a C Code.  Other than those two, have

24   you ever been anything --- have you

25   ever been coded any other

18

1   designation ---

2   A.     No.

3   Q.     --- that you know?

4          I should have said this at the

5   beginning.  If at any time you don't

6   know the answer to a question, it is

7   perfectly okay to say you don't know.

8   A.     The only condition the psych

9   got me --- something about like anti-

10  social or something like that.

11  Q.     Is that like some kind of

12  mental health diagnosis maybe?

13  A.     Well, she said I got to get

14  mental health classes ordered by the

15  Judge, but they don't got it here.

16  Q.     So let me back up.  A Judge has

17  ordered you to take a mental health

18  class?

19  A.     Yes.

20  Q.     What case was that where a

21  Judge ordered you?

22  A.     Berks.

23  Q.     Was it a criminal case or a

24  civil case?

25  A.     Criminal.

19

1    Q.     Criminal case, okay.

2           And you said --- you had

3    referenced she?

4    A.     Miss Cousins.

5    Q.     I'm sorry.  Who?

6    A.     Miss Cousins.

7    Q.     Who is Miss Cousins?

8    A.     She is the head psych.

9    Q.     Head of psych here at SCI

10   Huntingdon?

11   A.     Yeah.

12   Q.     So Miss Cousins is trying to

13   get you into a mental health class

14   or ---?

15   A.     Well, I seen the one --- she

16   referred me to somebody from Ohio.

17   And she said she was going to refer me

18   to somebody within six months.  I have

19   not seen nobody yet.  So I could get

20   into those classes, but according to

21   one of the psychs here, they said they

22   don't got that class that I was

23   supposed to be in in the jail.  They

24   only got it in the state hospital.

25   Q.     Okay.  I see.  Okay.

20

1    Do you know what class you are
2    supposed to take?
3    A.    Well, they say something like
4    depression and dealing with loss of
5    family and all that stuff.
6    Q.    Okay.
7          So back to my question, other
8    than a B Code and a C Code, were you
9    ever anything different?
10   A.    No.
11   Q.    Are you familiar with the
12   misconduct hearing process or the
13   misconduct process as a whole?
14   A.    Yes.
15   Q.    Could you explain that to me?
16   What happens if say something happens
17   and you get a misconduct, what happens
18   then?
19   A.    Well, you go to the hearing and
20   then you put in a PRC, and then to a
21   superintendent, it goes to the central
22   office.
23   Q.    So again there is kind of an
24   appeals process?
25   A.    Yeah.

21

1    Q.    But you can have a hearing?

2    A.    Yes.

3    Q.    Who is that hearing before?

4    A.    I don't even know his name.

5    Q.    I don't need to know a specific

6    name, just a general title?  Is it a

7    Judge, is it ---?

8    A.    Like just --- he used to be a

9    CO.

10   Q.    Like a hearing examiner?

11   A.    Yeah.

12   Q.    Can you grieve a misconduct?

13   A.    No.

14   Q.    Okay.

15   A.    I tried it.  You get denied.

16   Q.    So before the incident in the

17   Complaint on April 18, 2017, have you

18   had contact with the Defendants?  And

19   by that I mean, did you know them?

20   A.    Yeah, I knew they all work in

21   the hole.

22   Q.    They all work in the hole?

23   A.    Yeah.

24   Q.    What is the hole?

25   A.    RHU.

22

1    Q.      And what block is the RHU on?

2    A.      G Block.

3    Q.      So you had been housed in the

4    RHU previously?

5    A.      Yes.

6    Q.      When were you housed in the

7    RHU?

8    A.      Like two years back.

9    Q.      Two years back.  Okay.

10          So all of the Defendants,

11   Captain Harris, Lieutenant Wendle,

12   Lieutenant Cischko, Myers, Owens and

13   McCallister, they were all officers on

14   G Block?

15   A.      Yeah.

16   Q.      Okay.

17          And how long were you in the

18   RHU?

19   A.      Two years.

20   Q.      So you were there for two

21   years.  So you had contact with them

22   for two years?

23   A.      Yeah.

24   Q.      Okay.

25          What type of relationship would

23

1    you say you had with them?  And by

2    that I mean, I understand that they

3    are correction officers, but was it a

4    contentious relationship?  Was it a

5    civil relationship?  What type of

6    relationship would you say you had?

7    A.    I never like spoke to anybody

8    down there.  Just --- just when they

9    get mad, I just start flipping out.

10   Q.    Okay.

11         When you get mad you start

12   flipping out?

13   A.    Yeah.

14   Q.    What does that mean?

15   A.    When they like --- because I

16   used to get --- they would burn you on

17   food trays or a shower, you know, you

18   just get mad about it.

19   Q.    Did any of these Defendants do

20   that to you?

21   A.    Yeah.

22   Q.    In the RHU, though?

23   A.    Yeah, in the hole.

24   Q.    So you went into the POC you

25   said on April 15, 2017.

24

1          Correct?

2     A.     Yeah.

3     Q.     Did anything happen on April

4     16th?

5     A.     Yeah, that's when it all

6     started.

7     Q.     When all ---?

8     A.     The assaults and all that.

9     Q.     What started on April 16th?

10    A.     Yeah, 16th, 17th, 18th, all

11    those three days.

12    Q.     So for three days they

13    assaulted you is what you are saying?

14    A.     Yeah.

15    Q.     Did you ever complain about

16    assaults that occurred on the 16th and

17    17th?

18    A.     Yeah, I told the captain about

19    it.  He said he checked the video and

20    nothing happened.

21    Q.     I believe that you were secured

22    to the wall while you were in the POC.

23          Is that correct?

24    A.     Yeah.

25    Q.     How long were you --- what day

25

1    did you begin to be secured to the

2    wall?

3    A.    From the 15th to the 26th.

4    Q.    So the entire time.  Do you

5    know why you were secured to the wall?

6    A.    Because of the razor in my

7    stomach.

8    Q.    And how were you secured to the

9    wall?

10   A.    Handcuff.

11   Q.    Was the POC a dry cell?

12   A.    It's like a dry cell.

13   Q.    And it is my understanding that

14   a dry cell is a cell with no running

15   water.

16         Is that correct?

17   A.    Yeah.

18   Q.    Okay.

19         So when you are secured to the

20   wall in this POC, do they --- and by

21   they, I mean prison officials, are you

22   required to have some type of relief

23   from that securing?

24   A.    Well, what they do is move one

25   arm, like switch arms and all that.

26

```
1    Q.     Okay.

2           And how often does that happen?

3    A.     Every two hours.

4    Q.     Every two hours, okay.

5           And can you refuse to have that

6    switched out?

7    A.     Yeah.

8    Q.     You can.  And have you refused

9    --- let me say this, did you refuse

10   during this time?

11   A.     Well, I refused all the medical

12   treatment and all that.

13   Q.     You refused the medical

14   treatment?

15   A.     Because I was on a hunger

16   strike.

17   Q.     So you refused medical

18   treatment, because you were on a

19   hunger strike?

20   A.     Yes.

21   Q.     Why were you on a hunger

22   strike?

23   A.     Because of the death in my

24   family and all that.

25   Q.     I didn't realize there was a
```

27

1    death in your family.  Who passed

2    away?

3    A.    My grandmother, the one that

4    raised me.

5    Q.    Your grandmother, okay.

6          Do you know when she passed

7    away?

8    A.    Two years back.

9    Q.    In relation to the incident

10   --- in relation to --- between April

11   15th and April 26th, how close in time

12   had she passed away?

13   A.    Two months.

14   Q.    Two months before, okay.

15         Okay.  So I'm going to talk

16   about April 18th, 2017, that's what

17   you have talked about in your

18   Complaint.  So there is one allegation

19   --- there is two different

20   allegations, two different times.  So

21   I'm going to break it down by time

22   period.

23         So between 6:00 and 6:30 a.m.

24   on April 18th, 2017, can you tell me

25   what happened?

28

1    A.      Well, I told them I didn't want

2    no medical treatment.

3    Q.      Let me --- I'm sorry.  I just

4    want to stop you right there.  You

5    told who that you didn't want medical

6    treatment?

7    A.      The nurse and Myers.

8    Q.      The nurse and Myers.  So the

9    nurse and Myers came to your cell?

10   A.      Yeah.

11   Q.      Yes, okay.

12           And do you know why they came

13   to your cell?

14   A.      Every two hours they got to

15   come and ask if you want to get, you

16   know, your handcuff moved to another

17   arm or get medical, what they call ---

18   like to check your circulation and

19   your blood and all that stuff.

20   Q.      So that's every two hours as

21   well?

22   A.      Yeah.

23   Q.      And so that's why they came to

24   your cell ---

25   A.      Yeah.

29

1    Q.    --- to do that, okay.

2         And you told them ---?

3    A.    Told them I did not want it.

4    Q.    And then what happened?

5    A.    So when the nurse tried to like

6    check my circulation, I told her ---

7    so when I moved my arm, they all

8    started jumping on me like if I was

9    aggressive.  So when I try to get up,

10    that's when he slapped my head on the

11    bunk.

12    Q.    You said they all, so who else

13    was there?

14    A.    Myers, Owens and the

15    Lieutenant.

16    Q.    Lieutenant Wendle or Lieutenant

17    Cischko?

18    A.    Wendle.

19    Q.    Okay.

20         So they all were there and

21    you're laying on the bed.  What arm is

22    secured to the wall?

23    A.    My right.

24    Q.    Your right?

25    A.    Uh-huh (yes).

30

1   Q.     So can you describe to me where

2   Myers was?

3   A.     He was on my left side.

4   Q.     Was he up by your shoulder or

5   down by your legs?

6   A.     Like by my shoulder.

7   Q.     And where was Owens?

8   A.     He was like on the other side

9   back by my head.

10   Q.     So on the right side of you up

11   by your shoulder?

12   A.     Yeah.

13   Q.     Where was Lieutenant Wendle?

14   A.     By my feet.

15   Q.     Okay.

16         So you had just testified that

17   you went to move your arm because you

18   didn't want medical treatment.

19         Correct?  And then they all

20   jumped on you?

21   A.     Yeah.

22   Q.     I want to break it down by each

23   person.  What did Myers do?

24   A.     He tried to hold my arm tight

25   even though it was already cuffed to

31

1    the wall.  So when he twisted, I tried
2    to remove his arm and he said that I
3    tried to bite him.
4    Q.     Okay.
5           And you didn't try to bite him?
6    A.     No, I was just trying to push
7    him away, because he was hurting my
8    arm.
9    Q.     So he was holding your arm?
10   A.     Yeah.
11   Q.     What did Owens do?
12   A.     He tried to hold my left arm so
13   I would not keep getting up.
14   Q.     And what about Lieutenant
15   Wendle?
16   A.     He was just holding my feet.
17   Q.     Holding your feet down.  Were
18   you struggling at all?
19   A.     Well, I was trying to like
20   move, you know, so I could move,
21   trying to like sit up so I could get
22   away from them.  And then they didn't
23   let me move.
24   Q.     So it sounds like you were
25   trying to --- you were refusing the

32

1  medical treatment and you were trying

2  to not be held down by them, but they

3  were holding you down?

4  A.     Yeah.

5  Q.     Did anything else happen?

6  A.     Just when he slammed my head on

7  the bunk.

8  Q.     Who slammed your head on the

9  bunk?

10  A.     Myers.

11  Q.     Myers did, okay.

12         And how long did they hold you

13  down?

14  A.     Like five, ten minutes.

15  Q.     Five to ten minutes.  And what

16  was going on that entire --- in that

17  entire five to ten minutes, were you

18  struggling?

19  A.     I was trying to --- like trying

20  to like get some of them from the top

21  of me.  And that's when one of them

22  dropped the radio and I tried to kick

23  the radio to the floor.

24  Q.     Who dropped a radio?

25  A.     Myers.

33

1   Q.     Myers dropped a radio and you

2   tried to kick it to the floor.   Why

3   did you try to kick it to the floor?

4   A.     I didn't want them to go on top

5   of me and make more aggression on my

6   stomach and all that.

7   Q.     So for the entire time, was

8   Myers --- Myers on your left side you

9   said.

10          Correct?

11   A.     Yes.

12   Q.     Was he told holding your arm

13   down the entire time?

14   A.     Yes.

15   Q.     And Owens was holding your

16   right arm down the entire time?

17   A.     (Indicates yes).

18   Q.     And Wendle was holding your

19   feet down the entire time?

20   A.     (Indicates yes).

21   Q.     What was Lieutenant Cischko

22   doing?

23   A.     Just telling me to calm down,

24   calm down.   And I just told him how do

25   you want me to calm down when you got

34

1    all of the COs on top of me.

2    Q.    What was Captain Harris doing?

3    A.    He was doing his rounds, then

4    he came in.

5    Q.    So did he see what was

6    happening?

7    A.    He didn't see it, but I told

8    him what happened.  And he said I'm

9    going to check the video and all that.

10   Q.    Okay.

11         We'll come back to that one,

12   just because we have another time

13   period to go through.  I want to make

14   sure we get the time right.

15         So this was --- was this

16   videotaped?

17   A.    It was videotaped.

18   Q.    Who was holding the camera, if

19   you know?

20   A.    I can't remember his name.

21   Q.    Okay.

22         But is he one of the

23   Defendants?

24   A.    Yeah.

25   Q.    He is one of the Defendants.

Sargent's Court Reporting Service, Inc.
(814) 536-8908

35

1    Okay.

2           So other than Wendle ---

3    McCallister, I forgot to ask you.

4    A.      He is the one that runs the

5    POC.

6    Q.      He runs the POC.  What does

7    that mean, he runs the POC?

8    A.      He is in charge of inmates

9    being in there.

10   Q.      So where was he at 6:00 ---

11   between 6:00 and 6:30 a.m. on April

12   18, 2017?

13   A.      At the POC desk.

14   Q.      He is at the POC desk, okay.

15          So after this occurs in the

16   cell and they leave, what happens?

17   A.      Well, I told McCallister to get

18   a hold of one of the deputies.  He

19   said I'm trying to get a hold of some

20   shift commander and trying to get a

21   hold of the deputy.  You seen what

22   happened?  He is like, yeah, I know.

23   I seen it.  And then he started

24   changing his story around, saying, no,

25   I didn't see nothing.

36

1    Q.      If he was on the desk, could he

2    see into the cell?

3    A.      Yeah, because they got a camera

4    right on top of the desk.

5    Q.      So this particular POC cell has

6    cameras in it?

7    A.      Yeah.

8    Q.      Okay.

9            Do you happen to know the

10   number of that POC cell?

11   A.      Number one.

12   Q.      Number one.  Thank you.

13           So let's go ahead and go to ---

14   I'm sorry, let me back up.  So you had

15   asked McCallister that you wanted to

16   talk to somebody else about this.  And

17   this was in between the 6:30 and the

18   8:30?

19   A.      Yeah.

20   Q.      Okay.

21           So then we come to 8:00 to

22   8:30.  What happens now?

23   A.      That's when the captain came

24   around.

25   Q.      Okay.

37

1    A.      And I told him what happened.
2    He said he is going to check the
3    video.
4    Q.      And this was Captain Harris?
5    A.      Yes.
6            So he came back the next day.
7    And he just told me straight out to my
8    face, he is like, look, you never
9    heard this from me, I seen the video,
10   I never seen nothing that they said.
11   Q.      Okay.
12   A.      He is like you never heard this
13   from me.
14   Q.      Okay.
15           Did you have --- since it was
16   the two hours later, did you have
17   another circulation check and moving
18   the cuff?  Did that occur between 8:00
19   and 8:30?
20   A.      Yeah.
21   Q.      It did, okay.
22           Who came to your cell to do
23   that?
24   A.      Same COs.
25   Q.      And what happened during that?

38

1   A.      They didn't do the circulation,

2   nothing.  They just left.  And that's

3   when I broke the handcuffs and they

4   put me in the restraint chair.

5   Q.      They didn't check your

6   circulations or they didn't do any of

7   the Drexel exercise?

8   A.      No.

9   Q.      What I'm hearing is they

10  basically came in to your cell, didn't

11  do anything and left?

12  A.      Yeah, because I told them I

13  didn't want to hurt or nothing, so

14  they just left.

15  Q.      So they didn't force the

16  exercise or anything like that?

17  A.      No.

18  Q.      And so after they came the

19  second time between 8:00 and 8:30 and

20  then they left, then the Captain

21  Harris came around?

22  A.      Yeah.

23  Q.      Did anything else happen on

24  April 18, 2017, other than what we

25  just talked about?

39

1    A.      Just that Myers came back

2    around with no exercise.  He came back

3    in the cell with the Lieutenant.

4    Q.      Okay.

5    A.      Look we got to do your vital

6    checks.  And I'm like I'm not doing no

7    vital checks.  I already told you I

8    don't want them.  I don't want them.

9    You all just leave.  So they tried to

10   force and take the vitals again.

11   Q.      When was that?

12   A.      On the 18th and 19th.

13   Q.      Was it at specific times?

14   A.      Well, the same time, 6:30 in

15   the morning.

16   Q.      6:30 in the morning and 8:30 in

17   the morning?  It sounds like this was

18   then April 19th, Myers and Lieutenant

19   came back and tried to do the

20   circulation check again and you said

21   you didn't want do it?

22   A.      Yeah.

23   Q.      So after then on the 19th ---

24   after the 18th, I'll just say after

25   April 18, 2017, did you have continual

Sargent's Court Reporting Service, Inc.
(814) 536-8908

40

1   contact with Wendle, Myers, Owens and

2   McCallister?

3   A.     A few times.  Like, when they

4   go work in the hole and all that.

5   McCallister, he always worked in the

6   POC.

7   Q.     He was always in the POC?

8   A.     Yeah.

9   Q.     So this particular POC I think

10  you said was not on G Block.

11         Correct?

12  A.     No.

13  Q.     So Wendle, Myers and Owens you

14  said worked on G Block?

15  A.     Yeah.

16  Q.     Do you know why they were

17  working in the POC, on the POC Block?

18  Why would they have been there?

19  A.     They go up there with the

20  Lieutenant to do exercise and all

21  that.

22  Q.     Okay.

23         So the block that the POCs are

24  on, it is not --- is it not staffed

25  with regular corrections officers like

41

1    say the G Block would be?

2    A.    No.

3    Q.    So they have to pull officers

4    from the other blocks ---

5    A.    Yeah.

6    Q.    --- to do that?  Okay.

7          So did they --- the entire time

8    that you were in the POC until April

9    26, 2017, were they the officers that

10   came to do your circulation checks?

11   A.    Yeah.

12   Q.    And then after you were out of

13   the POC, where did you go?

14   A.    To Rear D.

15   Q.    To where?

16   A.    Rear D.

17   Q.    So that's an entirely different

18   block?

19   A.    It is like some more POC cells

20   back there.

21   Q.    There's more POC cells, okay.

22         Did you ever go back to the

23   RHU?

24   A.    Yeah.

25   Q.    When did you go back to the

42

1    RHU?

2    A.      A week later.

3    Q.      And did you have contact with

4    Wendle, Myers and Owens then?

5    A.      Myers and Owens and

6    McCallister, because they were down in

7    the RHU working.

8    Q.      I thought McCallister was

9    always on the POC?

10   A.      Yes.  But once in a while they

11   move them around.

12   Q.      Got you.  Okay.

13           Did you file a grievance

14   related to the events that happened on

15   April 18?

16   A.      Yeah.

17   Q.      And what happened with that

18   grievance?

19   A.      It got denied.  And I appealed

20   it to the superintendent.  He upheld

21   it in part and denied it in part.  So

22   I filed for the same thing.

23   Q.      With what did they uphold?

24   A.      They uphold both sides because

25   he said I'm going to hold for an

43

1    investigation about saying that

2    nothing happened and on the other side

3    saying that it did happen but they

4    don't got enough proof.

5    Q.    Okay.

6         So you just referenced an

7    investigation?

8    A.    Yeah.

9    Q.    So was this allegation --- you

10   essentially made an allegation of

11   abuse related to these events on April

12   18th.  Was that investigated?

13   A.    Yeah.

14   Q.    And who investigates that?

15   A.    OS.

16   Q.    And were you interviewed as a

17   part of that investigation?

18   A.    No.

19   Q.    You were not.  Do you know why

20   you were not investigated --- or, I'm

21   sorry, not interviewed?

22   A.    They said since I already filed

23   a grievance, they said they just going

24   by the grievance.

25   Q.    Okay.

44

1          Do you know if it was
2    investigated?
3    A.     They told me it was
4    investigated.
5    Q.     Were you ever informed of the
6    results of that investigation?
7    A.     Yeah, they said nothing was
8    found.
9    Q.     Did you receive any type of
10   misconducts related tool anything that
11   happened on April 18th?
12   A.     Yeah.
13   Q.     What misconduct did you
14   receive?
15   A.     They gave me three assault
16   misconducts and two for refusing
17   treatment and an order.
18   Q.     And what happened with those
19   misconducts?
20   A.     Four --- most of them got
21   dismissed.  I just got stuck with one
22   that got me ran back up again.
23   Q.     Which one was that?
24   A.     The assault.
25   Q.     And so there were three

45

1    assaults?

2    A.      Yeah.

3    Q.      Which one stayed?

4    A.      The one from Myers.

5    Q.      Myers.  So any assault charges

6    with Wendle and Owens got dismissed?

7    A.      Yeah.

8    Q.      But the one with Myers was

9    upheld.  And what happened?

10   A.      They gave me 60 days.

11   Q.      Sixty (60) days in the RHU?

12   A.      Yeah.

13   Q.      Okay.

14           I just want to go through your

15   claims a little bit.  The claim that

16   you had filed against Owens is a

17   failure to protect.  So you say that

18   in your Complaint at paragraph 40 ---

19   and we can enter this as Exhibit 1.

20                   - - -

21                   (Whereupon, Deposition

22                   Exhibit 1, Complaint,

23                   was marked for

24                   identification.)

25                   - - -

46

BY ATTORNEY DEIBERT:

Q.      This is a copy of your Complaint.  I don't have a clean copy, but you say here that Owens knew of a substantial risk to serious harm.  So what was the threat?  What was the harm?

A.      Because I told him --- when they took me to the POC, I told him, look, you know why I'm in the POC for, for the razor in my stomach.  You can't take no vitals, you know, you can't force my stomach or nothing like that, can't do it, because you are --- might bust my stomach open.

So as soon as they started using the force, that's when the nurse told the doctor and the doctor is like, look, you can't be doing that. He is not eating.  He is not doing nothing.  Just let him go.  He will have to vomit the thing on his own.

Q.      So it sounds like the serious harm is related to the razors that were in your stomach?

47

1   A.      Yeah.

2   Q.      And any type of use of force

3   that was going to be used against

4   you ---

5   A.      Yeah.

6   Q.      --- that's the risk of harm?

7   Okay.

8          And you had told Owens when you

9   went into the POC ---

10  A.      Yeah.

11  Q.      --- that you know why I'm in

12  here, so --- okay.

13  A.      Yeah.

14  Q.      And what about --- I'm sorry?

15  A.      Yeah, because they were scared

16  when they did the ultrasound that it

17  was going to cut my stomach, because

18  it was like pushing out, right.  So

19  they had to send me out to the

20  hospital.  And they were just like

21  give him liquid and let him walk

22  around so he can flush it out.

23  Q.      So you didn't have to have any

24  type of surgery to have them removed

25  or anything?

48

1    A.      No, they said it snapped in

2    four pieces.

3    Q.      They snapped in four pieces?

4    A.      Yeah.

5    Q.      How many did you swallow?

6    A.      It was just one whole razor.

7    Q.      How long was it?

8    A.      Like that long (indicating).  I

9    don't even know how it snapped.

10   Q.      So I have the same questions

11   then with Corrections Officer Myers,

12   because you kind of had the same

13   language where he had knowledge of a

14   serious injury.  He had knowledge of a

15   serious injury and then constituted

16   deliberate indifference to ---

17   serious, to his physical assault.

18          So what was the risk --- what

19   was the serious risk of substantial

20   harm with Lieutenant Myers --- or

21   Correction Officer Myers?

22   A.      I told him --- he is the one

23   that --- when I came back from the

24   hospital, he is the one that walked me

25   up to the POC.  And I told him, look,

49

1   you can't --- can't put me to the wall
2   in handcuffs, because the hospital
3   doctor said you can't pull me to the
4   wall.  You got to let me walk it
5   around so I can flush it.  He is like,
6   well, the shift commander said you got
7   to be cuffed to the wall.  I said, how
8   am I going to flush it out if I can't
9   move.
10          So he started getting angry
11  about --- we started arguing about it
12  back and forth.  So they forced me in
13  to the bunk with force and just
14  handcuffed me and they just all left.
15  And that's all like you can't use
16  force on me because I got a razor.
17  Q.     So it sounds like what you are
18  saying is it is something similar to
19  with Owens?
20  A.     Yeah.
21  Q.     That the risk of serious harm
22  had to do with the razors in your
23  stomach and not being handcuffed to
24  the wall?
25  A.     Yeah.

50

1    Q.      Is that correct?  Okay.

2           Let's talk about the claims

3    against Wendle.  You have a deliberate

4    indifference claim, a similar claim

5    against Lieutenant Wendle.  What was

6    the substantial risk of serious harm

7    with Wendle?

8    A.      Well, I told him what I was

9    going through with the guards, how

10   they going to, you know, with the

11   procedure, because I have been through

12   this all my life, you know, like with

13   the razors and all that stuff.  So I

14   told him, look, you wanted somebody to

15   do something like that with a death in

16   the family.  You can't use force,

17   because you don't know where the

18   blades are at in the stomach.  And he

19   is like, oh, that's not going to cut

20   you, because it is in your stomach.

21   It is going to move around.

22          So that's what --- that's when

23   the nurse started doing the

24   ultrasounds on my belly to see where

25   the razor was moving from them trying

51

1   to hold me down and they were like

2   moving all over.  And they told him,

3   look, stop using force.

4   Q.     Okay.

5          So again it sounds like it was

6   relate to the razors that were in your

7   stomach?

8   A.     Yeah.

9   Q.     So you had informed Lieutenant

10  Wendle of force that was being used?

11  A.     Yeah.

12  Q.     Okay.

13         And the force that was being

14  used, was it kind of like we described

15  before, they were doing the

16  circulation check?

17  A.     Yeah, they were doing for the

18  whole time I was back there.  They

19  were doing circulations.

20  Q.     Was there any other type of

21  force that was used?

22  A.     Just when I went on the

23  restraint chair.

24  Q.     When did you go on the

25  restraint chair?

52

1    A.    That was like the 26th ---

2    25th, around there.

3    Q.    So towards the end?

4    A.    Yeah.  Because they said I

5    broke the handcuffs.

6    Q.    How long were you in the

7    restraint chair?

8    A.    Just for two hours.

9    Q.    Two hours.  And then you went

10   back into the POC?

11   A.    Yes.

12   Q.    And you had just said something

13   about ultrasounds, nurse doing

14   ultrasounds.  Were they doing

15   ultrasounds in the POC?

16   A.    No, they take you to a

17   different room so they can do it.

18   Q.    But it was here ---

19   A.    Yeah.

20   Q.    --- it was at the prison?

21   A.    Yeah.

22   Q.    They didn't send you out

23   to ---?

24   A.    No, they did it here.

25   Q.    They did the ultrasounds here.

53

1    How often were you getting

2    ultrasounds?

3    A.      Like three times.

4    Q.      Do you know when you had them?

5    A.      I don't remember the dates.

6    Q.      Did you ever file a lawsuit, a

7    different lawsuit against any of these

8    Defendants?

9    A.      No.

10   Q.      Aside from the grievance ---

11   well, actually, I'm sorry, let me go

12   back to the grievance that you filed

13   that was related to the April 18th

14   incident.  Who did you file that

15   grievance against?

16   A.      Myers and all the COs.

17   Q.      So Myers ---?

18   A.      Owens, Lieutenant Cischko,

19   Wendle, all of them.

20   Q.      Did you file it against Captain

21   Harris?

22   A.      Yes.

23   Q.      Okay.

24           Other than the grievance that

25   you filed that related to the April

54

1    18th incident, did you file other
2    grievances against any of these
3    Defendants?
4    A.    No.
5    Q.    Okay.
6          After the grievance that you
7    filed related to the April 18th
8    incident, did you file any other
9    grievances against any of these
10   Defendants?
11   A.    No.  I just talked to POC about
12   it.  And they just told me to just
13   stay away from them, so I could make
14   it out of the hole.
15   Q.    Okay.
16         In your Complaint you talk
17   about requests to security officer
18   Lieutenant Eberling?
19   A.    Eberling.
20   Q.    Eberling.  What requests were
21   you filing to him?
22   A.    Complaint about the assault
23   that happened in POC.
24   Q.    So the April 18th incident?
25   A.    Yeah.

55

1    Q.     Did you ever file requests to

2    him before?

3    A.     Yes, three requests and he said

4    --- he talked to me like --- when I

5    got out of the POC, that's when he

6    called me up.

7    Q.     Okay.

8           And what happened?

9    A.     He said he is going to do an

10   investigation and I never got a copy

11   of the paperwork.

12   Q.     Okay.

13          So the three requests that you

14   just referenced, were they all in

15   relation to the April 18 incident?

16   A.     Yeah.

17   Q.     They were, okay.

18          Before April 18 had you ever

19   filed a request to him?

20   A.     Just one.

21   Q.     What was that one about?

22   A.     Actually, if I can speak to him

23   --- asking if I can speak to him about

24   the incident and if anything happened

25   or if the State Police got in touch

56

1   with him.  He said never heard back.

2   He just said we still investigating,

3   just going to hear back from us.

4   Q.     That was related to the April

5   18 incident?

6   A.     Yeah.

7   Q.     Okay.

8          So the one --- the request that

9   you had filed prior to April 18th,

10  what was that about?

11  A.     About --- one of it was about

12  the assault.  The other one was about

13  --- I told him that I had two

14  witnesses that were in the POC that

15  seen the whole thing.  And they didn't

16  even call or talk to them.  One of

17  them already got transferred.

18  Q.     Who were these two witnesses?

19  A.     Two inmates.

20  Q.     Do you know who they are, their

21  names?

22  A.     One of them is Thomas Wood.  He

23  got transferred.  I think he went to

24  Phoenix, they told me.

25  Q.     And who was the other one?

57

1    A.     The other one, I don't know his

2    name.  He just went home.

3    Q.     Okay.

4    A.     And how did they see what was

5    going on in the POC?

6    A.     They saw --- glass door.

7    Q.     So there's a glass door.

8           Can you describe the way the

9    POC was laid out to me?

10   A.     Like, one cell is right here.

11   Shower is here.  There's two more

12   cells over here.

13   Q.     So it sounds like it is down a

14   hallway.  Is there --- actually why

15   don't we do this.  I'm going to give

16   you a piece of paper.  Could you draw

17   it for me?

18   A.     Yeah.  If I can move my arm.

19   Q.     That's right.  I'm sorry.

20   A.     Here is a door right here for

21   the POC.

22   Q.     Okay.

23   A.     Like one cell right here.  This

24   is a shower.  One right here and one

25   right here.  There is a CO sits right

58

1    here.   From these two cells, you can

2    see straight over.

3    Q.     Which one were you in?

4    A.     I was right here.

5    Q.     Can you put a star next to

6    that?

7            Okay.

8    A.     This is where Woods was at.

9    The dude that went home, he was over

10   there.

11   Q.     He went home.

12           Could you put a VT next to that

13   so I know that was you.   And put the

14   Wood there, TW, okay.

15   A.     And then this is ---.

16   Q.     Can you --- I'm sorry.   Could

17   you just put an arrow and put CO?

18           Okay.   Thank you.

19                   ATTORNEY DEIBERT:

20                   We're going to mark this

21           as Exhibit 2.   Thank you.

22                   ---

23                   (Whereupon, Deposition

24                   Exhibit 2, Diagram was

25                   marked for

59

1          identification.)

2               - - -

3     BY ATTORNEY DEIBERT:

4     Q.     It sounds like you are

5     testifying that there were two

6     witnesses as to what happened, but to

7     your knowledge they were not

8     interviewed?

9     A.     No.

10    Q.     All right.

11          In your Complaint you reference

12    another lawsuit that you filed while

13    you were at SCI Camp Hill.  Can you

14    tell me about that lawsuit?

15    A.     I still am waiting on trial

16    because of my surgery been backed up

17    on my trial date.

18    Q.     You are going to trial?

19    A.     Yeah.

20    Q.     Do you know when you are going

21    to trial on that?

22    A.     Just waiting for my status

23    report.  Trying to figure out what is

24    a status report.

25    Q.     Can you just kind of tell me,

60

1   you don't have to get into specifics
2   but just generally, what that lawsuit
3   is about or what the trial is going to
4   be about?
5   A.      Assault, I was unresponsive
6   after assaults and being in a
7   restraint chair for nine hours.
8   Q.      Okay.
9           So that happened at SCI Camp
10  Hill?
11  A.      Yeah.
12  Q.      Do you know if these Defendants
13  knew about that lawsuit?
14  A.      Yeah, two of them did, because
15  they go through your inventory
16  property and all that.  That's how
17  they knew because of my paperwork.
18  Q.      Because of your paperwork.  So
19  which two?
20  A.      Myers and Owens.
21  Q.      Myers and Owens when you came
22  into SCI Huntingdon processed your
23  property?
24  A.      Yeah.
25  Q.      And in that property there was

61

1    legal paperwork that showed that?

2    A.    Yeah.

3    Q.    Did any of the other Defendants

4    know?

5    A.    Well, they must have knowed

6    through them, because they were the

7    only two went through my property.

8    Q.    But you don't know if they

9    knew.  They never talked to you about

10   it?

11   A.    No.

12   Q.    Did Myers and Owens ever talk

13   to you about it?

14   A.    They just keep telling me

15   that's all I like to do is file

16   lawsuits.

17   Q.    When did they say that to you?

18   A.    When I went back to the hole.

19   Q.    When you went back to the RHU,

20   okay.

21         I'm sorry.  And if I'm --- I'm

22   sorry if you have already answered

23   this question.  After you left the POC

24   and went back --- when you went back

25   to the RHU, how long were you in the

62

1   RHU then?

2   A.      All the way to September.

3   Q.      September.

4   A.      September 17.

5   Q.      Okay.

6           So in September 2017, you were

7   released from the RHU?

8   A.      2018.

9   Q.      I'm sorry, 2018.  Okay.

10          So it sounds like you would

11  have gone back to the RHU at the end

12  of April 2017?

13  A.      Yeah.

14  Q.      And then you were there until

15  September 2018?

16  A.      Yeah.

17  Q.      And what type of contact did

18  you have with Myers, Owens and Wendle

19  during that time period?

20  A.      When we got showers and in the

21  yard.

22  Q.      Do you know what shift they

23  worked?

24  A.      First shift and second shift.

25  Q.      Who worked first shift if you

63

1    know?

2    A.    Well, they both work overtime

3    on --- they both second shift, but

4    they worked overtime on first shift.

5    Q.    Well, I have three.  I have

6    Myers, Owens and Wendle?

7    A.    The other three are from first

8    shift.

9    Q.    So first shift and then they

10   would work overtime into second shift?

11   A.    Yeah.

12   Q.    Okay.

13         In your Complaint, you

14   reference Mayor (sic) Scott Walter.

15   Who is that?

16   A.    He is a deputy now.

17   Q.    Okay.

18         Is that major?

19   A.    Yeah.

20   Q.    Major?

21   A.    Yeah.

22   Q.    Okay.

23         I read it as Mayor Scott Walter

24   and I was very confused why you were

25   bringing a mayor into the lawsuit.

64

1      So he was a major at the time.
2  And you mentioned him in your lawsuit
3  so what did he do?
4  A.      Well, I explained it to him
5  like what happened and if I could get
6  transferred and other stuff, because
7  they keep destroying my legal work.
8  Q.      Who was destroying your legal
9  work?
10  A.      Owens, when he was back there,
11  because I just lost a full box of the
12  one that I'm going to trial.  I can't
13  find no transcripts for that one.
14  That's why I told the judge I can't do
15  my status, because I can't find the
16  paperwork.
17  Q.      So you are alleging that Owens
18  destroyed your legal paperwork?
19  A.      Yeah.
20  Q.      Why are you --- why do you
21  think it was Owens?
22  A.      Because he is the only one that
23  does the legal exchange and all that.
24  Q.      He does the legal exchange.
25      When did you lose it?

65

1    A.      Right before I got out of the

2    hole.

3    Q.      So you have not had it since

4    September 2018?

5    A.      No.  The only one I got is the

6    one for this case now.

7    Q.      Okay.

8            Have you lost any legal

9    paperwork related to this case?

10   A.      Just one discovery, that's it.

11   Q.      Okay.

12           And which discovery is that?

13   A.      I think it was a second one

14   that I got.  It was the one that I was

15   arguing about --- the one that says

16   anger --- half of discovery ---.

17   Q.      We're almost done with the

18   deposition.  So when we're done with

19   that and we're off the record, you and

20   I can have a discussion.  I can get

21   you a copy of whatever you are

22   missing, but let's discuss that off

23   the record.

24           What did Captain Harris do as a

25   Defendant?  So if I'm recalling

66

1  correctly, you testified that you had
2  talked to Captain Harris ---
3  A.    Yeah.
4  Q.    --- about what happened.  Other
5  than that, did he do anything?
6  A.    He said write an investigative
7  report, so they can investigate it.
8  And Wood, he told him the same thing
9  happened.  And he is like, well, I got
10  to check the video and all that.
11  Q.    And you had said that Captain
12  Harris came to talk to you about it a
13  couple days later.
14      Correct?
15  A.    Yeah.
16  Q.    What did he say again?
17  A.    He is like you didn't hear this
18  from me, but I seen the video and
19  nothing they told me like shows in the
20  video.
21  Q.    You are saying nothing they
22  told me shows in the video?
23  A.    Yeah.
24  Q.    So what did that mean to you?
25  A.    Because --- it means like

67

1    either they deleted it or they did
2    something with that video.
3    Q.     Okay.
4           Have you watched the videos
5    that I have produced to you in
6    discovery?
7    A.     Yes, I have one of them.  It
8    didn't want to open.
9    Q.     Do you know which one it was?
10   A.     I don't remem --- I think it
11   was the last one.
12   Q.     Okay.
13   A.     And it didn't seem to want to
14   open.
15   Q.     They can be finicky for sure.
16   Which ones do you recall watching?
17   A.     The hand held and the one on
18   the strip cage.
19   Q.     Okay.
20          So the hand held for which
21   time, for 6:30 or 8:30?
22   A.     6:30 and 8:30.
23   Q.     So both --- hand held for both?
24   A.     Yeah.  And in the one from the
25   POC, they showed me that one.  But the

68

1    last one it sent will not open.

2    Q.    It wouldn't open, okay.

3          And other than running the ---

4    again, I apologize if you already

5    answered this question, but

6    McCallister, other than running the

7    video, being the cameraman

8    essentially, what did he do?

9    A.    Well, he just sat there and

10   watched everything that went down.

11   Q.    Okay.

12   A.    Because he is the one that told

13   me, yeah, I seen everything.  Why are

14   --- you didn't call nobody.  He is, I

15   tried to call people.  I was like, no,

16   you did not.  You was standing at the

17   door.  I seen you not even picking up

18   the phone.

19   Q.    Where did McCallister --- in

20   this time period, in the 2017 time

21   period, where was McCallister working?

22   A.    POC.

23   Q.    And so he was with the POC?

24   A.    Yeah.

25   Q.    Okay.  That's right.  You did

69

1    say that.

2              And he did sometimes work on G

3    Block as well?

4    A.        Yeah.

5    Q.        Okay.

6              If it would be like an

7    overtime ---?

8    A.        Yeah, overtime.

9    Q.        Okay.

10             Other than what we have talked

11   about today, is there anything else

12   that I have not asked you that you

13   want me to know?

14   A.        No.

15   Q.        No, okay.

16             Was there ever any --- with the

17   contact that you had with Owens, Myers

18   and Wendle on G Block, was there ---

19   did they ever use force on you while

20   you were in the RHU?

21   A.        Just when I went for the POC to

22   the strip cage, that's it.

23   Q.        And what type of force would

24   they use?

25   A.        Just holding me like real tight

70

1    by my arms and all that.  And that's

2    when the LT told him, look, just leave

3    him alone, because he already told you

4    --- captain already said you can't be

5    near him so just move.

6    Q.    Okay.

7    A.    And that was Captain Harris

8    told him, look, stay away from him.

9    Q.    Okay.

10        And I believe you had testified

11   earlier that Myers and Owens would, I

12   think you used the phrase, burn you

13   for yard and showers?

14   A.    Yeah.

15   Q.    Is that correct?

16        That was when you were in the

17   RHU?

18   A.    Yeah.

19   Q.    And when was that?  Could you

20   give me a time period?

21   A.    That was like in the morning

22   time like around --- well, they serve

23   breakfast 6:00 in the morning, because

24   we go to the yard at 7:00 and shower

25   starts at 11:00.

71

1    Q.      And could you give me like a

2    date, time period, a date range?

3    A.      27th or 28th.

4    Q.      And what ---?

5    A.      RHU.

6    Q.      In the RHU.  You said the 27th

7    and 28th.  What month or can you give

8    me a range?

9    A.      Those were like --- like in

10   March.

11   Q.      In March of 20 ---?

12   A.      2018.

13   Q.      2018.  Okay.  March of 2018.

14           And how often did it happen?

15   A.      Just twice.

16   Q.      So you didn't get to go to yard

17   twice and you didn't get to shower

18   twice?

19   A.      Yeah.

20   Q.      Okay.

21           Was it on the same day?

22   A.      Yeah, the same day.

23   Q.      Same day.  How far apart did it

24   occur?

25   A.      Like, because they were doing

72

1    showers from 10:00 to 11:00.  And then
2    they stop.  They keep the rest for the
3    second shift when they came to finish
4    them up.  So I knew he was staying
5    overtime and that's when he said, oh,
6    you getting out the door for shower.
7    I'm not even yelling.  I'm here
8    waiting.
9    Q.     Okay.
10   A.     And I told the LT that.  And he
11   said, well, the CO said you were
12   yelling, so you were burnt.
13   Q.     Did you file a grievance about
14   those?
15   A.     No, I wrote the unit manager,
16   and he talked to the CO.  And he is
17   like he wasn't on the list like.  He
18   just told me to get ready.
19   Q.     Okay.
20          But you didn't file a grievance
21   about it?
22   A.     No, because he said he was
23   going to handle it.
24   Q.     Did he handle it?
25   A.     Yeah, he just told him just

73

1    give him a shower next time, just told
2    me make sure you are at the door.  I
3    was up there.  And you see me, because
4    you always come back through
5    everything.
6    Q.     Do you know if --- and I'm
7    sorry, was it Myers or Owens?
8    A.     Myers.
9    Q.     Myer did that.  Do you know if
10   he was disciplined at all for that?
11   A.     No.
12   Q.     You don't know or he wasn't?
13   A.     No, he wasn't.
14   Q.     He wasn't, okay.
15          So aside from you talked about
16   Owens, who does the legal exchange,
17   has lost some of your legal paperwork?
18   A.     Yeah.
19   Q.     And was it only Myers who had
20   burned you for the yard and showers?
21   A.     Yeah.
22   Q.     Other than those things, what
23   other dealings or what other things
24   happened with any of these Defendants?
25   A.     Well, they just --- POC just

74

1 told them stay away from me and just

2 --- because they were trying to get me

3 back out in population.  So they moved

4 out to population.  And now that I'm

5 in population, I only see like two of

6 them out here once in a while.

7 Q. I'm sorry.  Are you saying like

8 they moved their assignment from G

9 Block to population?

10 A. Yeah.

11 Q. And when was that?

12 A. Like two months before I got

13 out.

14 Q. And now that you're in general

15 population, are they still in general

16 population?

17 A. Yeah, one or two I see out

18 here.

19 Q. Who do you see?

20 A. Owens and Myers.

21 Q. And do you have problems with

22 them in general population?

23 A. No, I stay away from them.

24 Q. So you stay away from them.

25 They stay away from you?

75

1    A.      (Indicates yes).

2    Q.      Okay.

3            Are they COs on the block where

4    you live?

5    A.      No, they work out in the yard.

6    Q.      In the yard, okay.

7            But the yard where you would go

8    for yard?

9    A.      Yeah.

10   Q.      Okay.  Okay.

11           Is there anything else, Mr.

12   Torres?

13   A.      No.

14   Q.      Okay.

15                   ATTORNEY DEIBERT:

16                   That's all I have for

17           you.  Do you have any questions

18           about anything that we have

19           talked about here?

20                   THE WITNESS:

21                   No.

22                   ATTORNEY DEIBERT:

23                   Okay.  Then we're done.

24           *  *  *  *  *  *  *  *

25      DEPOSITION CONCLUDED AT 11:38 A.M.

76

```
1    COMMONWEALTH OF PENNSYLVANIA   )

2    COUNTY OF INDIANA              )

3

4                    CERTIFICATE

5        I, Lacey C. Scott, a Notary Public in and

6    for the Commonwealth of Pennsylvania, do

7    hereby certify:

8        That the foregoing proceedings, deposition

9    of Hector Torres, was reported by me on

10   07/25/19 and that I, Lacey C. Scott, read this

11   transcript and that I attest that this

12   transcript is a true and accurate record of

13   the proceeding.

14       That the witness was first duly sworn to

15   testify to the truth, the whole truth, and

16   nothing but the truth and that the foregoing

17   deposition was taken at the time and place

18   stated herein.

19       I further certify that I am not a

20   relative, employee or attorney of any of the

21   parties, nor a relative or employee of

22   counsel, and that I am in no way interested

23   directly or indirectly in this action.

24   Dated the 24th day of August, 2019
```

Commonwealth of Pennsylvania - Notary Seal
Lacey C Scott, Notary Public
Cambria County
My Commission Expires June 6, 2022
Commission Number 1169278

25

Sargent's Court Reporting Service, Inc.
(814) 536-8908

**A**

**a.m** 2:13
27:23
35:11
75:25
**abuse** 43:11
**accurate**
76:12
**action** 76:23
**agency** 1:26
**aggression**
33:5
**aggressive**
29:9
**agreed** 7:3
**ahead** 36:13
**allegation**
27:18 43:9
43:10
**allegations**
27:20
**alleging**
12:10
64:17
**Allison** 3:6
7:21
**anger** 65:16
**angry** 49:10
**answer** 8:13
9:9 18:6
**answered**
61:22 68:5
**answering**
8:24,25
**anti-** 18:9
**anybody** 23:7
**apart** 71:23
**apologize**
68:4
**appeal** 15:24
**appealed**
42:19
**appeals** 16:3
20:24
**appreciate**
10:16
**April** 12:12
12:19 13:6
13:13,13
14:4 17:22

21:17
23:25 24:3
24:9 27:10
27:11,16
27:24
35:11
38:24
39:18,25
41:8 42:15
43:11
44:11
53:13,25
54:7,24
55:15,18
56:4,9
62:12
**arguing**
49:11
65:15
**arm** 16:11,13
25:25
28:17 29:7
29:21
30:17,24
31:2,8,9
31:12
33:12,16
57:18
**arms** 25:25
70:1
**arrow** 58:17
**aside** 10:11
53:10
73:15
**asked** 9:11
36:15
69:12
**asking** 8:23
55:23
**assault**
12:10
44:15,24
45:5 48:17
54:22
56:12 60:5
**assaulted**
24:13
**assaults**
24:8,16
45:1 60:6

**assignment**
74:8
**assume** 9:10
**attempt**
15:12
**attest** 76:11
**attorney** 3:7
4:5 6:3
7:18 12:4
12:6 46:1
58:19 59:3
75:15,22
76:20
**August** 76:24
**authoriz...**
1:25
**aware** 8:8

**B**

**B** 1:8 10:20
11:21 14:6
14:7 17:22
20:8
**B.A** 1:12
**back** 14:14
14:16 15:6
16:24
18:16 20:7
22:8,9
27:8 30:9
34:11
36:14 37:6
39:1,2,19
41:20,22
41:25
44:22
48:23
49:12
51:18
52:10
53:12 56:1
56:3 61:18
61:19,24
61:24
62:11
64:10 73:4
74:3
**backed** 59:16
**background**
9:16

**basically**
8:14,21
12:8 38:10
**basis** 8:16
**BB** 12:22,23
**bed** 29:21
**beginning**
2:12 18:5
**behalf** 2:4
**believe**
12:12
24:21
70:10
**belly** 50:24
**Berks** 18:22
**bit** 45:15
**bite** 31:3,5
**blade** 13:19
**blades** 50:18
**Blair** 17:7
**block** 10:19
10:20
11:22,23
22:1,2,14
40:10,14
40:17,23
41:1,18
69:3,18
74:9 75:3
**blocks** 41:4
**blood** 28:19
**box** 64:11
**break** 27:21
30:22
**breakfast**
70:23
**bringing**
63:25
**broke** 38:3
52:5
**bunk** 29:11
32:7,9
49:13
**burn** 23:16
70:12
**burned** 73:20
**burnt** 72:12
**bust** 46:15

**C**

**C** 2:7 3:1
7:9 14:1,2
17:23 20:8
76:5,10
**cage** 67:18
69:22
**call** 28:17
56:16
68:14,15
**called** 7:12
55:6
**calm** 33:23
33:24,25
**camera** 34:18
36:3
**cameraman**
68:7
**cameras** 36:6
**Camp** 8:6
10:10,11
10:14
11:20
59:13 60:9
**can't** 34:20
46:12,13
46:14,19
49:1,1,3,8
49:15
50:16
64:12,14
64:15 70:4
**CAPT** 1:8
**captain** 7:23
22:11
24:18 34:2
36:23 37:4
38:20
53:20
65:24 66:2
66:11 70:4
70:7
**case** 1:6
18:20,23
18:24 19:1
65:6,9
**cell** 11:5
12:3 25:11
25:12,14
25:14 28:9
28:13,24

35:16 36:2
36:5,10
37:22
38:10 39:3
57:10,23
**cells** 12:24
41:19,21
57:12 58:1
**central** 16:1
20:21
**CERTIFICATE**
4:6 76:4
**certific...**
7:6
**certify** 76:7
76:19
**certifying**
1:26
**chair** 38:4
51:23,25
52:7 60:7
**changing**
35:24
**charge** 35:8
**charges** 45:5
**check** 28:18
29:6 34:9
37:2,17
38:5 39:20
51:16
66:10
**checked**
24:19
**checks** 39:6
39:7 41:10
**circulation**
28:18 29:6
37:17 38:1
39:20
41:10
51:16
**circulat...**
38:6 51:19
**Cischko** 1:10
7:24 22:12
29:17
33:21
53:18
**civil** 2:6
18:24 23:5

**claim** 45:15
50:4,4
**claims** 45:15
50:2
**class** 18:18
19:13,22
20:1
**classes**
18:14
19:20
**clean** 46:3
**clear** 8:22
**close** 27:11
**code** 11:6,8
11:14
13:25 14:7
17:22,23
20:8,8
**coded** 17:25
**come** 16:24
28:15
34:11
36:21 73:4
**commander**
35:20 49:6
**Commonwe...**
2:9 7:22
76:1,6
**complain**
24:15
**Complaint**
5:5 8:17
12:8,10
21:17
27:18
45:18,22
46:3 54:16
54:22
59:11
63:13
**CONCLUDED**
75:25
**condition**
18:8
**confused**
63:24
**constituted**
48:15
**contact**
21:18

22:21 40:1
42:3 62:17
69:17
**contentious**
23:4
**continual**
39:25
**copy** 14:7,11
46:2,3
55:10
65:21
**correct** 9:21
12:14 24:1
24:23
25:16
30:19
33:10
40:11 50:1
66:14
70:15
**correction**
23:3 48:21
**corrections**
7:25 40:25
48:11
**correctly**
66:1
**COs** 34:1
37:24
53:16 75:3
**couldn't**
16:24
**counsel** 3:11
7:4 76:22
**COUNTY** 76:2
**couple** 66:13
**court** 1:1
2:8 8:9
**Cousins** 19:4
19:6,7,12
**criminal**
18:23,25
19:1
**cuff** 37:18
**cuffed** 30:25
49:7
**currently**
9:19
**cut** 47:17
50:19

| D |
| --- |

**D** 4:1 7:9
41:14,16
**date** 12:12
59:17 71:2
71:2
**Dated** 76:24
**dates** 53:5
**day** 24:25
37:6 71:21
71:22,23
76:24
**days** 24:11
24:12
45:10,11
66:13
**dealing** 20:4
**dealings**
73:23
**death** 26:23
27:1 50:15
**Defendant**
65:25
**Defendants**
1:14 2:5
3:11 21:18
22:10
23:19
34:23,25
53:8 54:3
54:10
60:12 61:3
73:24
**Deibert** 3:6
4:5 7:18
7:21 12:4
12:6 46:1
58:19 59:3
75:15,22
**deleted** 67:1
**deliberate**
48:16 50:3
**denied** 21:15
42:19,21
**deposed** 8:5
8:7,19
**deposition**
1:17 2:2
8:4 16:23
45:21

58:23
65:18
75:25 76:8
76:17
**depression**
20:4
**deputies**
35:18
**deputy** 35:21
63:16
**describe**
30:1 57:8
**described**
51:14
**DESCRIPTION**
5:4
**designation**
18:1
**desk** 35:13
35:14 36:1
36:4
**destroyed**
64:18
**destroying**
64:7,8
**diagnosis**
18:12
**Diagram**
58:24
**didn't** 16:15
26:25 28:1
28:5 30:18
31:5,22
33:4 34:7
35:25 38:1
38:5,6,10
38:13,15
39:21
47:23
52:22
56:15
66:17 67:8
67:13
68:14
71:16,17
72:20
**different**
10:1 20:9
27:19,20
41:17

52:17 53:7
**directly**
76:23
**disciplined**
73:10
**discovery**
65:10,12
65:16 67:6
**discuss**
65:22
**discussion**
65:20
**dismissed**
44:21 45:6
**DISTRICT** 1:1
1:2
**Docket** 8:1
**doctor** 46:18
46:18 49:3
**doesn't**
15:16
**doing** 33:22
34:2,3
39:6 46:19
46:20
50:23
51:15,17
51:19
52:13,14
71:25
**don't** 9:5,7
14:10,24
18:5,7,15
19:22 21:4
21:5 39:8
39:8 43:4
46:3 48:9
50:17 53:5
57:1,15
60:1 61:8
67:10
73:12
**door** 57:6,7
57:20
68:17 72:6
73:2
**draw** 57:16
**Drawing** 5:6
**Drexel** 38:7
**dropped**

32:22,24
33:1
**dry** 25:11,12
25:14
**dude** 58:9
**duly** 7:13
76:14

— **E** —

**E** 3:1,1 4:1
7:9,9
**earlier**
70:11
**eating** 46:20
**Eberling**
54:18,19
54:20
**Eight** 10:8,9
11:4,9
16:18
**either** 67:1
**elbow** 17:1,2
17:3
**employee**
76:20,21
**enter** 45:19
**entire** 11:10
25:4 32:16
32:17 33:7
33:13,16
33:19 41:7
**entirely**
41:17
**ESQUIRE** 3:6
**essentially**
43:10 68:8
**events** 12:7
42:14
43:11
**EXAMINATION**
4:4 7:16
**examiner**
21:10
**exchange**
64:23,24
73:16
**exercise**
38:7,16
39:2 40:20
**Exhibit** 5:1

5:5,6
45:19,22
58:21,24
**explain**
14:22
20:15
**explained**
64:4

— **F** —

**face** 37:8
**failure**
45:17
**fair** 9:12
**familiar**
14:19
20:11
**family** 20:5
26:24 27:1
50:16
**far** 71:23
**Fayette** 10:4
10:5,11,15
11:20
**feet** 30:14
31:16,17
33:19
**figure** 59:23
**file** 15:2,5
15:7,17,21
16:6 17:9
42:13 53:6
53:14,20
54:1,8
55:1 61:15
72:13,20
**filed** 7:23
42:22
43:22
45:16
53:12,25
54:7 55:19
56:9 59:12
**filing** 7:6
54:21
**find** 64:13
64:15
**finicky**
67:15
**finish** 8:22

8:25 72:3
**first** 7:13
15:3,7
62:24,25
63:4,7,9
76:14
**five** 32:14
32:15,17
**flipping**
23:9,12
**floor** 3:9
32:23 33:2
33:3
**flush** 47:22
49:5,8
**FOLLOWING**
7:12
**FOLLOWS** 7:14
**food** 23:17
**force** 38:15
39:10
46:13,17
47:2 49:13
49:16
50:16 51:3
51:10,13
51:21
69:19,23
**forced** 49:12
**foregoing**
76:8,16
**forgot** 35:3
**forth** 49:12
**found** 44:8
**four** 44:20
48:2,3
**full** 9:17
64:11
**further**
76:19

— **G** —

**G** 7:9 22:2
22:14
40:10,14
41:1 69:2
69:18 74:8
**gather** 8:13
**general** 3:7
10:24 11:3

21:6 74:14
74:15,22
**generally**
60:2
**getting**
31:13
49:10 53:1
72:6
**give** 47:21
57:15
70:20 71:1
71:7 73:1
**glass** 57:6,7
**go** 8:19 15:1
15:24,25
20:19 33:4
34:13
36:13,13
40:4,19
41:13,22
41:25
45:14
46:21
51:24
53:11
60:15
70:24
71:16 75:7
**goes** 20:21
**going** 9:10
16:13
19:17
27:15,21
32:16 34:9
37:2 42:25
43:23 47:3
47:17 49:8
50:9,10,19
50:21 55:9
56:3 57:5
57:15
58:20
59:18,20
60:3 64:12
72:23
**Good** 7:20
**grandmother**
27:3,5
**grievance**
14:20

Page 4

15:18,21
42:13,18
43:23,24
53:10,12
53:15,24
54:6 72:13
72:20
**grievances**
15:5 16:6
17:9 54:2
54:9
**grieve** 21:12
**GUARD** 12:2
**guards** 50:9

**H**

**half** 65:16
**hallway**
57:14
**hand** 67:17
67:20,23
**handbook**
14:8
**handcuff**
25:10
28:16
**handcuffed**
49:14,23
**handcuffs**
38:3 49:2
52:5
**handle** 72:23
72:24
**happen** 24:3
26:2 32:5
36:9 38:23
43:3 71:14
**happened**
8:16 24:20
27:25 29:4
34:8 35:22
37:1,25
42:14,17
43:2 44:11
44:18 45:9
54:23 55:8
55:24 59:6
60:9 64:5
66:4,9
73:24

**happening**
34:6
**happens**
15:20
20:16,16
20:17
35:16
36:22
**harm** 46:5,7
46:24 47:6
48:20
49:21 50:6
**Harris** 1:8
7:23 22:11
34:2 37:4
38:21
53:21
65:24 66:2
66:12 70:7
**Harrisburg**
3:10
**head** 19:8,9
29:10 30:9
32:6,8
**heal** 16:15
**health** 11:24
13:2,25
18:12,14
18:17
19:13
**hear** 9:7
56:3 66:17
**heard** 37:9
37:12 56:1
**hearing**
20:12,19
21:1,3,10
38:9
**Hector** 1:4
1:18 2:4
3:3 4:3
7:11 9:18
76:9
**held** 32:2
67:17,20
67:23
**Hill** 8:6
10:10,11
10:15
11:20

59:13
60:10
**hold** 30:24
31:12
32:12
35:18,19
35:21
42:25 51:1
**holding** 31:9
31:16,17
32:3 33:12
33:15,18
34:18
69:25
**hole** 21:21
21:22,24
23:23 40:4
54:14
61:18 65:2
**home** 57:2
58:9,11
**hospital**
19:24
47:20
48:24 49:2
**hours** 26:3,4
28:14,20
37:16 52:8
52:9 60:7
**housed** 10:1
10:3,18
12:21 22:3
22:6
**housing**
11:22
**hunger** 26:15
26:19,21
**Huntingdon**
2:10,11
8:4 9:20
9:25 10:12
10:17
12:17,20
19:10
60:22
**hurt** 38:13
**hurting** 31:7

**I**

**I'll** 39:24

**I'm** 8:3 9:10
11:6 19:5
27:15,21
28:3 34:8
35:19
36:14 38:9
39:6,6
42:25
43:20
46:10
47:11,14
53:11
57:15,19
58:16
61:21,21
61:21 62:9
64:12
65:25 72:7
72:7 73:6
74:4,7
**I've** 16:20
**identifi...**
45:24 59:1
**IDENTIFIED**
5:4
**incarcer...**
10:7 11:11
**incident**
21:16 27:9
53:14 54:1
54:8,24
55:15,24
56:5
**INDIANA** 76:2
**Indicates**
11:12 13:8
33:17,20
75:1
**indicating**
48:8
**indiffer...**
48:16 50:4
**indirectly**
76:23
**informal**
15:13
**information**
8:14 9:16
**informed**
44:5 51:9

**injury** 48:14
48:15
**inmate** 14:8
**inmates** 35:8
56:19
**interested**
76:22
**interviewed**
43:16,21
59:8
**inventory**
60:15
**investigate**
66:7
**investig...**
43:12,20
44:2,4
**investig...**
43:14
**investig...**
56:2
**investig...**
43:1,7,17
44:6 55:10
**investig...**
66:6
**It's** 25:12

**J**

**J.C** 17:7
**jail** 19:23
**judge** 18:15
18:16,21
21:7 64:14
**July** 1:19
2:12
**jumped** 30:20
**jumping** 29:8

**K**

**K** 1:11
**keep** 31:13
61:14 64:7
72:2
**kick** 32:22
33:2,3
**kind** 11:22
15:12
18:11
20:23

48:12
51:14
59:25
**knew** 21:20
46:4 60:13
60:17 61:9
72:4
**know** 8:14,15
9:7 11:7
11:13
13:10,19
13:24
14:10,24
15:20
16:22 18:3
18:6,7
20:1 21:4
21:5,19
23:17 25:5
27:6 28:12
28:16
31:20
34:19
35:22 36:9
40:16
43:19 44:1
46:10,12
47:11 48:9
50:10,12
50:17 53:4
56:20 57:1
58:13
59:20
60:12 61:4
61:8 62:22
63:1 67:9
69:13 73:6
73:9,12
**knowed** 61:5
**knowledge**
48:13,14
59:7

**L**

**L** 7:1
**Lacey** 2:7
76:5,10
**laid** 57:9
**language**
48:13

**lawsuit** 7:22
53:6,7
59:12,14
60:2,13
63:25 64:2
**lawsuits**
61:16
**laying** 29:21
**leave** 35:16
39:9 70:2
**left** 30:3
31:12 33:8
38:2,11,14
38:20
49:14
61:23
**legal** 61:1
64:7,8,18
64:23,24
65:8 73:16
73:17
**legs** 30:5
**let's** 36:13
50:2 65:22
**levels** 16:2
**Lieutenant**
7:24,24
22:11,12
29:15,16
29:16
30:13
31:14
33:21 39:3
39:18
40:20
48:20 50:5
51:9 53:18
54:18
**life** 50:12
**liquid** 47:21
**list** 72:17
**Litigation**
3:8
**little** 45:15
**live** 75:4
**long** 9:23
10:7 11:2
11:7 13:9
22:17
24:25

32:12 48:7
48:8 52:6
61:25
**look** 37:8
39:5 46:10
46:19
48:25
50:14 51:3
70:2,8
**lose** 64:25
**loss** 20:4
**lost** 64:11
65:8 73:17
**LT** 1:9,10
70:2 72:10

**M**

**mad** 23:9,11
23:18
**major** 63:18
63:20 64:1
**majority**
17:8
**manager**
72:15
**March** 71:10
71:11,13
**mark** 58:20
**marked** 45:23
58:25
**mate** 11:5
**mayor** 63:14
63:23,25
**McCallister**
1:13 8:1
22:13 35:3
35:17
36:15 40:2
40:5 42:6
42:8 68:6
68:19,21
**mean** 21:19
23:2,14
25:21 35:7
66:24
**means** 66:25
**medical**
16:10
17:10
26:11,13

26:17 28:2
28:5,17
30:18 32:1
**member** 15:10
**mental** 11:24
13:1,24
18:12,14
18:17
19:13
**mentioned**
64:2
**MIDDLE** 1:2
**minutes**
32:14,15
32:17
**misconduct**
20:12,13
20:17
21:12
44:13
**misconducts**
44:10,16
44:19
**missing**
65:22
**month** 17:18
17:19,20
71:7
**months** 11:4
16:18
19:18
27:13,14
74:12
**morning** 7:20
39:15,16
39:17
70:21,23
**move** 25:24
30:17
31:20,20
31:23
42:11 49:9
50:21
57:18 70:5
**moved** 28:16
29:7 74:3
74:8
**moving** 37:17
50:25 51:2
**Myer** 73:9

**Myers** 1:11
7:25 22:12
28:7,8,9
29:14 30:2
30:23
32:10,11
32:25 33:1
33:8,8
39:1,18
40:1,13
42:4,5
45:4,5,8
48:11,20
48:21
53:16,17
60:20,21
61:12
62:18 63:6
69:17
70:11 73:7
73:8,19
74:20

**N**

**N** 3:1 4:1
7:1,9
**name** 7:21
9:17 21:4
21:6 34:20
57:2
**names** 56:21
**near** 70:5
**need** 8:21
21:5
**never** 23:7
37:8,10,12
55:10 56:1
61:9
**nine** 11:4
60:7
**Notary** 2:8
76:5
**number** 5:4
8:1,21
36:10,11
36:12
**nurse** 28:7,8
28:9 29:5
46:17
50:23

Page 6

**O**

**O** 7:1, 9
14:15
**oath** 8:9
**OBJECTION**
6:1
**occur** 37:18
71:24
**occurred**
24:16
**occurs** 35:15
**office** 3:7
16:1 20:22
**officer**
48:11, 21
54:17
**officers**
7:25 12:11
22:13 23:3
40:25 41:3
41:9
**officials**
25:21
**oh** 50:19
72:5
**Ohio** 19:16
**okay** 9:14
10:5, 21
11:1 13:14
13:17, 23
15:15 16:5
16:12
17:12, 20
18:7 19:1
19:25, 25
20:6 21:14
22:9, 16, 24
23:10
25:18 26:1
26:4 27:5
27:14, 15
28:11 29:1
29:19
30:15 31:4
32:11
34:10, 21
35:1, 14
36:8, 20, 25

37:11, 14
37:21 39:4
40:22 41:6
41:21
42:12 43:5
43:25
45:13 47:7
47:12 50:1
51:4, 12
53:23 54:5
54:15 55:7
55:12, 17
56:7 57:3
57:22 58:7
58:14, 18
60:8 61:20
62:5, 9
63:12, 17
63:22 65:7
65:11 67:3
67:12, 19
68:2, 11, 25
69:5, 9, 15
70:6, 9
71:13, 20
72:9, 19
73:14 75:2
75:6, 10, 10
75:14, 23
**old** 14:12
**once** 16:8, 9
17:13, 15
17:18, 19
17:20
42:10 74:6
**ones** 67:16
**open** 46:15
67:8, 14
68:1, 2
**order** 44:17
**ordered**
18:14, 17
18:21
**OS** 43:15
**overtime**
63:2, 4, 10
69:7, 8
72:5
**Owens** 1:12
7:25 22:12

29:14 30:7
31:11
33:15 40:1
40:13 42:4
42:5 45:6
45:16 46:4
47:8 49:19
53:18
60:20, 21
61:12
62:18 63:6
64:10, 17
64:21
69:17
70:11 73:7
73:16
74:20

**P**

**P** 3:1, 1 7:1
7:9
**PA** 1:2 3:10
**PAGE** 5:1, 3
6:1, 3
**paper** 57:16
**paperwork**
55:11
60:17, 18
61:1 64:16
64:18 65:9
73:17
**paragraph**
45:18
**part** 42:21
42:21
43:17
**particular**
36:5 40:9
**parties** 7:5
76:21
**passed** 27:1
27:6, 12
**Pennsylv...**
2:10, 11
76:1, 6
**people** 68:15
**perfectly**
18:7
**performed**
17:6

**period** 27:22
34:13
62:19
68:20, 21
70:20 71:2
**person** 30:23
**Phoenix**
56:24
**phone** 68:18
**phrase** 70:12
**physical**
48:17
**picking**
68:17
**piece** 57:16
**pieces** 48:2
48:3
**Pike** 2:11
**place** 12:11
76:17
**placed** 8:9
**Plaintiff**
1:6 3:4
**POC** 12:24, 25
13:6, 10, 14
13:20
23:24
24:22
25:11, 20
35:5, 6, 7
35:13, 14
36:5, 10
40:6, 7, 9
40:17, 17
41:8, 13, 19
41:21 42:9
46:9, 10
47:9 48:25
52:10, 15
54:11, 23
55:5 56:14
57:5, 9, 21
61:23
67:25
68:22, 23
69:21
73:25
**POCs** 40:23
**Police** 55:25
**population**

10:24 11:3
74:3, 4, 5, 9
74:15, 16
74:22
**PRC** 20:20
**previously**
22:4
**prior** 56:9
**prison** 10:1
10:18
25:21
52:20
**PRO** 3:3
**problem**
15:17
16:25
**problems**
74:21
**procedure**
2:6 50:11
**proceeding**
7:13 76:13
**proceedings**
76:8
**process**
14:20 15:1
20:12, 13
20:24
**processed**
60:22
**produced**
67:5
**prohibited**
1:25
**proof** 43:4
**property**
60:16, 23
60:25 61:7
**protect**
45:17
**psych** 18:8
19:8, 9
**psychs** 19:21
**Public** 2:9
76:5
**pull** 41:3
49:3
**pursuant** 2:5
**push** 31:6
**pushing**

52:13

47:18
**put** 13:2,10
  13:20
  20:20 38:4
  49:1 58:5
  58:12,13
  58:17,17

---

**Q**

**question**
  8:12,23,23
  9:6,9,10
  18:6 20:7
  61:23 68:5
**questions**
  48:10
  75:17

---

**R**

**R** 1:10 3:1
  7:9
**radio** 32:22
  32:23,24
  33:1
**raised** 27:4
**ran** 44:22
**range** 71:2,8
**razor** 13:5,7
  13:15,18
  25:6 46:11
  48:6 49:16
  50:25
**razors** 46:24
  49:22
  50:13 51:6
**read** 63:23
  76:10
**reading** 7:5
**ready** 72:18
**real** 69:25
**realize**
  26:25
**Really** 16:19
**Rear** 41:14
  41:16
**recall** 67:16
**recalling**
  65:25
**receive**
  14:13 44:9

44:14
**received**
  14:11
**record** 8:22
  65:19,23
  76:12
**refer** 19:17
**reference**
  59:11
  63:14
**referenced**
  19:3 43:6
  55:14
**referred**
  19:16
**refuse** 26:5
  26:9
**refused** 26:8
  26:11,13
  26:17
**refusing**
  31:25
  44:16
**regular**
  11:23
  40:25
**regularly**
  16:7
**relate** 51:6
**related**
  17:12
  42:14
  43:11
  44:10
  46:24
  53:13,25
  54:7 56:4
  65:9
**relation**
  27:9,10
  55:15
**relation...**
  22:25 23:4
  23:5,6
**relative**
  76:20,21
**released**
  62:7
**relief** 25:22
**remem** 67:10

**remember**
  34:20 53:5
**remove** 31:2
**removed**
  47:24
**repeat** 9:8
**rephrase** 9:8
**report** 59:23
  59:24 66:7
**reported**
  76:9
**reporter** 2:8
  8:10
**represent**
  7:21
**reproduc...**
  1:24
**request** 15:9
  15:10
  55:19 56:8
**requests**
  15:2,7,8
  54:17,20
  55:1,3,13
**required**
  25:22
**resolution**
  15:15
**resolve**
  15:17
**resolved**
  15:3
**respective**
  7:4
**response**
  15:23,24
**rest** 72:2
**restraint**
  38:4 51:23
  51:25 52:7
  60:7
**results** 44:6
**Retreat**
  10:14
**RHU** 10:22
  21:25 22:1
  22:4,7,18
  23:22
  41:23 42:1
  42:7 45:11

61:19,25
  62:1,7,11
  69:20
  70:17 71:5
  71:6
**right** 7:19
  28:4 29:23
  29:24
  30:10
  33:16
  34:14 36:4
  47:18
  57:10,19
  57:20,23
  57:24,25
  57:25 58:4
  59:10 65:1
  68:25
**risk** 46:5
  47:6 48:18
  48:19
  49:21 50:6
**room** 52:17
**rounds** 34:3
**rule** 8:21
**rules** 2:6
  8:20
**running**
  25:14 68:3
  68:6
**runs** 35:4,6
  35:7

---

**S**

**S** 3:1 7:1,9
**sat** 68:9
**saw** 57:6
**saying** 24:13
  35:24 43:1
  43:3 49:18
  66:21 74:7
**says** 65:15
**scared** 47:15
**scheduled**
  16:23
**SCI** 2:10 8:3
  9:19,25
  10:17
  12:16,20
  19:9 59:13

60:9,22
**Scott** 2:8
  63:14,23
  76:5,10
**SE** 3:3
**sealing** 7:6
**second** 15:6
  38:19
  62:24 63:3
  63:10
  65:13 72:3
**Section** 3:8
**secured**
  24:21 25:1
  25:5,8,19
  29:22
**securing**
  25:23
**security**
  54:17
**see** 16:14
  19:25 34:5
  34:7 35:25
  36:2 50:24
  57:4 58:2
  73:3 74:5
  74:17,19
**seen** 19:15
  19:19
  35:21,23
  37:9,10
  56:15
  66:18
  68:13,17
**send** 47:19
  52:22
**sense** 9:3
**sent** 68:1
**September**
  62:2,3,4,6
  62:15 65:4
**serious** 46:5
  46:23
  48:14,15
  48:17,19
  49:21 50:6
**serve** 70:22
**session** 8:13
**shift** 35:20
  49:6 62:22

Page 8

62:25 63:3
63:4,8,9
63:10 72:3
**shoulder**
16:25 30:4
30:6,11
**showed** 61:1
67:25
**shower** 23:17
57:11,24
70:24
71:17 72:6
73:1
**showers**
62:20
70:13 72:1
73:20
**shows** 66:19
66:22
**sic** 63:14
**side** 30:3,8
30:10 33:8
43:2
**sides** 42:24
**signing** 7:5
**similar**
49:18 50:4
**single** 12:3
**sit** 31:21
**sits** 57:25
**six** 19:18
**Sixty** 45:11
**slammed** 32:6
32:8
**slapped**
29:10
**sling** 16:14
**Smithfield**
16:21
**SMU** 11:17
**SMUs** 11:15
11:19
**snapped** 48:1
48:3,9
**social** 18:10
**somebody**
19:16,18
36:16
50:14
**soon** 46:16

**sorry** 19:5
28:3 36:14
43:21
47:14
53:11
57:19
58:16
61:21,22
62:9 73:7
74:7
**sounded** 10:9
**sounds** 16:3
31:24
39:17
46:23
49:17 51:5
57:13 59:4
62:10
**speak** 55:22
55:23
**specialized**
11:22
**specific**
21:5 39:13
**specifics**
60:1
**spoke** 23:7
**Square** 3:9
**staff** 15:9
15:10
**staffed**
40:24
**standing**
68:16
**star** 58:5
**start** 8:24
23:9,11
**started** 24:6
24:9 29:8
35:23
46:16
49:10,11
50:23
**starts** 70:25
**state** 19:24
55:25
**stated** 76:18
**STATES** 1:1
**status** 59:22
59:24

64:15
**stay** 54:13
70:8 74:1
74:23,24
74:25
**stayed** 45:3
**staying** 72:4
**stipulated**
7:3
**stomach** 25:7
33:6 46:11
46:13,15
46:25
47:17
49:23
50:18,20
51:7
**stop** 28:4
51:3 72:2
**story** 35:24
**straight**
37:7 58:2
**Strawberry**
3:9
**Street** 2:11
**strike** 26:16
26:19,22
**strip** 67:18
69:22
**struggling**
31:18
32:18
**stuck** 44:21
**stuff** 13:3
20:5 28:19
50:13 64:6
**substantial**
46:5 48:19
50:6
**suicide** 13:3
13:4,22
**superint...**
15:25
20:21
42:20
**supposed**
19:23 20:2
**sure** 34:14
67:15 73:2
**surgeries**

17:4,5,6
**surgery**
16:16,17
47:24
59:16
**swallow**
13:15 48:5
**swallowed**
13:5,7,18
**switch** 25:25
**switched**
26:6
**sworn** 7:14
76:14

---

**T**

**T** 7:1,1
**take** 8:4
18:17 20:2
39:10
46:12
52:16
**taken** 2:4,6
76:17
**talk** 27:15
36:16 50:2
54:16
56:16
61:12
66:12
**talked** 27:17
38:25
54:11 55:4
61:9 66:2
69:10
72:16
73:15
75:19
**talking** 9:1
**tell** 8:15
27:24
59:14,25
**telling**
33:23
61:14
**ten** 32:14,15
32:17
**testified**
7:14 30:16
66:1 70:10

**testify**
76:15
**testifying**
59:5
**Thank** 10:16
12:5 36:12
58:18,21
**that's** 12:8
12:24 24:5
27:16
28:20,23
29:10
32:21
36:23 38:2
41:17
46:17 47:6
49:15
50:19,22
50:22 55:5
57:19
60:16
61:15
64:14
65:10
68:25
69:22 70:1
72:5 75:16
**there's** 16:2
41:21 57:7
57:11
**thing** 42:22
46:22
56:15 66:8
**things** 73:22
73:23
**think** 16:24
40:9 56:23
64:21
65:13
67:10
70:12
**Thomas** 56:22
**thought** 42:8
**threat** 46:6
**three** 9:24
16:2 24:11
24:12
44:15,25
53:3 55:3
55:13 63:5

63:7
**Thursday**
  2:12
**tight** 30:24
  69:25
**time** 9:5
  11:10  14:2
  18:5  25:4
  26:10
  27:11,21
  33:7,13,16
  33:19
  34:12,14
  38:19
  39:14  41:7
  51:18
  62:19  64:1
  67:21
  68:20,20
  70:20,22
  71:2  73:1
  76:17
**times** 27:20
  39:13  40:3
  53:3
**title** 21:6
**today** 8:3
  12:9  69:11
**told** 24:18
  28:1,5
  29:2,3,6
  33:12,24
  34:7  35:17
  37:1,7
  38:12  39:7
  44:3  46:8
  46:9,18
  47:8  48:22
  48:25  50:8
  50:14  51:2
  54:12
  56:13,24
  64:14  66:8
  66:19,22
  68:12  70:2
  70:3,8
  72:10,18
  72:25  73:1
  74:1
**tool** 44:10

**top** 32:20
  33:4  34:1
  36:4
**Torres** 1:5
  1:18  2:4
  3:3  4:3
  7:11,20
  9:18  75:12
  76:9
**touch** 55:25
**transcript**
  1:24  76:11
  76:12
**transcripts**
  64:13
**transferred**
  56:17,23
  64:6
**trays** 23:17
**treatment**
  26:12,14
  26:18  28:2
  28:6  30:18
  32:1  44:17
**trial** 59:15
  59:17,18
  59:21  60:3
  64:12
**tried** 21:15
  29:5  30:24
  31:1,3,12
  32:22  33:2
  39:9,19
  68:15
**true** 76:12
**truth** 76:15
  76:15,16
**try** 29:9
  31:5  33:3
**trying** 19:12
  31:6,19,21
  31:25  32:1
  32:19,19
  35:19,20
  50:25
  59:23  74:2
**turn** 8:24
  12:7
**TW** 58:14
**twice** 71:15

71:17,18
**twisted** 31:1
**two** 11:15
  14:14,16
  14:19  17:4
  17:5,23
  22:8,9,19
  22:20,22
  26:3,4
  27:8,13,14
  27:19,20
  28:14,20
  37:16
  44:16  52:8
  52:9  56:13
  56:18,19
  57:11  58:1
  59:5  60:14
  60:19  61:7
  74:5,12,17
**type** 22:25
  23:5  25:22
  44:9  47:2
  47:24
  51:20
  62:17
  69:23

---

**U**

**U** 7:1
**Uh-huh** 29:25
**ultrasound**
  47:16
**ultrasounds**
  50:24
  52:13,14
  52:15,25
  53:2
**undersigned**
  2:7
**understand**
  9:6  23:2
**understa...**
  25:13
**understood**
  9:11
**unit** 11:24
  72:15
**UNITED** 1:1
**unrespon...**

60:5
**upheld** 42:20
  45:9
**uphold** 42:23
  42:24
**use** 47:2
  49:15
  50:16
  69:19,24

---

**V**

**Vargas** 1:4
  1:18  2:4
  3:3  4:3
  7:11  9:18
**video** 24:19
  34:9  37:3
  37:9  66:10
  66:18,20
  66:22  67:2
  68:7
**videos** 67:4
**videotaped**
  34:16,17
**vital** 39:5,7
**vitals** 39:10
  46:12
**vomit** 46:22
**vs** 1:7
**VT** 58:12

---

**W**

**wait** 15:22
**waiting**
  59:15,22
  72:8
**waived** 7:7
**walk** 47:21
  49:4
**walked** 48:24
**wall** 24:22
  25:2,5,9
  25:20
  29:22  31:1
  49:1,4,7
  49:24
**Walter** 63:14
  63:23
**want** 9:15
  12:7  28:1

28:4,5,15
  29:3  30:18
  30:22  33:4
  33:25
  34:13
  38:13  39:8
  39:8,21
  45:14  67:8
  67:13
  69:13
**wanted** 36:15
  50:14
**wasn't** 72:17
  73:12,13
  73:14
**watch** 13:3,4
**watched** 67:4
  68:10
**watching**
  67:16
**water** 25:15
**way** 10:6
  15:2  57:8
  62:2  76:22
**We'll** 34:11
**we're** 9:1,19
  12:9  58:20
  65:17,18
  65:19
  75:23
**week** 17:15
  42:2
**Wendle** 1:9
  7:24  22:11
  29:16,18
  30:13
  31:15
  33:18  35:2
  40:1,13
  42:4  45:6
  50:3,5,7
  51:10
  53:19
  62:18  63:6
  69:18
**went** 10:14
  13:12
  23:24
  30:17  47:9
  51:22  52:9

Page 10

56:23 57:2
58:9,11
61:7,18,19
61:24,24
68:10
69:21
**witness** 4:3
7:12 75:20
76:14
**witnesses**
56:14,18
59:6
**won't** 8:19
**Wood** 56:22
58:14 66:8
**Woods** 58:8
**words** 14:23
**work** 21:20
21:22 40:4
63:2,10
64:7,9
69:2 75:5
**worked** 40:5
40:14
62:23,25
63:4
**working**
40:17 42:7
68:21
**wouldn't**
68:2
**write** 66:6
**wrote** 72:15

**X**

**X** 4:1

**Y**

**yard** 62:21
70:13,24
71:16
73:20 75:5
75:6,7,8
**yeah** 8:6 9:4
10:2,25
12:15,18
12:24 14:3
14:12,17
14:21
15:11,14

16:4 17:2
17:11,19
19:11
20:25
21:11,20
21:23
22:15,23
23:13,21
23:23 24:2
24:5,10,14
24:18,24
25:17 26:7
28:10,22
28:25
30:12,21
31:10 32:4
34:24
35:22 36:3
36:7,19
37:20
38:12,22
39:22 40:8
40:15 41:5
41:11,24
42:16 43:8
43:13 44:7
44:12 45:2
45:7,12
47:1,5,10
47:13,15
48:4 49:20
49:25 51:8
51:11,17
52:4,19,21
54:25
55:16 56:6
57:18
59:19
60:11,14
60:24 61:2
62:13,16
63:11,19
63:21
64:19 66:3
66:15,23
67:24
68:13,24
69:4,8
70:14,18
71:19,22

72:25
73:18,21
74:10,17
75:9
**years** 9:24
10:9 11:9
14:14,16
14:19 22:8
22:9,19,21
22:22 27:8
**yelling** 72:7
72:12
**you're** 29:21
74:14

**Z**

**Z** 11:6,8,13

**0**

**07/25/19**
76:10

**1**

**1** 5:5 45:19
45:22
**10:00** 72:1
**10:41** 2:13
**11:00** 70:25
72:1
**11:38** 75:25
**1100** 2:11
**15** 23:25
**15th** 3:9
13:12,13
13:16,17
25:3 27:11
**16th** 24:4,9
24:10,16
**17** 62:4
**17-1977** 8:2
**17120** 3:10
**17th** 24:10
24:17
**18** 13:7
21:17
35:12
38:24
39:25
42:15
55:15,18

56:5
**18th** 12:12
12:19
24:10
27:16,24
39:12,24
43:12
44:11
53:13 54:1
54:7,24
56:9
**19th** 39:12
39:18,23

**2**

**2** 5:6 58:21
58:24
**20** 71:11
**2017** 12:13
12:19 14:4
17:22
21:17
23:25
27:16,24
35:12
38:24
39:25 41:9
62:6,12
68:20
**2018** 62:8,9
62:15 65:4
71:12,13
71:13
**2019** 1:19
2:12 76:24
**24th** 76:24
**25** 1:19 2:12
**25th** 52:2
**26** 41:9
**26th** 13:12
13:14 25:3
27:11 52:1
**27th** 71:3,6
**28th** 71:3,7

**3**

**4**

**4:17-CV-...**
1:7

**40** 45:18
**45** 5:5

**5**

**58** 5:6

**6**

**6:00** 27:23
35:10,11
70:23
**6:30** 27:23
35:11
36:17
39:14,16
67:21,22
**60** 45:10,11

**7**

**7** 4:5
**7:00** 70:24
**75** 4:5
**76** 4:6

**8**

**8:00** 36:21
37:18
38:19
**8:30** 36:18
36:22
37:19
38:19
39:16
67:21,22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
VS.

CAPT. B. HARRIS
LT. WENDLE
LT. R. CISCHKO
C/O. K. MYERS
C/O. B.A. OWES
C/O. MCCALLESTER

CIVIL ACTION RIGHTS NO #. _____

JUDGE: 4:17-CV-1977

JURY TRIAL DEMANDED

## I. COMPLAINT

PLAINTIFF HECTOR VARGAS TORRES, A PRO-SE FOR HIS COMPLAINT STATE AS FOLLOWS!

## II. PARTIES, & JURISDICTION AND VENUE

1) PLAINTIFF, HECTOR VARGAS TORRES, WAS CONFINED IN THE STATE CORRECTIONAL INSTITUTION LOCATED AT 1106 PIKE ST. HUNTINGDON, P.A. 16654-1112 FROM JUNE 7, 2016 TO PRESENT. PLAINTIFF IS CURRENTLY CONFINED IN THE RESTRICTED HOUSING UNIT (RHU).

2) PLAINTIFF, HECTOR VARGAS TORRES, IS AND WAS AT ALL TIME MENTIONED HEREIN AN INMATE, AND A CITIZEN OF THE UNITED STATES AND A RESIDENT OF STATE OF PENNSYLVANIA.

3) DEFENDANT, C/O. K. MYERS, IS EMPLOYED AS A PRISON GUARD - AT SCI- HUNTINGDON, 1106 PIKE ST. HUNTINGDON, P.A. 16654-1112. DEFENDANT C/O. K. MYERS, IS EMPLOYED AS A GUARD IN THE RESTRICTION HOUSING UNIT (RHU) FROM THE 6-2 AM SHIFT.

4) DEFENDANT, C/O. B.A. OWES, IS EMPLOYED AS A PRISON GUARD, AT SCI- HUNTINGDON, 1106 PIKE ST, HUNTINGDON, P.A. 16654-1112. DEFENDANT, C/O. B.A. OWES, IS EMPLOYED AS A GUARD IN THE RESTRICTED HOUSING UNIT (R.H.U.) AND GENERAL POPULATION AS WELL THE 6-2 A.M. SHIFT.

EXHIBIT
1
PENGAD 800-631-6989

5.) DEFENDANT, C/O. McCALLISTER, IS EMPLOYED AS A PRISON GUARD AT SCI-HUNTINGDON, 1100 PIKE ST. HUNTINGDON, PA. 16654-1112, DEFENDANT C/O. McCALLISTER, IS EMPLOYED AS A PRISON GUARD IN THE RESTRICTED HOUSING UNIT ("R.H.U.") AND THE ("POC/OBS") IN MEDICAL DEPARTMENT ROOM AS WELL THE 6-2 AM SHIFT.

6.) DEFENDANT. LT. WENDLE, IS EMPLOYED AS A PRISON LIEUTENANT GUARD AT SCI-HUNTINGDON, 1100 PIKE ST. HUNTINGDON, PA. 16654-1112. DEFENDANT LT. WENDLE IS EMPLOYED AS A LIEUTENANT IN THE RESTRICTED HOUSING UNIT ("R.H.U.") AND GENERAL POPULATION AS WELL THE 6-2 AM SHIFT.

7.) DEFENDANT. LT. CISCO IS EMPLOYED AS A PRISON LIEUTENANT GUARD, AT SCI-HUNTINGDON, 1100 PIKE ST. HUNTINGDON, PA. 16654-1112. DEFENDANT LT. CISCO, IS EMPLOYED AS A LIEUTENANT IN THE RESTRICTED HOUSING UNIT ("R.H.U.") AND THE ("POC/OBS") IN MEDICAL DEPARTMENT ROOM AS WELL THE 6-2 AM SHIFT.

8.) THIS ACTION ARISE UNDER AND IS BROUGHT PURSUANT TO 42. U.S.C. § 1983 TO REMEDY THE DEPRIVATION, UNDER COLOR OF STATE LAW OF RIGHTS, GUARANTEED BY THE FOURTH, EIGHTH AND FOURTEETH AMENDMENT TO THE UNITED STATES CONSTITUTION VIOLATION. THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. § 1731 & 1343 (B).

9.) PLAINTIFF CLAIMS FOR INJUNCTIVE RELIEF ARE AUTHORIZED BY RULE 65 (A) OF THE FEDERAL RULES OF CIVIL PROCEDURES.

10.) THIS CAUSE OF ACTION ARISE IN THE MIDDLE DISTRICT OF PENNSYLVANIA, THEREFORE VENUE IS PROPER UNDER 28 U.S.C. § 1391 (A).

## III - PREVIOUS LAWSUITS BY PLAINTIFF

11.) PLAINTIFF HAS FILE OTHER LAWSUIT DEZING WITH THE FACTS INVOLVED IN THIS ACTION OR OTHER WISE RELATING TO HIS IMPRISONMENT.

12.) MY LAWSUIT IS OF EXCESSIVE FORCE USED AND ASSAULT AND THE USE OF THE RESTRAINING CHAIR UNIT BY DEFENDANTS C/O. LT. LEEDOM, ET. AL., IN THE MIDDLE DISTRICT COURT HOUSE. JUDGE: MATTHEW W. BRANN CASE NO# 4:18-CV-0044 THE CASE IS STILL PENDING TWO MOTION OF SUMMARY JUDGMENT AND ONE DESPOSITION, THIS LAWSUIT WAS FILED ON JANUARY 11, 2018, STILL PENDING IN THE FEDERAL COURT HOUSE AS A 42 U.S.C. § 1983.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

13) PLAINTIFF DID EXHAUSTED HIS ADMINISTRATIVE REMEDIES BEFORE FILING THIS COMPLAINT IN COURT. SEE EXHIBIT (A), (B), (C), (D), (E).

14) PLAINTIFF DID WROTE REQUESTS FORM TO SECURITY OF LT. EBELING AND HE STATED THAT MY ALLIGATIONS ARE BEING ADDRESSED AS FOLLOWS, SEE EXHIBIT (A)

15) AS OF THIS DATE APRIL 18, 2017. I HAVE NOT SEEN NO ONE FROM THE SECURITY OFFICE TO TALK TO ME ABOUT MY ALLIGATION THAT I FILE ON THIS C/O. K. MYERS ET. AL.

16) PLAINTIFF DID WROTE A REQUEST FORM TO THE MAYOR, SCOTT, WALTER, AS WELL EXPLAINING HIS ALLIGATION TO HIM ON APRIL 25, 2017. AND STILL DID NOT GET THAT REQUEST BACK WITH NO ANSWER OR NO RESPONSE. PLAINTIFF, STILL GOT BOTH COPY'S OF REQUESTS AND THE ANSWER FROM SECURITY OFFICER, LT. EBELING AS WELL SAYING MY COMPLAINT IS BEING ADDRESSED. SEE EXHIBIT (B)

17) PLAINTIFF DID FILE A GRIEVANCE ON APRIL 26, 2017 ON C/O. K. MYERS, ET. AL., WHEN HE GOT ALL HIS PROPERTY BACK DUE TO BEEN ON A ("POC/OBS") DRY CELL HANDCUFFED TO THE BUNK FOR "SEVEN" DAYS AS A CRUEL AND USUAL PUNISHMENT DUE TO PLAINTIFF BEING SLOWEDED A RAZZEBLADE.

18) PLAINTIFF ALSO APPEALS HIS INITIAL REVIEW TO TO THE FACITY MANAGER, ON JULY 24, 2017 AND THEN TO CENTRAL OFFICE THE FINAL APPEAL FOR IS EXHAUSTION TO BE COMPLAINTED, ALL THE WAY THROUGH ON AUGUST 23, 2017 TO EXHAUSTION HIS PROCESS OF REMEDIES AS WELL.

19) PLAINTIFF ALSO WROTE LETTERS TO JOHN WETZEL HEAD OF SECURITY OFFICE, SHERLEY MOORE THE DISTRICT PRISON REGINY SECURITY OFFICE AND OFFICE OF SPECIAL INVESTIGATION AND INTELLIGENCE, AND THE ABUSE NETWORK AND BCI/PREA COORDINATOR AND THOMAS WOLF THE GOVERNOR ON DIFFIRENTS DATES; SEE EXHIBIT (C) OF LETTERS.

### V.   STATEMENT OF CLAIM

20) AT ALL RELEVANT TIME HEREIN, DEFENDANT'S WERE "PERSONS" FOR THE PURPOSES OF 42 U.S.C. §1983 ACTED UNDER COLOR OF LAW TO, DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS, AS SET FORTH MORE FULLY BELOW.

# VI. STATEMENT OF FACTS

21) ON APRIL 15, 2017, PLAINTIFF HECTOR VARGAS TORRES CAME BACK FROM THE HOSPITAL J.C. BLAIR DUE TO A RAZOR IN HIS STOMACH WHEN HE WAS TAKEN TO THE ("POC/OBS") CELL AND PUT ON THE SHOWER WERE HE WAS STRIPSEARCH AND PUT ON A SMOCK AND WALKED INTO CELL #3 TO HIS BUNK AND WAS HANDCUFFED TO THE BUNK FOR NO REASON EXPLAINED AT ALL.

22) ON APRIL 18, 2017, PLAINTIFF HECTOR VARGAS TORRES WAS STILL HANDCUFFED TO HIS BUNK WHEN C/o. K. MYERS, ET. AL., CAME INTO HIS CELL FOR HIS VARILE SIGN CHECKED WITH A UNKNOW NURSE I TOLD THEM TO LEAVE ME ALONG, THIS C/o. K. MYERS GRAB MY HAND THAT WAS HANDCUFFED WITH FORCE AND PUSH IT TO THE WALL AND TOLD THE NURSE TO CHECK ME OUT. I PUSH HIS HAND AWAY FROM ME AND THIS C/o. K. MYERS GRAB MY HEAD AND STARTED TO SLAMING MY HEAD TO THE BACK OF THE BUNK IT'S ON THE TOP CORNER CAMERA OF THE "POO/OBS" CELL. THIS HAPPEN AROUND 6:00AM OR 6:30 A.M...

23) ON APRIL 18, 2017, PLAINTIFF HECTOR VARGAS TORRES WAS STILL HANDCUFFED TO HIS BUNK AROUND 8:00 AM OR 8:30 AM THIS DEFENDANT'S C/o. K. MYERS, ET. AL., CAME AGAIN TO MY CELL "I YELLED ASSAULT (I) TIME AND. C/o. K. MYERS CAME CLOSE TO ME AND ASSAULTED ME AGAIN, I YELLED FOR THE NURSE DEBRA KOS, AND FOR JESSICA COUSEN THE PHYSICALIGIANS AND ASK FOR SECURITY AS WELL AND WAS DENIAL OF ALL MY REQUEST AND PLEA FOR HELP.

24) ON APRIL 18, 2017 AT 8:30AM. PLAINTIFF HECTOR VARGAS TORRES TOLD C/o. McCALLISTER TO GET A HOLD OF MRS. JESSICA COUSEN OR SECURITY HE STATED "TO ME IT'S TO EARLY NO ONE IS IN YET". I TOLD THIS C/o. McCALLISTER, IT'S 8:30 A.M. AND YOU TELLING ME NO ONE IS IN THE BUILDING YET YOU ARE LIEING I WANT YOU TO CALL MAYOR. SCOTT. WALTER, HE ALSO REFUSE TO CONTACT HIM OR ANY OF THE DEPUTY IN CHARGE OR TO CALL THE SHIFT COMMENDER IN THE CONTROL BOOTH AS WELL.

25) PLAINTIFF HECTOR VARGAS TORRES WAS HANDCUFFED TO THE BUNK FOR "SEVEN" DAYS WITHOUT BEEN ABLE TO MOVE AROUND OR USE THE RESTROOM OR DRINK WATER AT ALL AND WAS FORCE TO SLEEP WITH HIS RIGHT HAND CUFFED TO THE BUNK DAYS AND NIGHT WITHOUT MOVEING WHICH IS A CRUEL AND UNSUAL PUNISHMENT AND A VIOLATION OF THE FORTH, EIGHTH & FOURHTEENTH AMENDMENT RIGHT AND DUE PROCESS RIGHTS AND THE CONSTITUTION AND FEDERAL LAW VIOLATION RIGHTS.

26.) AS PLAINTIFF HECTOR VARGAS TORRES, YELLED FOR A "MED TECH" AND THE BY STANDER DEFENDANT'S C/o. K. MYERS, ET. AL, SEEN THIS C/o. K. MYERS, ASSAULTING ME AND DID NOTHING, TO STOP HIM AT ALL OF HIS ACTION BUT LAUGH AT IT AND WHEN THEY LEFT THE "ROOM CELL #3" OUT OF THE CAMERA THEY ALL GAVE ME THE MIDDLE FINGER AS SAYING TO ME FUCK YOU VARGAS TORRES."

## VIII.   DEFENDANT'S

27.) DEFENDANT C/o. K. MYERS, DID CAME INTO THE "POC/OBS" CELL N°#3 WHERE PLAINTIFF HECTOR VARGAS TORRES WAS HOUSED DO TO MEDICAL REASON OF A RAZOR BLADE IN HIS STOMACH THIS C/o. K. MYERS, DID ASSAULTED, THE PLAINTIFF BY GRABING HIS FOREHEAD AND SLAMING HIS BACK OF THE HEAD TO THE BUNK "FIVE" TIMES, AND THE BY STANDER C/o. B.A. OWNS, ET. AL, DID NOTHING TO STOP THIS C/o. K. MYERS, FROM ATTACKING ME AND ASSAULTING ME, HE IS HELD LIABLE.

28.) DEFENDANT C/o. B. A. OWNS, DID CAME INTO THE "POC/OBS" CELL N°#3 WHERE PLAINTIFF HECTOR VARGAS TORRES, WAS HOUSED AT DO TO MEDICAL REASON OF A RAZOR BLADE IN HIS STOMACH THIS C/o. B. A. OWNS, ET. AL, JUST WATCHED THE ASSAULT AND DID NOTHING TO STOP HIS FELLOW COMPANION FROM ASSAULTING THE INMATE AT ALL, HE IS HELD LIABLE FOR HIS ACTION FOR FAILURE TO PROTECT THE PLAINTIFF.

29.) DEFENDANT LT. WENDLE, DID CAME INTO THE "POC/OBS" CELL N°#3 WERE PLAINTIFF HECTOR VARGAS TORRES, WAS HOUSED DO TO MEDICAL REASON OF A RAZOR BLADE IN HIS STOMACH THIS LIEUTENANT JUST WATCHED THE ASSAULT AND DID NOTHING TO STOP HIS FELLOW COMPANION FROM ASSAULTING THE PLAINTIFF AT ALL HE IS HELD LIABLE AS A LIEUTENANT FOR HIS ACTION ON FAILURE TO PROTECT THE PLAINTIFF.

30.) DEFENDANT C/o. McCALLISTER, DID SEEN THE WHOLE THING WHEN DOWN THROUGH THE T.V. CAMERA AND THE DOOR WAY TO THE CELL OF THE "POC/OBS" #3 HE WAS IN CHARGE OF WATCHING INMATE'S IN THE "POC" CELL FOR THERE SAFETY AND HEALTH AND HE FAIL TO PROTECT THE PLAINTIFF WHEN HE WAS ASSAULTED BY C/o. K. MYERS, INSIDE THE "POC/OBS" CELL N°# 3 WHEN THE PLAINTIFF WAS IN HANDCUFFED FOR (3) DAYS ON APRIL 18, 2017. WHEN IT HAPPEN PLAINTIFF DID NOT CAME OF HIS HANDCUFF UNTILL APRIL 20, 2017. THIS C/o. McCALLISTER, IS HELD LIABLE FOR HIS ACTION FOR FAILURE TO PROTECT.

30) DEFENDANT CTRCISKI DID CAME TO THE "POC/OBS" CELL NO.3 AND WAS THERE WHEN THIS C/O. MYERS ASSAULTED THE PLANTIFF AND HE JUST STOOD THERE AND WATCH THE WHOLE THING AND DID NOTHING TO STEP HIS C/O. K. MYERS FOR ASSAULTING ME AT ALL. HE IS A LIEUTENANT SUPERVISER AND HE IS HELD LIABLE FOR HIS ACTION AS WELL AND FOR FAILURE TO PROTECT PLAINTIFF AS WELL.

## COUNT ONE: BREACH OF DUTY TO PROTECT PLAINTIFF

31) DEFENDANT C/o. B. A. OWNS, EXERCISED DELIBERATE INDIFFERENCE TO PLAINTIFF HECTOR VARGAS TORRES, HEALTH AND SAFETY BY FAILING TO PROTECT HIM FROM A PRISON STAFF ATTACK EVEN THOUGH HE HAD BEEN INFORMED OF A THREAT TO PLAINTIFF HEALTH AND SAFETY. DEFENDANT C/o. B. A. OWNS, RECEIVED REPEATED REQUESTS ORAL FROM PLAINTIFF, THAT HE FEAR FOR HIS LIFE BEEN AROUND C/o. K. MYERS, DEFENDANT C/o. B. A. OWNS, DELIBERATE INDIFFERENCE TO PLAINTIFF HEALTH AND SAFETY DO TO THAT HE WAS ASSAULTED AND FURTHER DEMONSTRATED WHEN HE SPOKE TO PLAINTIFF THE DAYS AFTER PLAINTIFF HAD BEEN ATTACKED AND LAUGHED AT THE PLAINTIFF INJURIES.

32) DEFENDANT C/o. MCCALLISTER, EXERCISED DELIBERATE INDIFFERENCE TO PLAINTIFF HECTOR VARGAS TORRES, HEALTH AND SAFETY BY FAILING IMMEDIATELY TO PROTECT PLAINTIFF FROM AN ASSAULT ATTACK BY C/o. K. MYERS, AS SOON AS HE SAW IT HAPPING. INSTEAD THESE DEFENDANT'S C/o. K. MYERS, ET, AL, MERELY ACKNOWLEDGED TO THE PLAINTIFF THAT THEY SAW THE ASSAULT OF ATTACK AND DESPITE SEEING THAT PLAINTIFF HAD SUFFERED AND WAS SUFFERING SERIOUS INJURIES, THE DEFENDANT'S FAILURE TO STOP THE ASSAULT OF ATTACK IMMEDIATELY THEY FAIL TO DO SO, AS MALICIOUSLY AND SADISTICALLY.

33) DEFENDANT LT. WENDLE, EXERCISED IN DELIBERATE INDIFFERENCE TO PLAINTIFF HEALTH AND SAFETY BY FAILING IMMENATELY TO PROTECT PLAINTIFF FROM AN ASSAULT OF ATTACK BY C/o. K. MYERS, AS SOON AS HE SAW IT HAPPINING. INSTEAD THESE DEFENDANT'S C/o. K. MYERS, ET AL, MERELY ACKNOWLEDGED TO THE PLAINTIFF THAT THEY SAW THE ASSAULT OF ATTACK AND DESPITE SEEING THAT PLAINTIFF HAD SUFFERED AND WAS SUFFERING SERIOUS INJURIES, THE DEFENDANT'S C/o. K. MYERS, ET, AL, FAILED TO STOP THE ASSAULT OF ATTACK IMMEDIATELY THEY ALL FAIL TO DO SO, AS MALICIOUSLY AND SADISTICALLY.

35.) DEFENDANT LT. CISCO EXERCISED DELIBERATE INDIFFERENCE TO PLAINTIFF HEALTH AND SAFETY BY FAILING TO PROTECT HIM FROM C/O. K. MYERS, ASSAULT AND ATTACKING HIM EVEN THOUGH HE HAD BEEN INFORMED OF A THREAT TO PLAINTIFF HEALTH AND SAFETY. DEFENDANT LT. CISCO, RECEIVED REPEATED REQUESTS AND ORAL COMPLAINT ABOUT PLAINTIFF BEING ASSAULTED BY C/O. K. MYERS, ON HIM "TWO" TIMES IN THE "POC/OBS CELL NO#3. DEFENDANT LT. CISCO, DID DELIBERATE INDIFFERENCE TO FAILURE TO PROTECT PLAINTIFF HEALTH AND SAFETY WAS FURTHER DEMONSTRATED WHEN HE SPOKE TO MAYOR. SCOTT WALTER AND THE PLAINTIFF ON THE "SEVEN" DAY AFTER PLAINTIFF HAD BEING ASSAULT WITH PHYSICAL ASSAULT OF ATTACK AND LAUGHED AT THE PLAINTIFF INJURIES.

## COUNT/TWO: RETALIATIONS FOR FILEING GRIEVANCES AND CLAIMS ON SECTION 1983 CIVIL LAW SUIT IN COURT

36.) ALMOST IMMEDIATELY AFTER PLAINTIFF FILE A GRIEVANCE AGAINST C/O. K. MYERS ET. AL., DEFENDANT'S REPEATEDLY HARRASSED AND CAUSE HARM TO PLAINTIFF IN RETALIATION FOR THE GRIEVANCE HE FILE ON THEM. DEFENDANT'S C/O. K. MYERS. ET. AL., KEEP BURN PLAINTIFF FOR HIS YARDS AND SHOWERS DAYS AS WELL FOR NO REASON TO DO SO. "DEFENDANT'S C/O. K. MYERS, ET. AL.," CAME TO PLAINTIFF CELL EVERY MORNING AND SAYING TO THE PLAINTIFF YOU ARE NOT ON THE YARD LIST I SIGN UP FOR SHOWERS THE SAME THING HE KEEPS SAYING I'M NOT ON THE LIST AT ALL. THIS IS A RETALIATION TOWARDS ME AND A RETALIATION FOR MY ALLEGATIONS I MADE IN MY GRIEVANCE I FILE AGAINST C/O. K. MYERS, ET. AL., ...

37.) AFTER PLAINTIFF HECTOR VARGAS TORREL FILE A CIVIL RIGHTS ACTION AGAINST THE DEFENDANT'S C/O. LT. LEEDOM, ET. AL, IN SCI-CAMPHILL PRISON, PLAINTIFF SUFFERED MENTAL HEALTH AND A HISTORY OF SUICIDE ATTEMPT AND SELF-MUTILATION AND RETALIATION BY THIS DEFENDANT'S C/O. K. MYERS, EL, ALL, WHEN THEY APPROCHED THE PLAINTIFF TO SPEAK WITH HIM. DEFENDANT'S C/O. K. MYERS, ET. AL, START TO ASSAULT AND STRUCK PLAINTIFF ON HIS HEAD TO THE BACK OF HIS BUNK "FIVE" TIMES NEARLY KNOCKING PLAINTIFF OUT ON CONCHES. DEFENDANT'S JUST LOOKED AND FAIL TO CORRECT OR CHASTISE DEFENDANT C/O. K. MYERS, AS AS A RESULT OF THIS ASSAULT AND BATTERY, MERELY WARNING PLAINTIFF THAT " YOU KNOW WHAT YOU'VE GOT TO DO, TAKE CARE OF YOUR BUSINESS".

38.) A FEW WEEKS LATER, AFTER PLAINTIFF, HAD FILE A GRIEVANCE AGAINST DEFENDANT'S c/o, K, MYERS, ET, AL., FOR THE ABOVE INSIDENT. c/o, MYERS, ET/ALS, KEEP VERBALLY HARASSING AND DESTROYING HIS MAIL AND BOOKS THAT HE ORDER IN THE MAIL, IN RETALIATION FOR PLAINTIFF, FILING OF GRIEVANCE ON THEM. DEFENDANT'S c/o, K, MYERS, TOLD PLAINTIFF, THAT "HE WAS THE TYPE WHO LIKED TO FILE GRIEVANCES AND THAT IT DIDN'T MATTER IF VARGASTORRES, FILE A LAWSUIT BECAUSE VARGASTORRES, WASN'T GOING TO BE GETTING ANY MONEY AND THAT NOTHING WAS GOING TO BE DONE".

39.) THESE ACTS REPRESENT A PATTERN OF EVENTS DEMOSTRATING INTENTIONAL RETALIATION AGAINST PLAINTIFF HECTOR VARGAS TORRES, BY THIS DEFENDANT'S c/o, K, MYERS, ET, ALS, FOR FILING A GRIEVANCES AND REQUESTS TO SECURITY OFFICER'S LT, EBELING AND A CIVIL RIGHT ACTION AND HAVE CAUSE PLAINTIFF, FURTHER MENTAL ANGUISH AS A RESULT TO THIS ASSAULT.

### VIII. CLAIMS FOR RELIEF
#### A. FAILURE TO PROTECT PLAINTIFF

40.) THE FAILURE OF DEFENDANT c/o, B, A, OWNS, TO ACT ON HIS KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS HARM TO PLAINTIFF, VIOLATED HIS EIGHTH AMENDMENT RIGHTS TO BE FREE FROM DELIBERATE INDIFFERENCE TO HIS SAFETY.

41.) AS A RESULT OF DEFENDANT c/o, B, A, OWNS, FAILURE, PLAINTIFF WAS VICIOUSLY ASSAULTED AND RECEIVED SERIOUS PHYSICAL AND EMOTIONAL INJURIES.

#### B) DELIBERATE INDIFFERENCE OF THE BEATING AND ASSAULT ON PLAINTIFF BY DEFENDANT'S c/o, K, MYER, ET, AL.,

42.) THE FAILURE OF DEFENDANT'S c/o, K, MYERS, ET, AL, FOR THE FAILURE TO PROTECT OR TO TAKE STEP TO ENSURE THAT PLAINTIFF BE PROTECTED, DESPICE ITS KNOWLEDGE OF PLAINTIFF SERIOUS INTURIES, AND CONSTITUTED DELIBERATE INDEFFERENCE TO PLAINTIFF SERIOUS TO HIS PHYSICAL ASSAULT.

43) THE REFUSAL OF DEFENDANT; C/o. B.A. OWNS TO PROVIDE PROTECTION TO PLAINTIFF AS A RESULT OF PLAINTIFF, HAVING FILED A LAWSUIT AGAINST THEM FOR CONSTITUTED RETALIATION FOR PETITIONING GOVERNMENT FOR REDRESS OF GRIEVANCES AND THEREFORE VIOLATED THE FIRST AMENDMENT.

44) AS A RESULT OF DEFENDANT C/o. K; MYERS, FAILURE, PLAINTIFF WAS VICIOUSLY ASSAULTED AND RECEIVED SERIOUS PHYSICAL AND EMOTIONAL INJURIES,

45) DEFENDANT'S CAPT. B. HARRIS AND MAYOR, SCOTT, WALTER, AND LT. WENDEL BREACHED THAT DUTY BY FAILING TO PROVIDE PROTECTION WHEN PLAINTIFF INFORMED HIM OF HIS FEAR OF BEING ASSAULTED AND SHOWED DEFENDANT'S, THE DOCUMENTS ON REQUESTS AND GRIEVANCES SUPPORTING HIS FEAR.

46) THE BREACH OF DUTY RESULTED IN SERIOUS PHYSICAL AND EMOTIONAL INJURIES AND DAMAGES TO HIS HEAD AND HIS LEFT ARM.

47) THE BREACH OF THEIR DUTY PROXIMATELY CAUSED THOSE DAMAGES TO THE PLAINTIFF BY THEIR ASSAULTING AND BEATING HIM TOO.

## IX.   RELIEF REQUESTED

WHEREFORE, PLAINTIFF REQUESTS THAT THIS COURT GRANT THE FOLLOWING RELIEF!

A.) DECLARE THAT DEFENDANT C/o. B.A. OWNS, VIOLETED PLAINTIFF, EIGHTH AND FOURTEETH AMENDMENT RIGHTS WHEN HE FAILED TO PROTECT HIM, FROM A KNOWN RISK OF ASSAULT AND HE WAS SEVERELY ASSAULTED,

B.) DECLARE THAT DEFENDANT'S C/o. MCCALLISTER, ET. AL., DID VIOLATED PLAINTIFF, EIGHTH AND FOURTEETH AMENDMENT RIGHT TO PROTECT HIM FROM HARM.

C.) DECLARE THAT DEFENDANT'S CAPT. B. HARRIS, LT. WENDLE, LT. R. CISCHKO, DID VIOLATED PLAINTIFF EIGHT AND FOURTEETH AMENDMENT RIGHTS TO PROTECT PLAINTIFF FROM A ASSAULT.

D.) DECLARE THAT DEFENDANT'S C/O. K. MYERS, ET. AL, DID VIOLATED PLAINTIFF FIRST AMENDMENT RIGHT NOT TO BE RETALIATED AGAINST FOR FILING A LAWSUITS.

E.) ISSUE AN INJUNCTION REQUIRING THAT DEFENDANT'S CAPT. B. HARRIS, ET. AL, PROVIDE THE TRANSFER OF PLAINTIFF TO A DIFFERENT DEPARTMENT OF CORRECTIONS TO BE SAFE AND PROTECTED AS WELL.

F.) AWARD COMPENSATORY DAMAGES FOR PLAINTIFF, PHYSICAL AND EMOTIONAL INJURIES, AND PUNITIVE DAMAGES AGAINST EACH OF THE DEFENDANT'S CAPT. B. HARRIS, ET. AL AND

G.) GRANT PLAINTIFF SUCH OTHER RELIEF AS IT MAY APPEAR PLAINTIFF, IS ENTITLED TO.

### C.) NEGLIGENT FOR FAILURE TO PROTECT PLAINTIFF

43) DEFENDANT'S CAPT. B. HARRIS, ET. AL, OWED PLAINTIFF, A DUTY OF REASONABLE CARE TO PROTECT HIM FROM ASSAULTS BY STAFF OR OTHER PRISONERS AS IT IS BY LAW.

44.) DEFENDANT'S LT. R. CISCHKO, LT. WENDLE, DID VIOLATED THE BREACH OF DUTY TO PROTECT PLAINTIFF, FROM DEFENDANT C/O. K. MYERS, ET. AL FROM ALL ASSAULTING HIM WHEN HE WAS HANDCUFFED TO A POC/OBS BUNK FOR (7) DAYS 24 HOURS A DAY.

45.) THIS DEFENDANT'S CAPT. B. HARRIS, ET. AL, DID FAILURE TO PROTECT THE PLAINTIFF, FROM BEEN ASSAULTED WHILE IN THE POC/OBS IN MEDICAL AND FAIL TO DO SO AS BY D.O.C. POLICY AND THE LAW AS WELL.

10.

46) A FEW WEEKS LATER, AFTER PLAINTIFF, HAD FILE A GRIEVANCE AGAINST DEFENDANT'S C/o. K. MYERS, ET. AL, FOR THE ABOVE INCIDENT. C/o. K. MYERS, ET. AL, KEEP VERBALLY HARASSING AND DESTROYING HIS MAIL AND BOOKS THAT HE ORDER IN THE MAIL, IN RETALIATION FOR PLAINTIFF FILLING OF THE GRIEVANCE ON THEM. DEFENDANT'S C/o. K. MYERS, TOLD PLAINTIFF THAT "HE WAS THE TYPE WHO LIKED TO FILE GRIEVANCES AND THAT IT DIDN'T MATTER IF VARGAS TORRES, FILE A LAWSUIT BECAUSE VARGAS TORRES, WASN'T GOING TO BE GETTING ANY MONEY AND THAT NOTHING WAS GOING TO BE DONE."

47) THESE ACTS REPRESENT A PATTERN OF EVENTS DEMOSTRATING INTENTIONAL RETALIATION AGAINST PLAINTIFF HECTOR VARGAS TORRES, BY THIS DEFENDANT'S C/o. K. MYERS, ET. AL, FOR FILLING A GRIEVANCES AND REQUESTS TO SECURITY OFFICER'S LT. EBELING AND A CIVIL RIGHT ACTION AND HAVE CAUSE PLAINTIFF, FURTHER MENTAL ANGUISH AS A RESULT TO THIS ASSAULT.

## VIII. RELIEF REQUESTED

WHEREFORE, PLAINTIFF HECTOR VARGAS TORRES, REQUESTS THAT THIS COURT GRANT THE FOLLOWING RELIEF:

A) DECLARE THAT DEFENDANT C/o. B. C. OWNS, VIOLATED PLAINTIFF FORTH, EIGHTH AND FOURTHTEEN AMENDMENT RIGHTS WHEN HE FAIL TO PROTECT HIM FROM A KNOWN RISK OF ASSAULTS AND HE WAS SEVERELY ASSAULT. HE IS HELD LIABLE FOR HIS ACTION ON FAILURE TO PROTECT;

B) DECLARE THAT DEFENDANT C/o. MCCALLISTER, VIOLATED PLAINTIFF FORTH, EIGHTH AND FORTHTEEN AMENDMENT, WHEN HE SEEN AND FAIL TO PROTECT PLAINTIFF FROM A KNOWN RISK OF ASSAULT AND HE WAS SEVERLY ASSAULT. HE IS HELD LIABLE FOR HIS ACTION ON FAILURE TO PROTECT;

C) DECLARE THAT DEFENDANT LT. WENDLE, VIOLATED PLAINTIFF FORTH, EIGHTH AND FORTHTEEN AMENDMENT RIGHTS WHEN HE SEEN AND FAIL TO PROTECT PLAINTIFF, FROM A KNOWN RISK OF ASSAULT AND HE WAS SEVERALY ASSAULTED HE IS HELD LIABLE FOR HIS ACTION ON FAILURE TO PROTECT;

E) DECLARE THAT DEFENDANT C/o. K. MYERS, ET AL, VIOLATED PLAINTIFF FIRST, FORTH EIGHTH AND FOURTEEN AMENDMENT RIGHTS FOR THIS, RETALIATION AGAINST PLAINTIFF FOR FILLING A LAWSUIT ON OTHER CORRECTIONAL OFFICER'S AT A DIFFERENT STATE PRISON;

F) ISSUE AN INJUNCTION ORDER REQUERING THAT THIS DEFENDANT'S C/o. K. MYERS, ET AL, STAY ALWAY FROM PLAINTIFF AND TO HAVE NO CONTACT WITH HIM AS ORDERED BY THE COURTS;

G) AWARD COMPENSATORY DAMAGE FOR PLAINTIFF PHYSICAL AND EMOTIONAL INTURIES, AND PUNITIVE DAMAGE AGAINST EACH DEFENDANT C/o. K. MYERS, ET AL, AND;

H) GRANT PLAINTIFF HECTOR VARGAS TORRES, SUCH OTHER RELIEF AS IT MAY APPEAR TO PLAINTIFF IS ENTITLED TO.

I) AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNTS!

1) # 100, 000 JOINTLY AND SEVERALLY AGAINST DEFENDANT'S C/o. K. MYERS, ET AL., FOR THE PHYSICAL AND EMOTIONAL INTURIES SUSTAINED AS A RESULT OF THE PLAINTIFF BEING ASSAULTED AND BEATING.

2) # 50, 000 JOINTLY AND SEVERALLY AGAINST DEFENDANT'S LT. WENDLE AND LT. R. CISZKO, FOR THE PUNISHMENT, INCLUDING DEPRIVATION OF LIBERTY AND AMENITY AND EMOTIONAL INTURIES RESULTING FROM THEIR DENIAL OF DUE PROCESS IN CONNECTION WITH THE PLAINTIFF BEEN ASSAULTED.

3) $ 30, 000 JOINTLY AND SEVERALLY AGAINST DEFENDANT'S LT. WENDLE, LT. R. CISZKO, C/o. MCCALLISTER, C/o. B.A. OWNS, FOR THE PHYSICAL AND EMOTIONAL INTURIES RESULTING FROM THEIR FAILURE TO PROTECT THE PLAINTIFF.

5) AWARD COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNT!

1) # 20, 000 EACH AGAINST DEFENDANT'S C/o. K. MYERS, C/o. B·A·OWNS, C/o. MCCALLISTER, LT. WENDLE AND LT. R. CISZKO, AP. B. HARRIS.

2) $60,000 EACH AGAINST DEFENDANT'S LT. WENDLE AND LT. O. SIKO

3) $80,000 EACH AGAINST DEFENDANT'S C/o. K. MYERS, C/o. B.A. OWENS, C/o. McALLISTER, LT. WENDLE AND LT.R.O.SIKO, CAP. B. HARRIS,

4) GRANT SUCH OTHER RELIEF AS IT MAY APPEAR THAT PLAINTIFF IS ENTITLED TO.

PURSUANT TO 28 U.S.C. §§ 1746 I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: OCTOBER 22, 20__

PRO-SE

HECTOR VARGAS TORRES
# JT-1711
1100 PIKE ST
HUNTINGDON, PA- 16654-1112

13.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
   VS.

C/O. K. MYERS
C/O. B.A. OWNS
C/O. MCCALLISTER
LT. WENDLE
LT.R.CISCHKO
CAP. E. HARRIS

CIVIC ACTION RIGHT N°# _____

JUDGE: _____

JURY TRIAL DEMANDED

## VERIFICATION

I HAVE READ THE FORGOING COMPLAINT & ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION ORDER AND TEMPORARY RESTRAINING ORDER, AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTER ALLEGED ON INFORMATION AND BELIEF. AND AS TO THOSE I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

EXECUTED AT SCI-HUNTINGDON ON OCTOBER 23 , 2017

PRO-SE

HECTOR VARGAS TORRES
# JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

14.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
          VS.

C/O. K. MYERS
C/O. B.A. OWNS
C/O. MCCALLISTER
LT. WENDLE
LT. CISCHKO
CAP. B. HARRIS

CIVIL ACTION RIGHT NO#! _____

JUDGE: _____

DECLARATION IN SUPPORT OF PLAINTIFF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

HECTOR VARGAS TORRES STATES:

1) I AM THE PLAINTIFF IN THIS CASE. I MAKE THIS DECLARATION IN
SUPPORT OF MY MOTION FOR A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION TO ENSURE THAT I RECEIVE NECESSARY
MEDICAL CARE.

2) AS SET FORTH IN THE COMPLAINT IN THIS CASE, I WAS ASSAULTED
BY C/O. K. MYERS, ON APRIL 18, 2017. DURING THE ASSAULT, ONE OF DEFENDANT
C/O. K. MYERS, SLAMDED MY HEAD TO THE BACK OF THE BUNK WHILE
I WAS HANDCUFFED TO A BUNK IN THE "POC" CELL NO# 3 WHICH IS A
CAMERA CELL.

3) I WAS HANDCUFFED TO THE "POC" BUNK FOR SEVEN DAYS WITH
NO ASSES TO THE RESTROOM OR WATER DRINKING. DO TO THAT I WAS
TO BE HANDCUFFED TO THE BUNK FOR SLOWING A RAZOR AND FORCE TO
SLEEP LIKE THAT AS WELL AS A PUNISHMENT.

4) PLAINTIFF, TOLD CAPTIAN B. HARRIS, OF THIS ASSAULT BY C/O. K. MYERS,
AND MAYOR. WALTER AND SECURITY AS WELL AND NO ONE BELIEVE
MY ALLIGATION THIS CHAPTAIN. HARRIS, "SAID TO ME I SEEN THE VIDEO
AND EVERYTHING YOU SAID IT'S A LIE DONT SAY I TOLD YOU THIS AND
YOU DID NOT HEAR THIS FROM ME".

1.

5) PLAINTIFF WAS DENIAL MEDICAL THREATMENT FOR HIS INJURIES AND AS TO BE TREATED AS WELL DC TC IN HIGH-RISK TO HIS HEALTH AND SAFETY TO HIS HEALTH ON HIM.

6) ON INFORMATION AND BELIEF, I HAVE NOT BEEN PROVIDED WITH PHYSICALOGICAL MENTAL HEALTH AVALVEATION BECAUSE IS AN INFORMAL POLICY AT SCI-HUNTINGDON, TO GIVING LOW PRIORITY TO THE MEDICAL NEED OF SEGREGATION INHATES AND OF REFUSING TO PROVIDE THEM WITH MEDICAL CARE OUTSIDE THE PRISON UNLESS THEIR MEDICAL CONDITION IS A LIFE-THAREATENING.

7) WHEN PLAINTIFF WAS ASSAULTED BY C/O. K.MYERS, PLAINTIFF BROKE OF THE HANDCUFFED RESTRAING AND WAS FORCE TO A RESTRAINTING CHAIR FOR THAT, BECAUSE I WANTED TO REPORT THIS OFFICER ACTIONS.

8) DEFENDANT'S C/O. B.A. OWNS, C/O. MCCALLISTER, LT. WENDLEAND LT. CISCO, DID WHAT THIS OFFICER K. MYERS DID TO ME ON THE POC"CELL, AS HE ASSAULTED TWO DIFFERENT TIME ONE WAS AT 6:00ATT OR 6:30 AM. AND THE SECOND WAS AT 8:00A.M. OR 8:30A.M. AGAINST ME AND THIS INDIVIDED DID NOTHING TO STOP HIM.

9) PLAINTIFF HECTOR VARGAS TORRES, FILE A GRIEVANCE ABOUT THIS ASSAULT AND ABUSE ALLIGATION, AND WROTE LETTERS TO JOHN WETZEL SECURITY OF CENTRAL OFFICE AND SHERLEY MOORE THE MIDDLE DISTRICT REGION DEPURTY THE OFFICE OF SPECIAL OF INTELLIGIONS OF INVESTIGATION, THE ABUSE NETWORK AND THE PREA COORDINATOR, MAYOR. WALTER, AND THE SECURITY OFFICE AS WELL. AND STAYED THAT HE WANTS AHMINISTRATED SEPERATION ON THIS OFFICER. K. MYERS AND HIS CO-CONSPIRED.

10) TOGETHER, THESE DEFENDANT'S C/O. K.MYERS, ETAL, ARE RESPONSIBLE FOR NOT PROTECTING THE PLAINTIFF OF THE ASSAULT AND ATTACK BY C/O. K. MYERS, AND THE ABILITY FOR NOT SEPERATING THIS OFFICER FROM THE PLAINTIFF, D O TC THAT PLAINTIFF IS IN THE RESTRICTED HOUSING UNIT UNTIL JUNE 17, 2018 OF HIS DC-TIME.

11.) FOR THE REASON SET FORTH IN THE MEMORANDUM OF LAW FILED WITHIN THIS MOTION, THE PLAINTIFF IS ENTITLED TO A FULL RESTRAINING ORDER REQUIRING THIS DEFENDANT'S TO STAY AWAY FROM THE PLAINTIFF HECTOR VARGAS TORRES, AND TO FOLLOW ALL COURT ORDERS BY THE JUDGE, TO THIS PRELIMINARY INJUNCTION TO THE DEFENDANT'S C/o. K. MYERS, ETAL, TO CARRY OUT ALL ORDER OF THE COURTS.

12) FOR THE FOREGOING REASONS, THE COURT SHOULD GRANT THE PLAINTIFF HECTOR VARGAS TORRES, MOTION IN ALL RESPECTS.

PURSUANT 28 U.S.C. §§ 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

DATED: <u>OCTOBER 22</u>, 2017

PRO-SE

HECTOR VARGAS TORRES
# JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES

vs.

C/O. K. MYERS
C/O. B. A. OWNS
C/O. McCALLISTER
LT. WENDLE
LT. CISCHKO
CAPT. HARRIS

CIVIL ACTION RIGHTS No# _____

JUDGE: _____

AFFIDAVIT OF PLAINTIFF

# AFFIDAVIT OF HECTOR VARGAS TORRES

I, HECTOR VARGAS TORRES, BEING DULY SWORN ACCORDING TO THE LAW DEPOSE AND SAY THAT I AM THE PLAINTIFF IN THE ABOVE ENTITLED PROCEEDING CASE AND STATE AS FOLLOWING:

1) I AM THE PLAINTIFF IN THE ABOVE PROCEEDING CASE.

2) PLAINTIFF HECTOR VARGAS TORRES, DID WROTE THIS COMPLAINT OUT TO THE BEST OF HIS KNOWLEDGE AND BELIEF.

3) I ALLEGED THAT THE STATEMENTS IN MY COMPLAINT & ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION ORDER AND TEMPORARY RESTRAINT ORDER ARE TRUE AND CORRECT.

4) PLAINTIFF MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MOTION FOR A FULL OR TEMPORARY RESTRAING ORDER AND PRELIMINARY INJUNCTION ARE TRUE & CORRECT.

5) PLAINTIFF STATEMENTS ON HIS COMPLAINT ARE TRUE TO WHAT HAPPEN TO HIM WHILE IN CORRECTION IN THE DEPARTMENT OF SCI-HUNTINGDON.

6) PLAINTIFF, HECTOR VARGAS TORRES, PRAY THAT THE COURTS WILL GRANT HIS RESTRAINING TEMPORAY ORDER TO PROTECT HIM FROM FURTHER RETALIATION BY THIS DEFENDANT'S.

7) THIS AFFIDAVIT IS TO ENFORCE PLAINTIFF COMPLAINT AND THE ORDER TO SHOW CAUSE OF HIS TEMPORARY RESTRAING ORDER AS WELL AND STATES THAT EVERY IS TRUE AND CORRECT TO HIS KNOWLEDGE AND BELIEF.

8) IN SUPPORT TO HIS COMPLAINT IS ATTACHED EXHIBIT (A) OF COPY'S OF REQUEST OF PERSON PLAINTIFF CONTACTED.

9) IN SUPPORT TO HIS COMPLAINT IS ATTACHED, EXHIBIT (B) LETTERS TO PEOPLE PLAINTIFF WROTE TO ABOUT HIS COMPLAINT.

10) IN SUPPORT TO HIS COMPLAINT IS ATTACHED, EXHIBIT (C) COPY'S OF HIS GRIEVANCE, INITIAL REVIEW RESPONSE, APPEAL TO THE FACILITY MANAGER AND APPEAL TO CENTRAL OFFICE AND THE LAST APPEAL DIVISION FROM CENTRAL OFFICE AS PROVE.

11) PLAINTIFF HECTOR VARGAS TORRES DO STATES THAT THE FORGOING STATEMENT ARE TRUE AND CORRET TO HIS ABLYLITY AND KNOWLEDGE AND BELIEF.

ALL OF THE INFORMATION I HAVE SUBMITTED IN SUPPORT OF MY CASE & COMPLAINT & ORDER TO SHOW CAUSE, IS TRUE AND CORRECT.

SIGN HERE BEFORE NATORY PUBLIC

SWORN TO BEFORE ME THIS _____ DAY OF _____, 2017

REFUSE TO SIGN
NATORY PUBLIC

2.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES

vs.

c/o K. MYERS
c/o B.A. OWNS
c/o. MCCALLISTER
LT. WENDLE
LT. CISCHKO
CAP. B. HARRIS

CIVIL ACTION RIGHTS NO # _____

JUDGE _____

AFFIDAT OF PLAINTIFF OF
VERIFICATION OF NOT BEIN
ABLE TO SIGN BY A PUBLIC
NOTARY.

## VERIFICATION

I DECLARE THAT I HAVE NOT BEEN ABLE TO HAVE THIS AFFIDAVIT OF
PLAINTIFF COMPLAINT & ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION
ORDER AND TEMPORARY RESTRAINING ORDER, NOTARIZED ACCORDING TO LAW
BECAUSE, THE LIBRARIAN STAFF REFUSE TO SIGN IT FOR ME AND DATE IS
WELL NOTARIZED. I THEREFORE DECLARE UNDER PENALTY OF PERJURY THAT
ALL OF THE STATEMENTS MADE IN THIS COMPLAINT & ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION ORDER AND TEMPORARY RESTRAINING ORDER, ARE
BOTH TRUE OF MY OWN KNOWLEDGE, AND I PRAY LEAVE OF THE COURTS
TO ALLOW THIS AFFIDAVIT, TO BE FILED WITH OUT NOTARIZATION ON THE
PLAINTIFF BEHALF.

DATED: OCTOBER 22 ___, 2017

PRO-SE
HECTOR VARGAS TORRES
# JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON PA-16654-1112

2.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
vs.

C/O. K. MYERS
C/O. B.A. OWNS
C/O. MCCALLISTER
LT. WENDLE
LT. CISCHKO
CAP. B. HARRIS

CIVIL RIGHT ACTION NO#! _____

JUDGE: _____

JURY TRAIL DEMANDED

## VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT & ORDER TO SHOW
CAUSE FOR PRELIMINARY INJUNCTION ORDER AND TEMPORARY
RESTRAINING ORDER. AND HEREBY VERIFY THAT THE MATTERS ALLEGED
THEREIN ARE TRUE, EXCEPT AS TO MATTER ALLEGED ON INFORMATION
AND BELIEF. AND AS TO THOSE I BELIEF THEM TO BE TRUE. I CERTIFY
UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND
CORRECT.

EXECUTED AT SCI-HUNTINGDON ON OCTOBER 23 ,2017.

PRO-SE

HECTOR VARGAS TORRES
# JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

EXHIBIT (A)

COPY'S OF REQUESTS

FORM ARE ATTACHED

AS EVIDENCE OF PROOF

TO SECURITY OFFICE.

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
CONNIE GREEN

2. Date: 4-26-17

3. By: (Print Inmate Name and Number)
HECtor Vargas Torres JT-1711

_____ Inmate Signature

4. Counselor's Name
Mr. ADAM

5. Unit Manager's Name

6. Work Assignment
None

7. Housing Assignment
RHU - DB 1002

8. Subject: State your request completely but briefly. Give details.

I TALKED TO MAYOR WALTER ABOUT ME FILEING THIS GRIEVANCE I WAS DISCARGE OF THE POC ON 4-18-17 BUT WAS HOUSED THEIR FOR SECURITY SEPERATION ON A STAFF ASSAULT ON ME I GOT MOVED TO READ-D and GIVEN ALL MY PROPERTY TO FILE THIS GRIEVANCE OF ABUSE AND ASSAULT CAN YOU FILE IT FOR ME IT'S NOT OVER THE "15" DAY'S IF ANY THING TALK TO MAYOR WALTER,

THANK YOU

9. Response: (This Section for Staff Response Only)

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date _____
                     Print              Sign

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
_Abuse Assault Officer_
_MAYOR WALTER_

2. Date: _4-25-17_

3. By: (Print Inmate Name and Number)
_Hector Vargas Torres JT-179_
_____
Inmate Signature

4. Counselor's Name
_Mr. ADAM_

5. Unit Manager's Name

6. Work Assignment
_NONE_

7. Housing Assignment
_RHU DB - 1002_

8. Subject: State your request completely but briefly. Give details.

On 4-24-17 around 9:00AM and 9:45AM I talked to you about this allegation of abuse assault that c/o MYLER did assault me when I was cuffed to the 'POC' bed by slamming my head to the bed five times it's all on camera and the LT. that was their saw the whole thing and his other officers and did nothing to stop him at all, after he got done they all left my and I bork the hand cuff to get a sap of officers from security to talk and I talk to CAP. PELS which he dismiss all my allegations as not being true, also I'll be contacting central office, OPIT, BOL and SHARRY MOORE, etc.

A GRIEVANCE IS FILE AS WELL

9. Response: (This Section for Staff Response Only)

To DC-14 CAR only ☐        To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date _____
                        Print              Sign

Revised July 2000

GA 1015

| | |
|---|---|
| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER**<br><br>## ANS<br><br>*ABUSE & ASSAULT ALLIGATION* | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| | |
|---|---|
| 1. To: (Name and Title of Officer)<br><br>SECURITY OFFICER | 2. Date: 4-25-17 |
| 3. By: (Print Inmate Name and Number)<br><br>Hector vargas Torres JT-1711<br><br>_____<br>Inmate Signature | 4. Counselor's Name<br><br>Mr. ADAM |
| | 5. Unit Manager's Name<br><br>? |
| 6. Work Assignment<br><br>None | 7. Housing Assignment<br><br>READ DB-1002 |

8. Subject: State your request completely but briefly. Give details.

ON THE ABOVE DATE 4-18-17 AROUND THIS TWO HOURS 6:00AM ORC:30AM AND 8:00AM AND 8:30AM I WAS ASSAULTED BY C/O. MYER, WHEN I WAS HAND CUFFED TO THE "POC" BED THIS OFFICER DID ASSAULT ME BELAUSE HE HURTED MY HAND THAT WAS CUFFED UP TO THE BED. THIS IS A RETALIATION AND A 8TH AMENDMENT RIGHT VIOLUTION OF DO PROSS TO FAILURE TO PROTECT AS WELL, I WANT TO PUT A MINISTRATIVE SEPERATION ON C/O. MYIER AND OR FOR ME TO BE TRANSFER OUT OF THIS PRISON AS WELL. ALSO I TALK TO MR. GROSS, MAYOR WALTER, CAP HARRIS AND NO INVESTION IS BEEN DONE ABOUT THIS MATTER, AT ALL.. YOU GET 5 WORKING DAYS TO ANSWER THIS REQUEST THANK YOU. BACK.

C/O I GOT A COPIEN FOR MY OWN FILE.

9. Response: (This Section for Staff Response Only)

*Your allegations are being addressed.*

| | |
|---|---|
| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |

Staff Member Name _LT. EASSLURE_ / _____ Date 4-27-17
Print                              Sign

Revised July 2000

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections |
|---|---|
| ABUSE & ASSAULT ALLIGATION | **INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| 1. To: (Name and Title of Officer)<br>SECURITY OFFICER | 2. Date: 4-25-17 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>HECTOR VARGAS TORRES JT-1711<br><br>_____ Inmate Signature | 4. Counselor's Name<br>Mr. ADAM |
|  | 5. Unit Manager's Name<br>? |
| 6. Work Assignment<br>NOTE | 7. Housing Assignment<br>READ/BB-1002 |

8. Subject: State your request completely but briefly. Give details.

ON THE ABOVE DATE 4-18-17 AROUND THIS TWO HOURS 6:00AM OR
6:30AM AND 8:00AM AND 8:30AM. I WAS ASSAULTED BY C/O K. MYERS
WHEN I WAS HANDCUFFED TO THE "POC" BED THIS OFFICER'S DID
ASSAULT ME BECAUSE HE HURTED MY HAND THAT WAS CUFFED UP
TO THE BED. THIS IS A RETALIATION AND A 8TH AMENDMENT RIGHT
VIOLATION OF DO PROCESS TO FAILURE TO PROTECT AS WELL. I WANT
TO PUT A ADMINISTRATION SEPERATION ON C/O K. MYERS AND OR
FOR ME TO BE TRANSFER OUT OF THIS PRISON AS WELL. ALSO I TALK
TO MR. GOSS, MAYOR SCOTT WALTER, CAPT B. HARRIS AND NC INVESTIGATION
IS BEEN DONE ABOUT THIS MATTER AT ALL.. YOU GOT (5) CWORKING
DAYS TO ANWER THIS REQUEST BACK.
                THANK YOU

CC: I GOT A CORBOW COPY
    FOR MY OWN FILE.

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
                    Print        Sign

Revised July 2000

EXHIBIT (B)

COPY'S OF REQUESTS FORM

TO MAYOR. SCOTT. WATER

AS PROOF OF EVIDENCE.

CC

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>MAYOR WALTER | 2. Date: 4-30-17 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Hoctor Vargas Torres JT-171<br>~~Inmate Signature~~ | 4. Counselor's Name<br>? |
| | 5. Unit Manager's Name<br>? |
| 6. Work Assignment<br>None | 7. Housing Assignment<br>GA-113 |

8. Subject: State your request completely but briefly. Give details.

MAYOR, WALTER I WOULD LIKE TO KNOW HOW I GOT MOVED ON 4-26-17 AT 7:00 P.M. BACK TO G/BLOCK WHEN YOU ORDER FOR ME STAY ON REAR DB-1002 DUE C/O MYER ASSAULTED ME WHEN I WAS ON THE "POC" CELL. AND THEY GOT ME HERE ON G/BLOCK WITH THIS CHAPTERS ONE OF US GOT TO GET MOVED UNTIL THE INVESTIGATIONS OVER AND I WANT THIS OFFICER MYER TO BE REMOVED OF G/BLOCK CAN YOU HELP ME OUT ON THIS MATTER. THANK YOU.

   YOU GOT (5) WORK DAYS TO ANSWER THIS
      REQUEST BACK AS POLICY STATES.

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
                        Print                    Sign

Revised July 2000

A1013

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   MAYOR, WALTER

2. Date: 4-30-17

3. By: (Print Inmate Name and Number)
   ~~Director Vargn Tirado(?)~~

   _Inmate Signature_

4. Counselor's Name
   ?

5. Unit Manager's Name
   ?

6. Work Assignment
   NONE

7. Housing Assignment
   ~~G/block 172~~

8. Subject: State your request completely but briefly. Give details.

MAYOR WALTER. I WOULD LIKE TO KNOW HOW I GOT MOVED ON 4-26-17 AT 7:00AM BACK TO G/BLOCK WHEN YOU ORDER, FOR ME TO STAY ON REAR DB-100% DUE C/O. MYERS ASSAULTED ME WHEN I WAS ON THE "TOC" CELL, AND THEY GOT ME HERE ON G/BLOCK WITH THIS C/O. MYERS ONE OF US GNOT TO GET MOVED UNTIL THE INVESTIGATION IS OVER AND I WANT THIS OFFICER. MYERS TO BE REMOVED OF G/BLOCK CAN YOU HELP ME OUT ON THIS MATTER. THANK YOU

YOU GOT (5) WORKING DAYS TO ANSWER THIS RESQUES BACK AS POLICY STATES.

9. Response: (This Section for Staff Response Only):

I was off for a week. I had you moved for Fever day to get your mind right. I'll be around on Friday to talk to you.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☑ |
|---|---|

Staff Member Name _____    _____ Date 5-2-17
                        _Print_                _Sign_

Revised July 2000

EXHIBIT (C)

COPY'S OF ALL LETTERS

TO PEOPLE THAT PLAINTIFF

CONTACTED AS PROOF OF

EVIDENCE.

THE TIMES-TRIBUNE

TO WHO IT MAY CONCERN                    (1)                    5-20-19

I'M WRITTING YOU THIS LETTER TO INFORM YOU THAT I WAS PHYSICAL ASSAULT WHYLE I WAS HAND CUFFED TO THE POC/ORS BED BY C/O. K. MYERS. I WROTE LETTERS TO CENTRAL OFFICE, TO THOMAS WOLF THE GOVERNOR. FIRE GRIEVANCE AND REQUESTS ASKING FOR ADMIN INSTACTED SEPERATION ON THIS OFFICER'S THAT WHERE ALSO INVOLED ARE C/O. B.A.OWNS, LT. WENDLE. LTR.CISCHKO, LT. CULBERT C/O. BARGER, RN. LSNCH, LPN. WAGNAN. WHERE ALL PRESENT AND C/O. MCCALLISTER. INMATE. THOMAS WOODS WAS WAS THERE TO WITNESS THE ASSAULT ON ME FROM THIS OFFICERS. I FEAR FOR MY LIFE BEING AROUND THIS PEOPLE I UNDERLINE HERE FOR YOU STILL THIS OFFICER'S WORKS IN THE "RHU" WERE I'M HOUSED IN 24/7 DAY A WEEK I ASK FOR A TRASFER TO NO USE. AT ALL I'M ASKING FOR YOUR HELP ON THIS MATTER I SEEN OTHER INMATES BEING ASSAULT BY THIS OFFICENS AS WELL THE ONE'S IN THE "DTU" PROGRAM AS WELL. PLEASE WRITE BACK OR HELP ME OUT TO GET OFF THIS PRISON TO A BETTER PRISON I BEING IN THE RHU" FOR 7' YEARS NOW AND THIS OFFICES ARE WRITING LIE MISCONDUCTS ON ME TO KEEP ON THE "RHU" FOR LIFE.
                    PLEASE HELP.

                              THANK YOU

TO: THE TIMES-TRIBUNE                    HECTOR VARGAS TORRES
    149 PENN AVE.                        # JT-1711
    SCRANTON, P.A. 18503                 SCI - HUNTINGDON.
    570-348 - 9100                       1100 PIKE ST
                                         HUNTINGDON, P.A. 16654...

WASHINGTON, D.C.                          5 - 7 - 17

To who it may concern

I'm writing to you this letter to inform you that I was PHYSICAL ASSAULT while I was in handcuffed to the Poc/aws Bed at c/o. K. MYERS I wrote letter to central office. To THOMAS Wolf THE GOVERNOR, FIGGRITUACE AND REQUESTS ASKING for ADMINISTRATED SEPARATION on this officers's THAT where ALSO INVOLU ARE C/o. K.A. OWES LT. WENDLE, LT.C.J.SHED LT. CULBERT, C/o. BARBER. R.W. LYNCH. LPN. WAGNER, WHERE ALL PRESENT AND C/o. McCALLISTER. INMATE/ THOMAS WOODS WAS THERE TO WITNESS THE ASSAULT on me from THIS officers. I FEAR for LIFE being aroun this People I UNDERLINE Here for you still THIS officers work in the RHU where I'M Housed in 24/7 DAY A week I ASK for A TRANSFER TO NO USE AT ALL I'M ASKING FOR your HELP on THIS MATTER. I SEEN OTHER INMATES being ASSAULT BY THIS officers AS well THE ONES in THE "DTU" PROGRAM AS well. Please write back or Helpme out to get off THIS PRISON to A DEHTS PRISON I being in the RHU (7) TIMES NOW AND THIS officers ARE WITH MS CONDUCT on me to keep on the RHU for LIFE. I want to Put this MATTER on Public NEWS PAPER and the INTERNET AS well for People To SEE. Please.

              THANK you.

TO: U.S. DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION.

601 D  ST. N.W.
WASHINGTON D.C. 20579

Hector Vergus Torres
H- JT- 1711
SCI. - Huntingdon
1100 PIKE ST
Huntingdon, PA. 16654  UR

# K,NG-2017-C76-019

DEAR: JAMES C. BARNACLE            ①                    5-18-17

I'M IN RECIEVED of YOUR LETTER STATERING THAT
YOU RECIEVED MY LETTERS, I'M ALSO IN CONCERN
THAT YOU SAID THAT YOU RECEIVE A CORRESPONDENCE FROM
THE SECRETARY'S OFFICE OR MAY 1 AND MAY 10, 2017. I NEVER
HEAR BACK FROM THAT OFFICES THAT I WROTE TO, ALSO
I WOULD LIKE ADDRESS TO YOU THAT YOU STATED THAT
THE INVESTIGATION IS NOT COMPLETE, AT THIS TIME, WELL
MY ISSUE IS THAT I ASK TO BE SEPERATED FROM THIS
C/O. K, MYERS, THAT ASSAULTED ME WHEN I WAS ON
THE POC/OBS CELL #3, I STATED ON MY LETTERS
THAT I WANTED A SEPERATION OF. AND IT MISTRADED FROM
THIS C/O. MYERS, AS D.O.C. POLICYS STATES! THAT
WHEN THERE IS A INVESTIGATION ON TWO PEOPLE THEY ASSAULT
GOT TO BE SEPERATED FROM EACH OTHER, UNTIL THIS
DAY 5-18-17 I HAVE NOT SEEN NOBODY FROM THE
SECURITY OFFICE AT ALL, ALSO I WROTE A REQUEST
TO MAYOR SCOTT. WALTER, AND SPOKE WITH HIM OR THE POC
APRIL 24, 2014 THAT I WANTED A ADMINISTRADED
SEPERATION OR C/O. K, MYERS, HE PUT ME OR READ
DR/002 OR APRIL 24, 2017 OR APRIL 26, 2017 AT HOWARD
7: OO PM. I WAS PUT ON THE G/BLOCK RHU.
AGAIN WHEN THIS C/O. K, MYERS WORKS THERE
EVERY DAY FROM 6-2 A.M. SHIFT IN THE MORNING
TIME SO WHY DO HE GOT TO BE CLOSE TO ME
I WANT TO BE SEPERATED AND FOR THIS HE SEEN
CHAPTIAN THAT TOLD ME THAT THE VIDEO DON'T
SHOW NOTHING AT ALL THAT I WROTE OR MY GRIEVANCE ABOUT
OF THE ASSAUL. THIS PEOPL
OVER BACK ➔

⑪                                    5-23-17

DEAR: THOMAS W. WOLF

I'M WRITING YOU THIS LETTER TO INFORM YOU THAT I AM A MENTAL HEALTH INMATE IN SCI-HUNTINGDON. I WAS TAKEN TO THE HOSPITAL DUE TO THAT I SLOWED A RAZOR, I CAME BACK FROM THE HOSPITAL AROUND 9:30 PM AND WAS PUT ON A SMOCK AND ON THE "POC" CELL HANDCUFFED TO THE BED FOR "SEVEN" DAYS AS A TOWART ORCHED TOWARDS MY HEALTH. I WAS FORCE TO SLEEP LIKE THAT AND GIVEN NO SHOWER AS WELL ON 4-18-17 AROUND 8:00 AM. I WAS ASSAULT BY C/O K. MYERS ON THE "POC" CELL I WAS HANDCUFFED TO THE BED AGAIN AT 9:00 OF 8:30 AM THIS C/O K. MYERS CAME INTO THE "POC" CELL AND ASSAULT ME SECOND TIME YOUR STAFF IN SCI-HUNTINGDON LIKE ONE CAPTAIN TOLD THAT HE SEEN THE VIDEO AND NOTHING HAPPEN LIKE I SAID IT DID. THIS PEOPLE ARE TEMPERING WITH VIDEO EVIDENCE TOWARDS MY ALLIGATIONS THAT I FILE ON THIS OFFICER, K. MYER, ET. AL., SEE "POC" VIDEO AND YOU WILL SEE THAT THIS OFFICER SLAMMED MY HEAD "FIVE" TIMES TOWARDS THE BACK OF THE BED AND NO ONE STOPPED HIM FOR HIS ACTION OF EXCESSIVE FORCE USED ON ME. I'M REQUESTING A ADMINISTRATION SEPERATION ON THIS OFFICER, K. MYERS, ET. AL., ON THIS PRISON I FEAR FOR MY SAFETY AND HEALTH AS WELL AND MY JUDGE WILL HEAR ABOUT THIS ASSAULT THAT HAPPEN TO ME BECAUSE OF MY CIVIL CASE I GOT ON SCI-CAMPHILL, MY WITNESSES ARE THE "POC" CAMERA AND INMATE THOMAS WOODS THAT WAS ON "POC" CELL NO # 1 RIGHT ACROSS FROM ME AND SAW THE WHOLE THING WHEN DOWN ON THE "POC" CELL JUST BECAUSE I REFUSE TO GE CHECKED FOR MY VELDE SIGN BY THE NURSES. ON THAT SAIF. I NEED YOUR HELP PLEASE. THIS HAPPEN IN CAMPHILL AND NOW HERE AGAIN THIS WOULD NOT STOP AND D TOLD MAYOR WALTE I WANTED A SEPERATION ON C/O K. MYERS AND HE PUT ME ON REAR DB 10-12 AND OF 25. BACK TO C/BLOCK THE "RHU" WHERE C/O K. MYERS STILL IS WORKING AT!   OVER→

THANK YOU

BCI - / PREA                        ①                        4-30-17

TO WHO IT MAY CONCERN

I'M WRITTING YOU THIS LETTER TO INFORM YOU THAT I'M A MENTAL HEALTH INMATE, I WAS ON THE "POC" CELL FROM 4-15-17 TO 4-26-17 ON 4-18-17 AROUND 6:00AM. AND 8:34AM. C/O. K. MYERS, CAME INTO THE "POC" CELL AND WOKE ME UP. "STATED THE NURSE WANT'S TO CHECK YOUR VELDED SIGN, I SAID NO HE GRAB MY HAND AND HELD IT HARD TOWARDS THE WALL WHICH I WAS HANDCUFFED TO THE BED AND I TOLD HIM YOU ARE HURTING ME LET ME GO I TRY TO GET UP TO PUSH HIS HAND ALWAY FROM ME AND HE STARTED TO SLAM MY HEAD TO THE BACK OF THE BUNK (5) TIMES IT'S ON THE "POC" TOP CORNER CAMERA I TOLD C/O. McCALLISTER, TO CALL THE NURSE DEBRA KOS, OR MRS. JESSICA COUSEN, THE PHYSICAGICAL AND TO CALL SECURTY OFFICES TO NOTIFY OF MY ASSAULT THAT HE WITNESS AND HE NEVER DID HE COVER IT AS A LIE, A CAPTIAN. R. HARRIS, CAME TO MY DOOR AND TOLD HIM OF MY ALLIGATION OF ASSAULT. A WEEK LATER I SAW HIM AGAIN AND HE STATED I SEEN THE VIDEO AND IT DON'T SHOW NOTHING THAT YOU SAY ABOUT THE ASSAULT OF THIS C/O K. MYERS SLAMING MY HEAD ON THE BED SO THEY ARE TEMPERING WITH VIDEO EVIDENCE TO HIDE THEIR OFFICE'S MISTAKES AND WRONG DOING TO US INMATE AND DELATE IT FROM THE VIDEO FOOTAGE AS WELL IS A FEDERAL OFFENCE OF LAW AND A VIOLATION AS WELL. I NEED YOUR HELP TO ENVISTIGATE THIS MATTER DEPER INTO YOUR HANDS I WAS HANDCUFFED TO THE "POC" BED FOR (7) DAYS WITH NO MOVEMENT AT ALL.

THANK YOU

TO: BCI / PREA COORDINATOR
1800 ELMERTON AVE,
HARRISBURG, P.A. 17110

ABUSE NETWORK                                   ① 4-30-17

. TO WHO IT MAY CONCERN

I am writing you People to let you know that I
WAS ASSAULTED TWO TIMES BY C/o. MYERS; ET. AL, AND THIS
INDIVIDUALS ARE TEMPERING WITH EVIDENCE OF VIDEO FOOTAGE AS WELL.
I cuffs IN THE 'POC CELL FROM 4-15-17 TO 4-26-17   DO TO
ME HAVING A RAZOR IN MY STOMCH, I WAS HAND CUFFED TO THE
'POC' BED FROM 4-15-17 TO 4-21, 2017 WITH ME HARD TO SLEEP
WITH THE HAND CUFFED TO THE BED BY ONE HAND AND FORCE TO
SLEEP LIKE THAT. ON 4-18-17 AROUND 6:00AM OR 6:30AM. C/o MYERS
CAME INTO THE 'POC' CELL AND SLAMDED MY HEAD FIVE TIMES TO
THE BACK OF THE BED AND THE BY STANDER C/o. J, AND NURSE DID
NOTHING TO STOP THIS OFFICER FOR HIS ACTION. DO TO MY HEALTH
BEEN IN DANGER AND HAND CUFFED TO THE BED FOR SEVEN DAYS
WITH OUT BEEN ABLE TO MOVE AT ALL OR TO USE THE RESTROOM
OR DRINK WATER. UNTIL THIS DAY I FEAR FOR MY LIFE BEEN
AROUND THIS OFFICER, MYERS THAT I WAS SUPOST TO BE SEPERATED
DO TO THE INVESTIGATION AND HE IS STILL ON THE R.H.U. WORKING
WHERE I AM HOUSED AT, I NEED YOU PEOPLE TO DO A IN-
VESTIGATION ON THIS ASSAULT ON ME FROM THIS OFFICER, MYERS
ET AL.,

            THAN YU

, C,
   CORBEN
      .COPY it
         IN THE FILES
            TO FAMILY                    TO: THE ABUSE NE WORK
                                           P.O. BOX 268
                                           31 S. DORCAST GROUND FLOOR
                                           LEWISTOWN, PA. 17044
                                           717-242-2944

4-30-17

OSII

TO WHO IT MAY CONCERN

I'M WRITTING YOU THIS LETTER TO INFORM YOU THAT I'M AN MENTAL HEALTH INMATE WITH MENTAL PROBLEM I WAS TAKEN TO THE HOSPITAL DO TO THE NATURE THAT I SLOWER A RAZOR BLADE. I CAME BACK TO THE PRISON AT 5:30 P.M. AND PUT ON THE "POC" WITH A SMOCK AND HANDCUFFED TO THE "POC" BED ON 4-15-17 ON 4-18-17 AROUND 6:00 AM AND 6:30 AM. C/O MYERS CAME INTO THE "POC" CELL WITH OTHER OFFICER AND BECAUSE HE HURTER MY HAND AND I TRY TO PUSH HIM AWAY FROM ME HE ASSAULT ME BY SLAMING MY HEAD FIVE TIME TO THE BACK OF THE BUNK IT'S ON THE "POC" TOP CORNER CAMERA AS PROOF AND THE D.O.C. OFF SECURITY DID TEMPER WITH EVIDENCES OF VIDEO FOOTAGE. ON THAT SAME DAY 4-18-17 AT 8:00 AM OR 8:30 AM AGAIN I WAS ASSAULTED A SECOND TIME BY THE SAME OFFICER. C/O. MYERS, I TALKED TO MR. GOSS THE HEAD PHYCIALIANS & MAYOR. WATEK, THAT I FEAR FOR MY LIFE BEEN AROUND THIS OFFICER. I WAS PUT ON REAR DB-1002 UNTIL THE INVESTIGATION WAS OVER ON 4-26-17 I WAS MOVE BACK TO THE G/BLOCK WHICH IS THE RESTRICTED HOUSING UNIT "RHU" WERE THIS OFFICER IS THIS WORKING AT WHEN MAYOR. WALTEK ORDER ME TO BE SEPARETE FROM THIS OFFICER. MYERS UNTIL THE OUTCOME OF THE INVESTIGATION, I NEED YOUR HELP OF THIS MATTER AS SOON AS POSSIBLE TO GET ME REMOVE OF THIS BLOCK OR THIS OFFICER. MYERS OFF THE UNIT DO TO MY LIFE IS IN DANGER BEEN AROUND HIM.

P.S.
    I HOPE TO HEREFROM YOU PEOPLE SOON

TO: CENTRA OFFICE
    OS II
    1920 TECHNOLOGY PARKWAY
    MECHANICSBURG, PA. 17050-8028

4-30-17

DEAR: SHERLEE MOORE

I'M WRITING YOU THIS LETTER TO INFORM YOU THAT I AM A MENTAL HEALTH INMATE IN SCI-HUNTINGDON. I WAS TAKEN TO THE HOSPITAL DO TO THAT I SWALLOWED A RAZOR, I CAME BACK FROM THE HOSPITAL AROUND 8:30AM. AND WAS PUT ON A SMACK AND ON THE "POC" CELL IN HANDCUFFED TO THE BED FOR "SEVEN" DAYS AS A TOWARTORCHED TOWARDS MY HEALTH. I WAS FORCE TO SLEEP LIKE THAT AND GIVEN NO SHOWER AS WELL ON 4-18-17 AROUND 6:00AM. I WAS ASSAULTED BY C/O. MYERS ON THE "POC" CELL WELL I WAS HANDCUFFED TO THE BED AGAIN. AT 8:00 OR 8:30AM THIS C/O. MYERS CAME INTO THE "POC" CELL AND ASSAULT ME A SECOND TIME YOUR STAFF IN SCI-HUNTINGDON LIKE THE ONE CAPTAIN TOLD ME THAT HE SEEN THE VIDEO AND NOTHING HAPPEN LIKE I SAID IT DID. THIS PEOPLE ARE TEMPERING WITH VIDEO EVIDENCE TOWARD MY ALLIGATIONS THAT I FILE ON THIS OFFICER MYERS, ET. AL., SEE "POC" VIDEO AND YOU WILL SEE THAT THIS OFFICER SLAMMED MY HEAD "FIVE" TIMES TOWARDS THE BACK OF THE BED AND NO ONE STOPPED HIM FOR HIS ACTION OF EXCESSIVE FORCE USE D ON ME. I'M REQUESTING AMINISTRATION SEPERATION ON THIS OFFICER'S MYERS, ET. AL, ON THIS PRISON I FEAR FOR MY SAFETY AND HEALTH AS WELL. AND MY JUDGE WILL HEAR ABOUT THIS ASSAULT THAT HAPPEN TO ME BECAUSE OF MY CIVIL CASE I GOT ON SCI-CAMPHILL. MY WITNESS ARE THE "POC" CAMERA AND THOMAS WOODS THAT WAS ON "POC" CELL NO#1 RIGHT ACROSS FROM ME AND SAW THE WHOLE THING WHEN DOWN ON THE "POC" CELL JUST BECAUSE I REFUSE TO GET CHECKED. FOR MY VALDEIS SIGN BY THE NURSES ON THAT SHIFT, I NEED YOUR HELP PLEASE. THIS HAPPEN IN IAMPHILL AND NOW HERE AGAIN THIS WOULD NOT STOP AND I TOLD MAYOR WALTER I WANTED A SEPERATION ON C/O. MYERS AND HE PUT ME ON REAR DB-1002 AND ON 4-25-17 I WAS MOVE BACK TO G/BLOCK THE RHU. WHERE C/O. MYERS STILL WORKING AT AS A C/O.,

THANK

TO: CENTRAL OFFICE
1920 TECHNOLOGY PARKWAY
MECHANICSBURG, PA. 17050-8028

4-30-17

DEAR: JOHN WETZEL

I'M WRITING YOU THIS LETTER TO INFORM YOU THAT I AM A MENTAL HEALTH INMATE IN SCI-HUNTINGDON. I WAS TAKEN TO THE HOSPITAL DO TO THAT I CHEWED A RAZOR, I CAME BACK FROM THE HOSPITAL AROUND 8:30AM. AND WAS PUT ON A SMACK AND ON THE POC CELL HANDCUFFED TO THE BED FOR SEVEN DAYS AS A TOWARTORCHED TOWARDS MY HEALTH, I WAS FORCE TO SLEEP LIKE THAT AND GIVEN NO SHOWER AS WELL ON 4-18-17 AROUND 6:00 A.M. I WAS ASSAULTED BY C/O. MYERS ON THE POC CELL WELL I WAS HANDCUFF TO THE BED BED AGAIN AT 8:00 OR 8:30 A.M. THIS C/O. MYERS CAME IN TO THE POC CELL AND ASSAULT ME A SECOND TIME YOUR STAFF IN SCI-HUNTINGDON LIKE ONE CAPTAIN TOLD THAT HE SEEN THE VIDEO AND NOTHING HAPPEN LIKE I SAID IT DID. THEY PEOPLE ARE THAMPERING WITH VIDEO EVIDENCE TOWARDS MY ALLIGATIONS THAT I FILL ON THIS OFFICER MYERS, ET. AL, SEE POC VIDEO AND YOU WILL SEE THAT THIS OFFICER SLAMMED MY HEAD FIVE TIMES TOWARDS THE BACK OF THE BED AND NO ONE STOPED HIM FOR HIS ACTION OF EXCESSIVE FORCE USED ON ME.. I IM REQUESTING A ADMINISTRATION SEPERATION ON THIS OFFICER'S MYERS ET. AL. ON THIS PRISON I FEAR FOR MY SAFTY AND HEALTY AS WELL AND MY JUDGE WILL HEAR ABOUT THIS ASSAULT THAT HAPPEN TO ME BECAUSE OF MY CIVIL CASE I GOT ON SCI-CAMPHILL MY WITNESSE ARE THE POC CAMERA AND INMATE THOMAS WOODS THAT WAS ON POC CELL NO. 1 RIGHT ACROSS FROM ME AND SAW THE WHOLE THING WHEN DOWN ON THE POC CELL JUST BECAUSE I REFUSE TO GET CHECKED FOR MY VELDED SIGN BY THE NURSES. ON THAT SHIFT. I NEED YOUR HELP PLEASE. THIS HAPPEN IN CAMPHILL AND NOW HERE AGAIN THIS WOULD NOT STOP AND I TOLD MAYOR WALTER I WANTED A SEPERATION ON C/O. MYERS AND HE PUT ME ON RCAR DB-1002 AND ON 4-25-17 I WAS MOVE BACK TO G/BLOCK THE RHU WHERE C/O. MYERS STILL IS WORKING AT AS A C/O.

THANK YOU

TO: CENTRA OFFICE
1920 TECHNOLOGY PARKWAY
MECHANISBURG, PA. 17050-0028

7-5-17

TO WHO IT MAY CONCERN
OR. WILLIAM DIMASCIO

I'M WRITTING TO YOU PEOPLE TO LET YOU KNOW IF I
could TALK TO SOME ONE from your office that does Not leave,
IN HUNTINGDON or SMITH COUNTY because this Prison won't let
them IN. I WAS ASSAULTED BY C/O. K. MYERS, WHEN I WAS
ON THE "POC/OBS" IN MEDICAL on 4/18/17 when I WAS STILL
HAND cuffed to the Bed for "SEVEN" days WITH OUT MOVING
or been able to USE the rest Room at all or to drink some
water. I Need your Help ON this MATTER Please I wrote
Letters TO John WENTZEL, SHERLEY Moore, THANES WOLF THE
GOVERNOR - OSII, BCI/PREA, THE ABUSENETWORK TO NO AVALIBLE
US AT ALL. ALL I need Help with a lawyer ON this MATTER
as well to Help Me out because I'M a Mental Health inMate
IN THIS PRISON. MY CONTACT INFORMATION IS ON THE LEFT
CORNER OF THE ENVELOPE FOR YOU TO CONTACT ME BACK AS
SOON AS POSSIBLE Please.
                        THANKYOU

TO: WILLIAM DIMASCIO
    245 N. BROAD ST #300
   PHILADELPHIA, P.A. 19107-1518
   215 564-6005

DEAR REBECCA WILLS                    G · 15 · 17

I'M WRITING TO INFORM YOU THAT I TRY TO CALL THE
ABUSE NETWORK BUT I GET NO ANSWER from your OFFICE AT ALL,
I want TO REPORT TO YOU THAT I WAS ASSAULTED ON APRIL 18, 2017
when I was IN THE POC/OBS CELL # 3, BY C/o. K. MYERS, I wrote
TO EVERY ONE IN CENTRAL OFFICE AND THE GOVERNOR THOMAS WOLF TOO
NO USE I FILE A GRIEVANCE on MY ALLEGATIONS, AS well STILL NO
USED THEY STILL GOT THIS C/o. K, MYERS working at THE RHU.
where I am HOUSED AT AND where He works AT. I ASK For A
SEPERATION AS well AND TO NO USE AT ALL. I need your Help
on this MATTER AS well I CONTACTED THE NEWS PAPER IN THIS
AREA TO inform them of wHAT is going on AND the Department of
Justice IN wASHINGTON DC. AS well to NO USE AT ALL,

         Please COME AND SEE or HAVE some one TO
         SEE ME I REIN IN DANGER IN this PRISON,
         · PS –
              I Hope to Hear from you
                        soon,

                         TO: THE ABUSE NETWORK
                              P.O. BOX 268
                              21 S. DORCAS ST. GROUND FLOOR
                              LEWISTOWN, PA. 17044
                              717 - 242 - 2444

2 nd LETTER TO THIS
       PEOPLE




**pennsylvania**
DEPARTMENT OF CORRECTIONS

May 10, 2017

Hector Vargas-Torres, JT1711
State Correctional Institution Huntingdon

Dear Mr. Vargas-Torres:

This letter serves as a response to your correspondence addressed to the BCI/PREA Coordinator allegation reporting address, postmarked May 1, 2017. This reporting address was established for the purpose of reporting sexual abuse, sexual harassment and retaliation for reporting such claims. Your correspondence did not contain a PREA allegation and was referred to me for review and response.

The allegations of physical abuse contained within your letter were referred to the Office of Special Investigations and Intelligence (OSII) and to the security office at State Correctional Institution (SCI) Huntingdon for investigation.

I trust that the above information should sufficiently address your concerns.

Sincerely,

David Radziewicz
PREA Coordinator

DR/df

cc:   Director Carole Ann Mattis, Bureau of Standards, Audits and Accreditation
      Chief of Investigations Harold Kertes, OSII (w/ enclosure)
      Security Captain Kevin Stevens, SCI Huntingdon (w/ enclosure)
      file

Department of Corrections | Bureau of Standards, Audits and Accreditation | PREA Compliance Division
1920 Technology Parkway, Mechanicsburg, PA 17050
717.728.2092 | www.cor.pa.gov



pennsylvania
DEPARTMENT OF CORRECTIONS

May 15, 2017

Hector Vargas-Torres – JT1711
SCI Huntingdon

Dear Mr. Vargas-Torres:

The Office of Special Investigations and Intelligence recently received your correspondence from the Secretary's Office on May 3 and May 10, 2017.

Please be advised that your allegations are currently being investigated. The investigation is not complete at this time. Once completed, you will be notified in writing of the findings by the security office at the State Correctional Institution Huntingdon.

Sincerely,

James C. Barnacle
Director

JCB/djp

cc:   Security Office – SCI Huntingdon (w/enclosure)
      King – 2017-C76-019

Department of Corrections | Office of Special Investigations and Intelligence
1920 Technology Parkway | Mechanicsburg, Pennsylvania 17050
717.728.2033 | www.cor.pa.gov

EXHIBIT (D)

ORDER TO SHOW CAUSE FOR

PRELIMINARY INJUNCTION ORDER

AND RELIEF AND TEMPORARY

RESTRAINING ORDER   AS PROOF

OF EVIDENCE.

UNITE STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
vs.
C/o. K. MYERS
C/o. B.A.OWENS
LT. WENDLE
C/o. MCCALLISTER
LT. CISCHKO
CAPT. HARRIS

CIVIL RIGHT ACTION No.#: _____

JUDGE: _____

JURY TRAIL DEMANDED

ORDER TO SHOW CAUSE FOR PRELIMINARY
INJUNCTION ORDER AND TEMPORARY RESTRAINING
ORDER

UPON THE COMPLAINT, SUPPORTING AFFIDAVIT OF PLAINTIFF SWORN
TO THE 22 DAY OF OCTOBER, 2017, AND THE TRUE SWORN
STATEMENT IS A CORRECT AND TRUE TO MY BESTOFKNOWLEDGE.

ORDERED THAT THE ABOVE NAMES DEFENDANT'S C/o. MYER, ET AL,
TO SHOW CAUSE IN ROOM _____ OF THE UNITED STATES COURT-
HOUSE, 235 NORTH WASHINGTON AVE, SCRANTON, PA. 18501-1148 OR
THE _____ DAY OF _____ 2017, AT _____ O'CLOK _____ M OR
AS SOON THEREAFTER AS COUNSEL MAY BE HEAD, WHY PRELIMINARY
INJUNCTION SHOULD NOT ISSUE PURSUANT TO RULE 65 (A) OF THE
FEDERAL RULES OF CIVIL PROCEDURES ENJOINING THE DEFEDANT'S THEIR,
SUCCESSORS IN OFFICE, AGENTS, AND EMPLOYEES AND ALL OTHER PERSONS
ACTING IN CONCERT AND PARTICIPATION WITH THEM, FROM THESE
DEFENDANT'S C/o. MYERS, ET AL, TO NOT HAVE NO CONTACT WITH THE
PLAINTIFF NO WERE WHERE HE IS LOCATED AT OR HOUSED AT. DO
TO THAT THEY ASSAULTED THE PLAINTIFF TWO TIMES WELL ON THE
"POC" CELL AND PLAINTIFF WAS HANDCUFFED TO THE BUNK FOR "SEVEN"
DAYS.

IT IS FURTHER ORDERED THAT EFFECTIVE IMMEDIATELY, AND PENDING THE HEARING AND DETERMINATION OF THIS ORDER TO SHOW CAUSE, THE DEFENDANT'S C/O. MYERS, ET, AL, . AND EACH OF THEIR OFFICERS, AGENTS, EMPLOYEES, AND ALL PERSONS ACTING IN CONCERT OR PARTICIPATION WITH THEM, ARE RESTRAINED FROM ASSAULTING HIM AND DISTROY HIS PROPERTY AND HIS MAIL . AND TO BE SEPERATED FROM PLAINTIFF FROM THE PLACE HE IS HOUSED AT AS WELL AND TO DO NOT HARASS HIM WITH NO 3rd PARTY OFFICER'S .

IT IS ORDERED FURTHER THAT PERSONAL SERVICE OF A COPY OF THIS ORDER WILL BE THOUGH THE COURTS AND ANNEXED AFFIDAVIT UPON THE DEFENDANT'S C/O. MYERS_ET_AL, OR THEIR COUNSEL ON OR BEFORE _____ SHALL BE DEEMED GOOD AND SUFFICIENT SERVICE THEREOF .

BY THE UNITED STATES
DISTRICT COURTS JUDGE

DATE: OCTOBER 22, 2017

X_____
JUDGE

2.

IN THE UNITED STATES DISTRICT COUR
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
vs.

CAPT. B. HARRIS
LT. R. CISCHKO
LT. WENDLE
C/O. K. MYERS
C/O. B. A. OWNS
C/O. MCCALLISTER

CIVIL ACTION RIGHTS #: _____

JUDGE: _____

AFFIDAVIT OF PLAINTIFF, VERIFICATION
OF NOT BEIN ABLE TO SIGN BY A PUBLIC
NOTARY.

# VERIFICATION

I DECLARE THAT I HAVE NOT BEEN ABLE TO HAVE THIS AFFIDAVIT OF
PLAINTIFF, ORDER TO SHOW CAUSE FOR PRELIMINARY INTUNCTION ORDER & THE
MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION. NOTARIZED ACCORIDING TO
LAW BECAUSE, THE LIBRARIAN STAFF REFUSE TO SIGN IT FOR ME AND DATED
AS WELL NOTARIZED. I THEREFORE DECLARE UNDER PENALTY OF PERJURY
THAT ALL OF THE STATEMENTS MADE IN THIS ORDER TO SHOW CAUSE FOR A
PRELIMINARY INTUNCTION ORDER AND THE MEMORANDUM OF LAW THAT IS
ATTACHED AS WELL. ARE BOTH TRUE OF MY OWN KNOWLEDGE, AND I
"PRAY LEAVE OF THE COURTS TO ALLOW THIS AFFIDAVIT, TO BE FILED WITH
OUT NOTARIZED ON THE PLAINTIFF BEHALF.

DATED: OCTOBER 22, 2017.

PRO-SE
HECTOR VARGAS TORRES
# JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

3.

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
VS.

CIVIL ACTION RIGHTS NO# :_____

CAPT. B. HARRIS
LT. R. GISCHKO
LT. WENDLE
C/O. K. MYERS
C/O. B.A. GWES
C/O. MCCALLISTER

JUDGE: _____

JURY TRAIL DEMANDED

AFFIDAVIT

PLAINTIFF, HECTOR VARGAS TORRES, AFFIDAVIT IN SUPPORT OF HIS ORDER TO SHOW CAUSE FOR PRELIMINARY IN JUNCTION ORDER AND TEMPORARY RESTRAINING ORDER WITH ATTACH (EXHIBIT B) OF MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MOTION FOR A FULL OR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION RELIEF:

I, HECTOR VARGAS TORRES, BEING DULY SWORN ACCORDING TO THE LAW DEPOSE AND SAY THAT I AM THE PLAINTIFF IN THE ABOVE ENTITLED PROCEEDING CASE AND STATE AS FOLLOWING:

1) I AM THE PLAINTIFF IN THE ABOVE PROCEEDING CASE.

2) PLAINTIFF, HECTOR VARGAS TORRES, DID WRITE THIS COMPLAINT OUT TO THE BEST OF HIS KNOWLEDGE AND BELIEVES

3) I ALLEGED THAT THE STATEMENTS IN MY COMPLAINT OF ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION ORDER AND TEMPORARY RESTRAINING ORDER ARE TRUE AND CORRECT.

4) PLAINTIFF, HECTOR VARGAS TORRES, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MOTION FOR A FULL TEMPORARY RESTARING ORDER AND PRELIMINARY INJUNCTION ARE TRUE AND CORRECT.

5) PLAINTIFF STATEMENTS ON HIS ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION ORDER AND TEMPORARY RESTRAINING ORDER AND ATTACH OF MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A FULLER TEMPORARY RESTRAING ORDER OF RELIEF ARE TRUE AND CORRECT.

6) PLAINTIFF, HECTOR VARGAS TORRES PRAY THAT THE COURTS WILL GRANT HIS RESTRAINING TEMPORARY ORDER TO PROTECT HIM FROM FURTHER RETALIATION BY THIS DEFENDANT'S CAPT. B. HARRIS, ET. AL.,.

7) THIS AFFIDAVIT IS TO ENFORCE PLAINTIFF MOTION OF ORDER TO SHOW CAUSE OF HIS TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW IN SUPPORT OF HIS ORDER AS WELL AND STATE THAT EVERY IS TRUE AND CORRECT TO HIS KNOWLEDGE AND BELIEF.

8) IN SUPPORT TO HIS COMPLAINT AND MOTIONS IS (ATTACHED EXIBIT D&E) OF COPY'S OF THIS ORDERS AS PROOF.

9) EVERY THING THAT PLAINTIFF SAID ON HIS MOTION IS ALL TRUE AND CORRECT AND IN NEED OF HELP OF THE COURTS TO PROTECT HIM FROM HARM FROM THIS DEFENDANT'S.

10) PLAINTIFF ASK THE COURT TO GRANT HIS MOTION OF ORDER TO SHOW CAUSE AND THE MEMORANDUM OF LAW AS WELL THAT SUPPORT HIS (TRO).

11) PLAINTIFF, HECTOR VARGAS TORRES, DO STATES THAT THE FOREGOING STATEMENTS ARE ALL TRUE AND CORRECT TO HIS ABILITY AND KNOWLEDGE AND BELIEF.

ALL OF THE INFORMATION I HAVE SUBMITTED IN SUPPORT OF MY CASE & ORDER TO SHOW CAUSE, IS TRUE AND CORRECT.

SWORN TO BEFORE ME THIS
_____ DAY OF _____ 20___.

_Hector Vargas_
SIGN HERE BEFORE NOTARY PUBLIC

REFUSE TO SIGN
NOTARY PUBLIC SIGNATURE

2.

EXHIBIT (E·)

COPY'S OF MEMORANDUM OF LAW

IN SUPPORT OF PLAINTIFF MOTION

FOR A FULL OR TEMPORARY RESTRAINING

ORDER AND PRELIMINARY INJUNCTION

AS PROOF OF EVIDENCE.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
VS.
C/o. K. MYERS
C/o. B.A. OWNS
C/o. MCCALLISTER
LT. WENDLE
LT. CISCHKO
CAPT. HARRIS

CIVIL ACTION RIGHT No#: _____

JUDGE: _____

JURY TRIAL DEMANDED

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MOTION FOR A FULL OR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### STATEMENT OF THE CASE

THIS IS A CIVIL RIGHTS ACTION BROUGHT UNDER 42.U.S.C. §1983 BY A STATE PRISONER WHO WAS ASSAULTED BY PRISON STAFF AND WHO IS PRESENTLY BEING DENIED A APPROPRIATE SEPERATION. THE PLAINTIFF HECTOR VARGAS TORRES SEEKS A FULL OR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION TO ENSURE THAT HE RECEIVED THE PROPER PROTECTION FROM THIS DEFENDANT'S C/o. K. MYERS, ET. AL,, ..

### STATEMENT OF FACTS

AS. STATED IN THE DECLARATION SUBMITTED WITH THIS MOTION, THE PLAINTIFF HECTOR VARGAS TORRES, WAS ASSAULTED BY C/o. K. MYERS, AND SUFFEREDED HEADACHED FROM THIS C/o. K. MYERS, SLAMING HIS HEAD "FIVE" TIME TO THE BACK OF HIS BUNK AND WALL THAT CAUSE A LUMP IN HIS UPPER RIGHT EYE AND WAS DENIAL MEDICAL TREATMENT, ( DEC. AT §§ 2-3 ) STILL PLAINTIFF WAS HANDCUFFED TO THE BUNK WITH OUT MOVEMENT OR LITTLE TO MOVE AROUND ON HIS BUNK FOR "7" DAYS _ ( DEC. AT § 7 ) THE PLAINTIFF WAS FORCE TO A RESTRAINING CHAIR AFTER HE BROKEN THE HANDCUFF AND TOLD A CAPTIAN HARRIS WHAT REALLY HAPPEN~ ( DEC. AT §§ 4-10).

ARGUMENT

POINT 1.

THE PLAINTIFF IS ENTITLED TO A FULL OR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

IN DETERMINING WHETHER A PARTY IS ENTITLED TO A FULL OR A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION, COURTS GENERALLY CONSIDER SEVERAL FACTORS: WHETHER THE PARTY WILL SUFFER IRREPARABLE INJURIES, THE "BALANCE OF HARDSHIPS" BETWEEN THE PARTIES THE LIKELIHOOD OF SUCCESS ON THE MERITS, AND THE PUBLIC INTEREST, EACH OF THESE FACTORS FAVORS THE GRANT OF THIS MOTION.

A.) THE PLAINTIFF IS THREATENED WITH IRREPARABLE HARM

THE PLAINTIFF HECTOR VARGAS TORRES, ALLEGES THAT HE WAS PHYSICALLY ASSAULTED TWO TIMES BY C/O. M. MYERS, WITH PHYSICAL ASSAULT AND ABUSE. THE CONDUCT BY PRISON OFFICIALS IS A CLEAR VIOLATION OF THE EIGHT AMENDMENT. CONCEPCION V. MORTON, 125 F. SUPP. 2d 111, 126 (D.N.J. 2000) (ALLEGATIONS OF BEING STRUCK AND WHILE HANDCUFFED AFTER AN EARLIER ASSAULT INCIDENT SUPPORTED AN EXCESSIVE FORCE CLAIM) REV'D ON OTHER GROUNDS, 306 F.3d 1347 (3d CIR. 2002), "IS A FORM OF UNLAWFUL DELIBERATE IN DIFFERENCE,

AS A MATTER OF LAW, THE CONTINUING DEPRIVATION OF CONSTITUTIONAL RIGHTS CONSTITUTES IRREPARABLE HARM. ELROD V. BURNS, 427 U.S. 347 373, 96 S.CT. 2673 (1976): AMERICAN TRUCKING ASSOCIATIONS. INC. V. CITY OF LOS ANGELES, 559 F.3d 1046, 1058-59 (9TH CIR. 2009), THIS PRINCIPLE HAS BEEN APPLIED IN PRISON LITIGATION GENERALLY, SEE JOLLY V. COUGHLIN, 76 F.3d 468, 482 (2d CIR. 1996): U.S. V. LAVELLEE, 439 F.3d 670 (10TH CIR. 2006), NEWSOM V. NORRIS, 888 F.2d 371, 378 (6TH CIR. 1989): MITCHELL V. CUOMO, 748 F.2d 804, 806 (2d CIR. 1984); MCLENDON V. CITY OF ALBUQUERQUE, 272 F.SUPP.2d 1250, 1259 (D.N.M. 2003), AND SPECIFICALLY IN PRISON OF STATE CORRECTIONS OF ASSAULTS TOWARDS INMATES. HUDSON, 503 U.S. AT 7-8 ("STANDARD APPLIES" WHENEVER PRISON OFFICIALS STAND ACCUSED OF ASSAULT AND USING EXCESSIVE PHYSICAL FORCE AND ABUSE IN VIOLATION OF CRUE AND UNUSUAL PUNISHMENTS CLAUSE") (EMPHASIS SUPPLIED).

2.

IN ADDITION, THE PLAINTIFF IS THREATENED WITH IRREPARABLE HARM BECAUSE OF THE NATURE OF HIS ASSAULT THAT HE REPORTED, DO TO BEEN HANDCUFFED TO A BUNK FOR A LONG PRIOR OF TIMES AND LOSS OF MOVEMENT AND FUNCTIONAL TO MOVEMENT TO HIS WHOLE BODY.

## B) THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFF

IN DECIDING WHETHER TO GRANT "TRO's" AND PRELIMINARY INJUNCTIONS, COURTS ASK WHETHER THE SUFFERING OF THE MOVING PARTY IF THE MOTION IS DENIED WILL OUTWEIGH THE SUFFERING OF THE NON-MOVING PARTY IF THE MOTION IS GRANTED. SEE, E.G., MITCHELL V. CUOMO, 748 F.2d 804, 808 (2d CIR. 1984) (HOLD THAT DANGERS POSED BY PRISON CROWDING OUTWEIGHED STATES FINANCIAL AND ADMINISTRATIVE CONCERNS); DURAN V. ANAYA, 642 F. SUPP. 510, 527 (D.N.M. 1986) (HOLDING THAT PRISONER'S INTEREST IN SAFETY AND PROTECTION OUTWEIGHED STATE'S INTEREST ON PROTECTING THE PLAINTIFF FROM THIS STAFF ASSAULTS AND ABUSE.
IN THIS CASE, THE PRESENT SUFFERING OF THE PLAINTIFF AND HIS POTENTIAL SUFFERING IF HE PERMANENTLY STAY IN THIS RESTRICTED HOUSING UNIT WHERE THIS DEFENDANT'S C/O. K. MYERS, ET AL, WORKS FULL TIME. THE "SUFFERING'S THE PLAINTIFF WILL EXPERIENCE IF THE COURT DENIAL THE ORDER WILL CONSIST OF TAKING THE DEFENDANT'S SIDE TO A SUITABLE ORDER — SOMETHING THAT THIS DEFENDANT'S C/O. K. MYERS, ET AL, DID TO THE PLAINTIFF AND ARE OBLIGATED TO DO, FOR MEMBERS OF THE PRISON POPULATION ON A DAILY BASIS. THE HARDSHIPS OF DEFENDANT'S C/O. K. MYERS, ET AL, AMOUNT TO MORE THAN A BUSINESS AS USUAL.

## C) THE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

THE PLAINTIFF HECTOR VARGAS TORREL HAS A GREAT LIKEHOOD OF SUCCESS ON THE MERITS. WHAT DEFENDANT'S C/O. K. MYERS, ET AL, HAVE DONE — "INTENTIONALLY INTERFERING WITH [VIDEO EVIDENTS]" AS A RESULT TO THE ASSAULT" — WAS SPECIFICALLY SINGLED OUT BY THE SUPREME COURT AS AN EXAMPLE OF UN CONSTITUTIONAL "DELIBERATE INDIFFERENCE" TO PRISONERS WITH NEED OF HELP. MADRID V. GOMEZ, 889 F. SUPP. 1146, 1168-71, 1254-55 (N.D. CAL. 1995) (LEAVING PRISONER'S IN "FETAL RESTRAINTS" AS PUNISHMENT VIOLATED THE EIGHT AMENDMENT):

SEE, E.G., PUTMAN V. GERLOFF 639 F.2d 415, 419-20 (8TH CIR. 1981) ("JURY COULD FIND OVER NIGHT CHAINING AND HANDCUFFING OF PRISONER'S LOCKED IN CELLS UN CONSTITUTIONAL); PICARIELLO V. FENTON, 491 F.SUPP. 1026, 1039-40 (M.D. PA. 1980) ("THREE TO FIVE DAYS IN RESTRAINTS IN CELL CONSTITUTED TORT OF BATTERY). MILLER V. GLANZ, 948 F.2d 1562, 1564, 1567 (10TH CIR. 1991) (ALLEGATION THAT OFFICER'S KNOCKED DOWN AN INMATE WHO RESISTED HANDCUFFING DID NOT STATE AN EIGHT AMENDMENT CLAIM; ALLEGATION THAT THEY CAME BACK LATER AND BEAT HIM UP IN HIS CELL DID STATE A CLAIM); WILKINS V. GADDY ___ U.S. ___ 130 S.CT. 1179 (2010) (PER CURIAM) ("HOLDING PRISONERS WHO ALLEGED HE SUFFERED A BRUISED RIGHT FOREHEAD, RIGHT WRIST HAND, IN LOWING BLOOD PRESURE, HEADACHES DIZZINESS AND PSYCHOLOGICAL TRAMA WHEN HE WAS ASSAULTED AND HIS HEAD BEEN SLAMMED TO THE BACK OF HIS BUNK AND METAL WALL OF HIS CELL" MALICIOUSLY AND SADISTICALLY" AND WITHOUT ANY PROVOCATION" STATED AN EIGTH AMENDMENT CLAIM); WILKINS V. GADDY ___ U.S. ___ 130 S.CT. 1175, 1178-79 (2010) (PER CURIAM) ("AN INMATE WHO IS GRATUITOUSLY BEATEN BY GUARDS DOE NOT LOSE HIS ABILITY TO PURSUE AN EXCESSIVE FORCE CLAIM, MERELY BECAUSE HE HAS THE GOOD FORTUNE TO ESCAPE WITHOUT SERIOUS INJURIES," WHICH IT NEVER HAPPEN PLANTIFF STIFF RECEIVE INJURIES FROM THE ASSAULT.

D) THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

IN THIS CASE, THE GRANT OF RELIEF WILL SERVE THE PUBLIC INTEREST BECAUSE IT IS ALWAYS IN THE PUBLIC INTEREST FOR PRISON OFFICIALS TO OBEY THE LAW, ESPECIALLY THE CONSTITUTION, PHELPS-ROPER V. NIXON, 545 F.3d 685, 690 (8TH CIR. 2008); DURAN V. ANAYA. 642 F.SUPP. 510, 527 (D.N.M.198() ("RESPECT FOR LAW, PARTICULARLY BY OFFICIALS RESPONSIBLE FOR THE ADMINISTRATION OF THE STATE'S CORRECTIONAL SYSTEM, IS IN ITSELF A MATTER OF THE HIGHEST PUBLIC INTEREST."); LIEWELYN V. OAKLAND COUNTY PROSECUTOR'S OFFICE, 402 F.SUPP. 1378 2393 (E.D. MICH. 1975) ("STATING "THE CONSTITUTION IS THE ULTIMATE EXPRESSION OF THE PUBLIC INTEREST");

POINT 2.

## THE PLAINTIFF SHOULD NOT BE REQUIRED TO

## POST SECURITY

USUALLY A LITIGANT WHO OBTAINS INTERIM INJUNCTIVE RELIEF IS ASKED TO POST SECURITY. RULE 65(c), FED. R. CIV. P. HOWEVER, THE PLAINTIFF HECTOR VARGAS TORRES, IS AN INDIGENT PRISONER AND IS UNABLE TO POST SECURITY. THE COURT HAS DISCRETION TO EXCUSE AN IMPOVERISHED LITIGANT FROM POSTING SECURITY. ELLIOTT v. KIESEWETTER 98 F.3d 47, 60 (3rd CIR. 1996) ( STATING THAT DISTRICT COURTS HAVE DISCRETION TO WAIVE THE BOND REQUIREMENT CONTAINED IN RULE 65(c) OF THE FED. R. CIV. P. IF "THE BALANCE OF THE EQUITIES WEIGHS OVERWHELMINGLY IN FAVOR OF THE PARTY SEEKING THE INJUNCTION"): MOLTAN CO. v. EAGLE-PITCHER INDUSTRIES, INC., 55 F.3d 1171, 1176. (6TH CIR. 1995). IN VIEW OF THE SERIOUS ASSAULT & ABUSE OF DANGER CONFRONTING THE PLAINTIFF, HECTOR VARGAS TORRES, THE COURT SHOULD GRANT THE RELIEF REQUESTED WITHOUT REQUIRING THE POSTING OF SECURITY.

### CONCLUSION

FOR THE FOREGOING REASONS, THE COURT SHOULD GRANT THE THE MOTION IN ITS ENTIRETY.

DATED: OCTOBER 22, 2017

PRO-SE

HECTOR VARGAS TORRES
#JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

5.

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

HECTOR VARGAS TORRES
             VS,
CAPT, B, HARRIS
LT, WENDLE
LT, R, CISCHKO
C/O, K, MYERS
C/O, B, A, OWNS
C/O, MCGALLISTER
EACH INDIVIDUAL CAPACITY

CIVIL ACTION NO# _____

JUDGE: _____

## AFFIDAVIT

I __Hector Vargas Torres__ , SO HEREBY AVER THAT THE FOLLOWING
IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION
AND BELIEF. I UNDERSTAND THE PENALTIES UNDER TITLE 18
§ 4904, RELATING TO UNSWEAR FALSIFICATION TO AUTHORITIES
APPLIES.

## AFFIDAVIT & PROOF OF SERVICE OF CIVIL COMPLAINT

I HECTOR VARGAS TORRES , SO HEREBY AVER THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF,

I UNDERSTAND THE PENALTIES UNDER TITLE 18 § 4904 RELATING TO UNSWORN FALSIFICATION TO AUTHORITIES, APPLIES.

## PROOF OF SERVICE .

I, Hector Vargas Torres , DO HEREBY AVER THAT COPIES OF THE ATTACHED IS ENCLOSED LETTER HAVE BEEN MAILED TO THE BELOW LISTED PERSON(S) BY FIRST CLASS MAIL, POSTED PAID ON OCTOBER 22, 2017, IN COMPLIANCE WITH P.A. RULES OF CIVIL PROCEDURE, RULE 403,

## AFFIDAVIT

I, <u>Hector Vargas Torres</u>, SO HEREBY AVER THAT THE

FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE,

INFORMATION, AND BELIEF,

I UNDERSTAND THE PENALTIES UNDER TITLE 18 § 4904 RELATING

TO UNSWORN FALSIFICATION TO AUTHORITIES APPLIES,

### PROOF OF SERVICE

I, <u>Hector Vargas Torres</u>, HEREBY VERIFY THAT I AM THIS DAY

SERVING THE FOREGOING DOCUMENT(S) "<u>CIVIL COMPLAINT</u>" IN MANNER

LISTED BELOW WHICH SERVICE SATISFIES THE REQUIREMENTS

OF R.A.P. 121, THIS SERVICE ALSO SATISFIES THE REQUIREMENTS OF

THE PRISONER'S MAIL BOX ACT: ( COM V. JONES 700 A.2d 423;

HOUSTON V. LACK 108 S. CT. 2379);

<u>SERVICE BY FIRST CLASS MAIL</u>

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
235 N. WASHINGTON AVE
SCRANTON, P.A. 18501-1148

DATED: <u>OCTOBER, 22, 2017</u>

<u>PRO-SE</u>

HECTOR VARGAS TORRES
#JT-1711
SCI-HUNTINGDON
1100 PIKE ST
HUNTINGDON, PA. 16654

2.)

TO WHO IT MAY CONCERN    ⑩                10-22-17

I AM FILING THIS CIVIL COMPLAINT IN YOUR
COURT HOUSE WITH ATTACH EXHEBITS AND A
TRIO AS WELL. I need this on A NEW
DOCKET SHEET MARK AS COMPLAINT DOCKET (A)
((TRIO)) OF RESTRAINGORDER AS DOCKET (B) —
AFFIDAVIT AS DOCKET (C)  ALL MY EXHIBITS
FROM (A-C) AS DOCKET (D)  AFFIDAVIT of,
PLAINTIFF AS DOCKET (E) EXHIBIT (E) AS DOCKET
(F) OF MEHORANDUM OF LAW  AND AFFIDIVAT OF
SUPPORT OF TRUTH AS DOCKET (G)  PLease.

          THANK YOU

P.S. I Hope to Hear from you People
     soon with a need DOCKET SHEET
OF THIS CIVIL Case action with a DOCKET
     NO# Please. THANKYOU



# CIVIL COVER SHEET

THIS IS-44 CIVIL COVER SHEET AND THE INFORMATION CONTAINED HEREIN NEITHER REPLACE NOR SUPPLEMENT THE FILING AND SERVICE OF PLEADING OR OTHER PAPERS AS REQUIRED BY LAW. EXCEPT AS PROVIDED BY LOCAL RULES OF COURT. THIS FORM APPROVED BY THE JUDICIAL CONFERENCE OF THE UNITED STATES IN SEPTEMBER 1974 IS REQUIRED FOR THE USE OF THE CLERK OF COURT FOR THE PURPOSE OF — INITIATING THE CIVIL DOCKET SHEET.

1.) HECTOR VARGAS TORRES
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

SELF     DOCKET NO#
PRO-SE : _____

2.) CAPT. B. HARRIS, LT. WENDLE
LT. R. CISCHKO, C/O. K. MYERS, C/O. B.A. OWNS
C/O. MCCALLISTER, INDIVIDUAL CAPACITY
1100 PIKE ST
HUNTINGDON, P.A. 16654-1112

ATTORNEY NAME: NONE

3) ☒ U.S. GOVERMENT PLANTIFF

4) CITIZENSHIP OF PRINCIPAL PARTIES

☒ CITIZEN OF THIS STRATE PLAINTIFF

**FILED
SCRANTON**

OCT 30 2017

5) NATURE OF SUIT

PRISONER PETITIONS

NONE CATALOGY LISTED

PER _____ **DEPUTY CLERK**

☒ 550 CIVIL RIGHTS

6) ORIGIN
■ ORIGINAL PROCEEDING

7) CAUSE OF ACTION    42 U.S.C § 1983
CIVIL COMPLAINT ON ASSAULT ON PRISONER

8) REQUESTED IN
COMPLAINT:    DEMAND #340,000    JURY DEMAND: ☒ YES

9) RELATED CASE(S)
IF ANY    JUDGE: MATTHEW W. BRANN    DOCKET NO#: 4:16-CV-0044
DATE    SIGNATURES OF ATTORNEY OF RECORD   SELF PRO SE

FOR OFFICE USE ONLY

RECEIPT#_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____

_____ MAG JUDGE: _____



EXHIBIT 2

PENGAD 800-631-6989