# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR VARGAS TORRES,** | : | |
| **Plaintiff** | : | **No. 4:17-CV-1977** |
| | : | |
| **v.** | : | **Judge Brann** |
| | : | |
| **CAPT. B. HARRIS, LT. WENDLE,** | : | **Electronically Filed Document** |
| **C/O K. MYERS, C/O B. A. OWNS** | : | |
| *and* **C/O MCCALLISTER,** | : | *Complaint Filed 10/30/17* |
| | : | |
| **Defendants** | : | |

## DECLARATION OF CAPTAIN KEVIN STEVENS

I, Kevin Stevens, hereby declare under penalty of perjury in accordance with 28 U.S.C. §1746 that the following facts are true and correct based upon my personal knowledge or from my review of records routinely maintained during the operation of SCI Huntingdon.

1.    I am currently employed by the Pennsylvania Department of Corrections ("Department") at SCI Huntingdon as the Security Captain.

2.    I have been employed by the Department since [1996]. I have been Security Captain at SCI Huntingdon since [2016].

3.    As the Security Captain I am familiar with the Department of Corrections' policies and procedures regarding Administrative Custody and dry celling.

4.     DC-ADM 802 is the Department of Corrections (DOC) policy on Administrative Custody[1]. *See Attachment 1.*

5.     DC-ADM 802 Section 1.B.1.b authorizes the assignment of an inmate to administrative custody if "the inmate is a danger to himself/herself." *Attachment 1.*

6.     DOC Policy and Procedures Manual 6.3.1[2] "Facility Security" details the procedures for use of a dry cell.

7.     A dry cell is a designated cell used to monitor an inmate suspected of internally concealing contraband. *DOC 6.3.1, Section 30.D.*

8.     An inmate may be placed in a dry cell when "an inmate has informed staff that he/she has ingested an item." *DOC 6.3.1, Section 30.D.1.d.*

9.     Upon placement in the dry cell the inmate is handcuffed to the bed by securing an arm to the bunk furthest away from the toilet.  The medical department examines the restraints to ensure they are not restricting circulation. *DOC 6.3.1, Section 30.D.3.b.(5).*

---

[1] All references to DC-ADM 802 in this Declaration refer to the version of the policy and procedures manual that went into effect on November 14, 2016, and attached hereto as Attachment 1.

[2] This Facility Security policy contains sensitive confidential security information regarding prison protocols and therefore, may not be released to the public or to any inmate. As a result, the policy is not attached as an exhibit; however, reference is made to the specific sections.

10.    The handcuffs are removed for ten minutes every two (2) hours so that the inmate can exercise his/her arm.  The medical department again inspects the restraints for circulation. *DOC 6.3.1, Section 30.D.3.b(6).*

11.    This is known as a "dry cell exercise."

12.    Even if an inmate refuses to be exercised, the medical department must check an inmate's circulation. *DOC 6.3.1, Section 30.D.3.b(6).*

13.    When the handcuffs are removed for exercise, the inmate has the option of having the handcuffs moved to the other wrist.

14.    Dry cell exercises are typically recorded on video.


6 February 2020
Date

Kevin Stevens
Security Captain



| | |
|---|---|
| **POLICY STATEMENT** | |
| Commonwealth of Pennsylvania • Department of Corrections | |

| Policy Subject: | Policy Number: |
|---|---|
| **Administrative Custody Procedures** | **DC-ADM 802** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **October 31, 2016** | **Signature on File** | **November 14, 2016** |
| | **John E. Wetzel** | |

## I.  AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections, Department employees, volunteers, contract personnel, visitors, and inmates.

## III.  POLICY

It is the policy of the Department to place an inmate in Administrative Custody (AC) status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility.[1]

## IV.  PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

---

[1] 4-4249

## V.   SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI.   RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII.   RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.   Release of Information

1.   Policy

This policy document is public information and may be released upon request.

2.   Confidential Procedures (if applicable)

Confidential procedures for this document, if any, are <u>not public information</u> and may not be released in its entirety or in part, without the approval of the Secretary of Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as-needed basis.

### B.   Distribution of Policy

1.   General Distribution

The Department of Corrections policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2.   Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

**VIII. SUPERSEDED POLICY AND CROSS REFERENCE**

    **A. Superseded Policy**

        1.  Department Policy

            ***DC-ADM 802, Administrative Custody Procedures, issued November 24, 2014, by Secretary John E. Wetzel***

        2.  Facility Policy and Procedures

            This document supersedes all facility policy and procedures on this subject.

    **B. Cross Reference(s)**

        1.  Administrative Manuals

            a.  DC-ADM 007, Access to Provided Legal Services

            b.  DC-ADM 008, Prison Rape Elimination Act (PREA)

            c.  DC-ADM 801, Inmate Discipline

            d.  DC-ADM 803, Inmate Mail and Incoming Publications

            e.  ***DC-ADM 804, Inmate Grievance System***

            f.   DC-ADM 812, Inmate Visiting Privileges

            g.  DC-ADM 815, Personal Property, Basic/State Issued Items and Commissary/Outside Purchases

            h.  DC-ADM 816, Inmate Compensation

            i.   DC-ADM 818, Automated Inmate Telephone System

            j.  DC-ADM 819, Religious Activities

            k.  6.5.1, Administration of Security Level 5 Housing Unit

            l.   6.5.8, Capital Case Administration

            m.  ***11.2.1, Reception and Classification***

        2.  ACA Standards

            a.  Adult Correctional Institutions: ***4-4140***, 4-4249, 4-4250, 4-4253, 4-4254, 4-4256, ***4-4268***, 4-4269, 4-4270, 4-4273, 4-4281, 4-4404

b.  Adult Community Residential Services: 4-ACRS-3A-01, 4-ACRS-3A-02, 4-ACRS-3A-03, 4-ACRS-3A-04, 4-ACRS-6C-01, 4-ACRS-6C-02, 4-ACRS-6C-03

c.  Correctional Training Academies: None

d.  PREA: 115.43



PROCEDURES MANUAL
Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject:<br><br>**Administrative Custody Procedures** | | Policy Number:<br><br>**DC-ADM 802** |
|---|---|---|
| Date of Issue:<br><br>**October 31, 2016** | Authority:<br><br>**Signature on File**<br>**John E. Wetzel** | Effective Date:<br><br>**November 14, 2016** |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

*DC-ADM 802, Administrative Custody Procedures Manual*
*Table of Contents*

## Section 1 – Placement in Administrative Custody Status

A. Involuntary Protective Custody ....................................................................... 1-1
B. General Placement ........................................................................................ 1-2
C. Restricted Release List (RRL) Placement ...................................................... 1-4

RRL Placement/Annual RRL Review/Removal Request Form ............................ Attachment 1-A

## Section 2 – Administrative Hearings

A. General ......................................................................................................... 2-1
B. Waivers ........................................................................................................ 2-3
C. Appeals ........................................................................................................ 2-3
D. Periodic Review ............................................................................................ 2-4

## Section 3 – Administrative Custody Housing Status

A. General ......................................................................................................... 3-1
B. Program Considerations ................................................................................ 3-4

## Section 4 – Release from Administrative Custody Status

A. General ......................................................................................................... 4-1
B. Restricted Release List (RRL) ....................................................................... 4-2

DC-141, Part 3, Program Review Committee Action ........................................ Attachment 4-A

## Section 1 – Placement in Administrative Custody Status

### A. Involuntary Protective Custody (PC)

Inmates at a high risk for sexual victimization or inmates that have alleged abuse shall not be placed involuntarily in Administrative Custody (AC) as a means of protection unless an assessment of all available alternatives has been made by the Shift Commander. The Shift Commander in conjunction with the Prison Rape Elimination Act (PREA) Compliance Manager (PCM) and the on-call administration representative (e.g., Facility Manager, Deputy Superintendent for Facilities Management [DSFM], Deputy Superintendent for Centralized Services [DSCS]), will determine that there is no other available alternative means of separation from likely abusers. If the facility cannot conduct the assessment immediately, the facility may hold the inmate in involuntary AC for less than 24 hours while completing the assessment. **(28 C.F.R. §115.43[a])**

1. The staff must consider other alternative placements for an alleged victim and make the appropriate placement.

2. The staff should take into consideration the alleged victim's opinion regarding his/her own safety. Placement in AC is permissible when the victim requests or agrees to it. **(28 C.F.R. §115.42[c])**

3. Alternative placements can include, but are not limited to, any one, or combination of, the following temporary options:

   a. moving to a different housing unit;

   b. placement in a cell closer to the Corrections Officer's desk within the unit;

   c. placement in a single cell (Z Code); and

   d. placement in the Special Needs Unit (SNU).

4. If an involuntary AC housing assignment is made, the Shift Commander shall clearly document on the **DC-141, Part 1 (Other) Report** in the **DC-15**, the following information:

   a. the basis for the staff member's concern for the inmate's safety; **(28 C.F.R. §115.43[d][1])**

   b. the other alternative means of separation that were explored; and

   c. the reason why no alternative means of separation can be arranged. **(28 C.F.R. §115.43[d][2])**

Issued: 4/16/2019
Effective: 4/23/2019

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 1 – Placement in Administrative Custody Status*

5. If the Shift Commander assigns an inmate to involuntary AC for the purpose of protection from sexual victimization, access to programs, privileges, education, or work opportunities shall be afforded to that inmate to the extent possible. If the facility restricts access to these opportunities, the facility shall document in the **Involuntary Administrative Custody Services Access Restriction Form** in accordance with Department policy **DC-ADM 008, "Prison Rape Elimination Act (PREA),"** and in the **DC-15: (28 C.F.R. §115.43[b])**

   a. the opportunities that have been limited; **(28 C.F.R. §115.43[b][1])**

   b. the duration of the limitation; and **(28 C.F.R. §115.43[b][2])**

   c. the reasons for such limitations. **(28 C.F.R. §115.43[b][3])**

6. The facility may assign inmates to involuntary AC only until an alternative means of separation from likely abusers can be arranged and such assignment shall not ordinarily exceed 30 days. **(28 C.F.R. §115.43[c])**

7. At least every 30 days, the Program Review Committee (PRC) shall ensure each such inmate is reviewed to determine whether there is a continuing need for separation from the general population. This review shall be documented on the **DC-141, Part 3 (Other).** PRC review of PREA-related cases shall include the PCM as a member of the reviewing committee. **(28 C.F.R. §115.43[e])**

## B. General Placement

If placement consideration into AC does not involve ANY of the criteria listed in **Subsection A. above**, these general guidelines for AC placement shall be followed.

1. A general population inmate may be assigned AC status and placed in a Security Level (SL) 5 Housing Unit, including a Psychiatric Observation Cell (POC), by order of the Shift Commander and/or by order of a psychiatrist or a Certified Registered Nurse Practitioner – Psychiatric Services (PCRNP) for the following reason(s):[1]

   a. the inmate is in danger from some person(s) in the facility and cannot be protected by alternate measures, and/or the inmate is a danger to some person(s) in the facility and the person(s) cannot be protected by alternate measures;[2]

   b. the inmate is a danger to himself/herself;[3]

   c. the inmate is suspected of being involved in or is suspected of being the instigator of a disturbance;

---

[1] 5-6C-4404
[2] 5-3D-4281
[3] 5-3D-4281

1-2

Issued: 4/16/2019
Effective: 4/23/2019

**DC-ADM 802, Administrative Custody Procedures Manual**
*Section 1 – Placement in Administrative Custody Status*

d.  placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;[4]

e.  the inmate would pose an escape risk in a less secure status;

f.  the inmate has been charged with, or is under investigation for a violation of facility rules, and there is a need for increased control pending disposition of charges or completion of the investigation;

g.  the inmate has requested and been granted self-confinement;

h.  the inmate is being held temporarily for another authority. A Parole Violator (PV) *or unclassified* temporary transfer from another facility *shall be released to general population in accordance with Subsection B.2. below*;

i.  no records and/or essential information are available to determine the inmate's custody level or housing needs *in accordance with Subsection B.2. below*;

j.  the inmate has a detainer for a pending capital case, for which the prosecution is seeking the death penalty, or *is* a phase 1 capital case; and/or

k.  the inmate has completed a Disciplinary Custody (DC) sanction but one or more of the above reasons exist, (or the facility has an operational need [e.g., appropriate bed space] to temporarily assign the inmate to AC status).

2.  *Temporary transfers shall not be confined in restricted housing solely on the basis of a temporary transfer status. There must be additional supporting rationale that indicates the inmate is a risk, or at a risk, to release to general population. Facilities shall place all temporary transfers in general population except when exigent circumstances exist (i.e. unsentenced, DC, out of state PV, Final Discharge Maximum Expiration [FDME], hold for various authorities). The initial reception committee in conjunction with the PRC, shall review DOCinfo for any such indicators to base their decision on placing the inmate in restricted housing or releasing to general population when received.*

    *NOTE: Active separations shall not be a rationale used to place an inmate in restricted housing. Separations shall be managed internally without the use of AC unless exigent circumstances exist.*

3.  The following factors shall be considered by the PRC when reviewing an inmate for AC status placement as self-confinement:

    a.  verifiable and documented justification exists for placement;

---

[4] 5-3D-4281

Issued: 4/16/2019
Effective: 4/23/2019

    b.  the inmate is an obvious target for other inmates, consistent with the definition of PC; and

    c.  staff have made every effort (documented) to keep the inmate safely housed in general population.

4.  An inmate who has completed a DC sanction that was imposed in accordance with Department policy **DC-ADM 801, "Inmate Discipline"** may be placed in AC status by order of the PRC for any of the reasons identified in **Subsection B.3. above**; however, a hearing shall be held as described in **Section 2** of this manual.

5.  Whenever practical, written notice of the reasons for AC placement is given to the inmate prior to placement, but in all cases within 24 hours after placement. The written notice shall be prepared on the **DC-141, Part 1, Misconduct Report** by indicating "Other."[5]

6.  If the inmate has a mental illness, the PRC should explore the feasibility of placing him/her into a Secure Residential Treatment Unit (SRTU), Residential Treatment Unit (RTU), or an SNU as an alternative, as long as the inmate's safety is not jeopardized. If the inmate's safety cannot be reasonably assured in any status other than AC, then appropriate mental health services must be provided while the inmate remains in AC status.

7.  When an inmate is placed in AC status the Facility Manager/designee shall review the placement within 72 hours.

## C.  Restricted Release List (RRL) Placement

1.  The Facility Manager/designee may request that an inmate be placed on the RRL when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern. The Secretary/designee must approve placing the inmate in this status.

2.  Criteria for placing an inmate on the RRL includes, but is not limited to, the following:

    a.  assaultive history against staff;

    b.  assaultive history against inmate(s);

    c.  sexual abuse history;

    d.  escape history, or serious escape attempt;

    e.  threat to the orderly operation of a facility (i.e., attempting to organize inmates, demonstrated involvement in a Security Threat Group [STG] that poses a risk to the security of the facility, etc.);

---

[5] 5-6C-4404

Issued: 4/16/2019
Effective: 4/23/2019

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 1 – Placement in Administrative Custody Status*

   f.   Special Management Unit (SMU) graduate who remains a threat; and/or

   g.   SMU failure.

3.   The Facility Manager/designee will provide written rationale supporting the request that an inmate be placed on the RRL, to the ***Executive Deputy Secretary for Institutional Operations (EDSI)***/Regional Deputy Secretary via the **Restricted Release List Placement/Annual RRL Review/Removal Request Form (Attachment 1-A)** along with a current Psychological Evaluation. The form shall be initiated by the Unit Manager and forwarded to the Corrections Classification and Program Manager (CCPM), DSCS, DSFM, Facility Manager, the ***EDSI***/Regional Deputy Secretary, and the Executive Deputy Secretary indicating approval/disapproval to place an inmate on the RRL.

4.   The Executive Deputy Secretary will review the recommendation; indicate his/her approval or disapproval, and forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Secretary/designee for review. The Secretary/designee will make the final determination regarding the inmate's placement on the RRL.

5.   The completed **Restricted Release List Placement/Annual RRL Review/Removal Request Form** will be forwarded to the Office of Population Management (OPM).

   a.   If the request is approved, the OPM will update the RRL on ***Intranet*** and make a notation in the Unit Management System, under the "Security Concerns" section. The reason the inmate was assigned to the RRL will be included.

   b.   If the request is disapproved, the OPM will file the request.

6.   If placement on the RRL is approved and an H Code has not been assigned, the counselor will initiate the **DC-46, Vote Sheet** for this purpose, in accordance with Department policy **11.2.1, "Reception and Classification," Section 3**.

7.   Release of an inmate on the RRL shall be in accordance with **Section 4** of this procedures manual.

Issued: 4/16/2019
Effective: 4/23/2019

## Section 2 – Administrative Hearings

Adherence to the guidelines set forth in **Section 1, Subsection A.** of this procedures manual shall occur when inmates at a high risk for sexual victimization or inmates *who* have alleged *sexual* abuse are involuntarily placed into Protective Custody (PC) after a determination has been made that no other available alternative means of separation *exist* from likely abusers. *(28 C.F.R. §115.43)*

### A. General

An administrative hearing shall be conducted as outlined below.

1. The hearing shall be conducted by the Program Review Committee (PRC).

   *When an inmate is placed into involuntary Administrative Custody (AC) due to high risk for sexual victimization or after allegedly suffering sexual abuse, the hearing shall take place within 24 hours of placement or the next business day.*

2. The reason(s) for the inmate's AC confinement must be explained to the inmate *in writing and the inmate must be provided with the DC-141, Part 1, Other Report.*

   *When an inmate is placed into involuntary AC due to high risk for sexual victimization or after allegedly suffering sexual abuse, the DC-141, Part 1, must articulate: (28 C.F.R. §115.43[d])*

   a. *the basis for the staff member's concern for the inmate's safety; (28 C.F.R. §115.43[d][1]);*

   b. *the other alternative means of separation that were explored; and*

   c. *the reason why no alternative means of separation can be arranged. (28 C.F.R. §115.43[d][2]).*

3. When the inmate is in AC status as pre-hearing confinement on a misconduct charge, an administrative hearing *shall* not be held, provided a hearing on the misconduct charge is held within seven work days, excluding weekends and State holidays, and the misconduct charge is disposed of at that hearing. An inmate request for a continuance of the disciplinary hearing is an automatic waiver of the hearing on the reason(s) for pre-hearing confinement. In all other cases, except as noted in **Subsection A.4. below**. The **administrative** hearing shall be scheduled within seven work days, excluding weekends and State holidays, after AC placement.

4. Confinement in AC status for investigative purposes shall not exceed 15 calendar days. The Facility Manager/designee may approve one 15-calendar day continuation of confinement if the investigation has not been completed. The reason for the continuation shall be documented, and a copy *shall be* provided to the inmate. Following the 30-calendar day period, if the inmate remains in AC status, he/she must be charged with a

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 2 – Administrative Hearings*

misconduct, and a hearing *shall be* held within seven work days, excluding weekends and State holidays. If the investigation *raises* a security concern, as outlined in **Section 1** of this procedures manual, but the evidence is not sufficient for *issuing* a misconduct, the inmate may be scheduled for a hearing to determine if further AC placement is necessary, upon expiration of the 30 calendar days.

5.  The rationale for the AC placement shall be read and explained to the inmate.

6.  The inmate shall be permitted to respond to the rationale for AC placement. The inmate may *submit* his/her version orally or in writing. A PRC member shall write a summary of any relevant oral statement *submitted* by the inmate.

7.  The PRC's decision shall be based on some evidence as to whether a valid security reason *exists* to confine the inmate in AC as defined in **Section 1** of this procedures manual.

8.  A written summary of the hearing shall be prepared *by the PRC* on the **DC-141, Part 3, PRC Action**. *The summary* shall include the reason(s) relied upon by the PRC to reach its decision. A copy of the written summary shall be *provided* to the inmate.

9.  If, in the opinion of the PRC, the inmate is physically or mentally unable to attend or participate, the hearing shall be postponed until the inmate is able to attend and participate. The decision to postpone a hearing shall be documented on the **DC-141, Part 3** and shall be made close to the time the hearing would have been held.

10. *If the hearing is postponed because of an inmate's physical ability, the facility medical staff shall evaluate the inmate prior to the next PRC review, based on the procedures set forth in Subsection D. below, to determine if the inmate is able to attend.*

11. *If the hearing is postponed because of an inmate's mental ability, the PRC shall forward a DC-97, Mental Health Referral Form to the facility psychology staff for input regarding the inmate's ability to attend the hearing.*

12. *At the next PRC review, as set forth in Subsection D. below, the PRC shall consider the input from the completed DC-97 before determining if the inmate is unable to attend, or has refused to attend the hearing. An inmate may not* appeal the decision to postpone the hearing. If the inmate is able to attend and refuses, the hearing will be held in absentia. If the inmate becomes disruptive in the hearing or refuses to follow instructions, he/she shall be removed, and the hearing conducted without the inmate being present.

Issued: 10/31/2016
Effective: 11/14/2016

*DC-ADM 802, Administrative Custody Procedures Manual*
*Section 2 – Administrative Hearings*

**B. Waivers**

1. An inmate may voluntarily waive the hearing at any time prior to the hearing's completion. The inmate may also waive the written notice requirements ***and*** any time limitations relating to the hearing or the service of notice.

2. All ***voluntary*** waivers shall be in writing and shall be signed and dated by the inmate.

3. When an inmate requests self-confinement in AC status, such request shall be deemed a waiver of all procedures described in this ***manual*** except periodic PRC review. Only written notice of the reason for the AC placement is necessary.

4. ***A copy of the voluntary waiver for an inmate who was initially placed into involuntary AC due to high risk for sexual victimization or after allegedly suffering sexual abuse must be forwarded to the facility Prison Rape Elimination Act (PREA) Compliance Manager.***

5. An inmate's refusal to attend a hearing shall be deemed a waiver of the ***inmate's appearance at the hearing***. The refusal shall be documented on the **DC-141, Part 3**. The inmate may not appeal the results of a hearing he/she refused to attend.

**C. Appeals**

1. An inmate may appeal the decision of the PRC concerning his/her initial confinement in AC to the Facility Manager/designee within two ***work*** days of the completion of the hearing. The appeal must be in writing. The decision of the Facility Manager/designee ***shall*** be forwarded to the inmate within ten ***calendar*** days of the receipt of the appeal.

2. An inmate may appeal the initial decision of the Facility Manager/designee to the Office of the Chief Hearing Examiner. The inmate may appeal the decision of the Facility Manager/designee within seven calendar days of the receipt of the Facility Manager's/designee's decision. The appeal must be addressed as follows:

   > The Chief Hearing Examiner's Office
   > Office of Chief Counsel
   > 1920 Technology Parkway
   > Mechanicsburg, PA 17050

3. The Office of the Chief Hearing Examiner will review the record of the hearing and all other relevant documents and rule on the appeal within two work days after its receipt.

4. ***When*** the action of the PRC or the Facility Manager/designee is reversed, the Office of the Chief Hearing Examiner shall prepare a letter to the inmate and a memorandum to the Facility Manager/designee. ***The letter and memorandum*** will be forwarded to the appropriate Regional Deputy Secretary for review and signature.

Issued: 10/31/2016
Effective: 11/14/2016

### D. Periodic Review

1. The PRC shall review the status of each inmate in AC status every seven days for the first two months.[1]

2. Each inmate in AC status shall be seen weekly by his/her counselor.

3. The Unit Management Team shall review the status of every inmate in AC after 30 days and every 30 days thereafter.[2]

4. The counselor's weekly interviews and the Unit Management Team's monthly reviews are documented in the **DC-14, Cumulative Adjustment Record/Inmate Cumulative Adjustment Record (ICAR)**.

5. ***After the first 60 days,*** the PRC ***shall*** interview every inmate in AC status every 90 days unless the Unit Management Team recommends an earlier review. The PRC's decision to continue the inmate in AC status or release him/her to population ***should be*** documented on a **DC-141, Part 4, Facility Manager's Review** with a copy provided to the inmate.

6. ***Inmates placed into involuntary AC due to high risk for sexual victimization or after allegedly suffering sexual abuse must continue to be reviewed by the PRC every 30 days (28 C.F.R. §115.43[e]).***

7. ***If the PRC decides to continue the inmate in AC following a 90-day review, the inmate may appeal his/her continuation using the same procedures as described in Subsection C. above.***

8. When an inmate is being recommended for transfer to a Special Housing Unit (Special Management Unit [SMU], Secure Residential Treatment Unit [SRTU], ***Special Assessment Unit [SAU], etc.***), the PRC shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate ***shall*** be given the opportunity to respond ***in writing*** to the rationale given and object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the **DC-141, Part 4**, with a copy to the inmate. The inmate may appeal the recommendation for Special Housing Unit transfer to the Facility Manager/designee and ***to the Office of the Chief Hearing Examiner,*** as outlined in **Subsection C. above**.

9. A qualified psychologist or psychiatrist shall personally interview and conduct an assessment of any inmate remaining in AC status for more than 30 calendar days. If the inmate's confinement continues for ***more than 30 calendar days***, a mental health assessment ***shall*** be completed at least every 90 calendar days.[3]

---

[1] 4-4253
[2] 4-4253
[3] 4-4256

Issued: 10/31/2016
Effective: 11/14/2016

10. The review and approval/disapproval of each inmate's status on the Restricted Release List (RRL) *shall* be conducted annually. The assigned counselor shall initiate the **DC-46, Vote Sheet** for the purpose of Annual RRL Review at the time of the inmate's regularly scheduled annual review and ensure that an **ICAR** entry is completed to record the final outcome of the decision. The Unit Manager shall initiate a **Restricted Release List Placement/Annual RRL Review/Removal Request** (refer to **Section 1, Attachment 1-A** of this procedures manual) indicating Annual Review and either Request Removal or Continuation on RRL, to be routed at the time of the scheduled annual review. All annual RRL Reviews; **DC-46, Vote Sheets,** and **Restricted Release List Placement/Annual RRL Review/Removal Requests** *shall* be forwarded together to the Corrections Classification and Program Manager (CCPM), Deputy Superintendent for Centralized Services (DSCS), Deputy Superintendent for Facilities Management (DSFM), Facility Manager, Regional Deputy Secretary, and the Executive Deputy Secretary for review of the recommendation, indicating approval/disapproval.

    a. The Executive Deputy Secretary will forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Secretary/designee for review. The Secretary/designee *shall* make the final determination regarding the inmate's placement on the RRL.

    b. The completed **Restricted Release List Placement/Annual RRL Review/Removal Request Form** *shall* be forwarded to the Office of Population Management (OPM).

    c. If the Annual RRL Review is approved for continuation, the OPM *shall* file the request.

    d. If the Annual RRL Review is disapproved, the OPM *shall* update the RRL on DOCNet and remove the notation in the Unit Management System.

11. All issues concerning *the reason for* an inmate's placement in AC custody or the duration of his/her AC custody must be addressed through the procedures set forth in this *procedures manual* and may not be addressed through the procedures set forth in Department policies **DC-ADM 801, "Inmate Discipline"** or **DC-ADM 804, "Inmate Grievance System."** An inmate is required to raise any issue concerning *the reason for or* the duration of his/her AC custody during the regularly scheduled PRC review. The PRC's decision may be appealed through the procedures set forth in **Subsection C. above**. Issues concerning the failure of the PRC to conduct a timely initial AC placement hearing or a regularly scheduled review may be appealed to the Facility Manager and then to the Chief Hearing Examiner under the procedures set forth in **Subsection C. above**. The granting or denial of privileges may not be appealed.

12. ***Conditions or other circumstances of the inmate's AC status, other than reason or duration, must be addressed through the grievance process set forth in Department policy DC-ADM 804.***

## Section 3 – Administrative Custody Housing Status[1]

Adherence to the guidelines set forth in **Section 1, Subsection A.** of this procedures manual shall occur when inmates at a high risk for sexual victimization or inmates *who* have alleged *sexual* abuse are involuntarily placed into Protective Custody (PC) after a determination has been made that no other available alternative means of separation *exist* from likely abusers. *(28 C.F.R. §115.43)*

### A. General[2]

1. Administrative Custody (AC) is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population. An inmate confined in this status shall not have the *same* privileges available *as* in general population. An AC inmate who is assigned to a Special Housing Unit (Special Management Unit [SMU], Secure Residential Treatment Unit [SRTU], Special Assessment Unit [SAU], etc.) shall have privileges as defined within the unit's handbook and *as permitted* according to the inmate's program level.

2. The following conditions apply to an inmate in AC status in a regular Security Level 5 (SL5) Housing Unit:

   a. *no* tobacco products;

   b. *initially,* no radio, **tablets/kiosk access,** television, or telephone calls (except emergency or legal telephone calls) in accordance with Department policies **DC-ADM 818, "Automated Inmate Telephone System"** and **6.5.1, "Administration of Security Level 5 Housing Units;"**

   c. any combination of personal property that will fit into one standard-size records center box may be maintained in the cell. Personal property includes commissary, prescribed medication, and written materials in accordance with Department policy **DC-ADM 803, "Inmate Mail and Incoming Publications;"**[3]

   d. all visits are non-contact in accordance with Department policies **DC-ADM 812, "Inmate Visiting Privileges"** and **6.5.1**; and

   e. an inmate shall be permitted to exchange legal materials from his/her cell with stored legal materials once every 30 days. The Program Review Committee (PRC) may authorize more frequent exchanges based upon a demonstrated need for additional exchanges for active litigation. Such exchanges, however, may not exceed one per week.[4]

---

[1] 4-4249

[2] 4-4140

[3] 4-4269

[4] 4-4268

Issued: 10/31/2016
Effective: 11/14/2016

3. An inmate shall be provided access to the facility law library in accordance with Department policy **DC-ADM 007, "Access to Provided Legal Services."**[5]

4. Leisure reading material may be requested from the library on a weekly basis.

5. A jumpsuit, footwear, and basic issue toilet articles shall be provided. Two sets of personal undergarments are permitted. Outerwear will be provided as needed. No other personal apparel is permitted.

6. Exercise shall be offered one hour per day, five days per week.[6]

7. The opportunity to shower and shave shall be offered three times per week.

8. ***For any inmate placed into involuntary AC due to high risk for sexual victimization or after allegedly suffering sexual abuse, the facility shall document the following information for limiting the privileges enumerated in Subsection A. 2-7 above on the Involuntary Administrative Custody Services Access Restriction Form (refer to Section 2 of Department policy DC-ADM 008, "Prison Rape Elimination Act [PREA]") to specify:***

   a. ***the specific opportunities that have been limited; (28 C.F.R. §115.43[b][1])***

   b. ***the duration of the limitation; and (28 C.F.R. §115.43[b][2])***

   c. ***the reasons for such limitations. (28 C.F.R. §115.43[b][3])***

9. The PRC or SL5 Unit Management Team may approve additional privileges based on individual needs, safety and security, and the behavioral progress of the inmate. The approval of additional privileges shall be indicated on the **Inmate Cumulative Adjustment Record (ICAR)**.

   a. An inmate who has been approved for additional privileges at one facility ***shall*** retain ***such*** privileges if transferred, unless the receiving PRC or SL5 Unit Management Team provides a ***written*** justification outlining the rationale to reduce the ***additional*** privileges previously granted. An inmate placed in special programs, i.e., SMU, SRTU, SAU, etc. ***shall*** follow specific program guidelines.

   b. To standardize eligibility periods for additionally approved items, the periods listed in **Subsection A.*10.* below** shall be used. The PRC or SL5 Unit Management Team may deviate from the below-listed procedures. A written justification shall be provided outlining the rationale for the deviation. The rationale for the deviation is to be recorded in the **DC-141, Part 3, Program Review Committee Action Form**, and notated in the **DC-17X, Adjustment Record for SL5 Inmates**, and the **ICAR**.

---

[5] 4-4268
[6] 4-4270

Issued: 10/31/2016
Effective: 11/14/2016

10. Privilege Timeframe Procedures

An inmate is considered eligible for additional privileges according to the progressive procedures identified below after the PRC or the SL5 Unit Management Team has reviewed the circumstance(s) for the AC placement. The inmate must have demonstrated positive behavior during the review period and be free of misconducts during the period leading up to consideration.

a. Increased telephone calls – after 90 days on AC status.

b. Increased commissary – after 90 days on AC status.

c. A radio **and/or tablet and kiosk access** – after 120 days on AC status.

d. A television – after 190 days on AC status.

e. An inmate assigned to the Restricted Release List (RRL) on AC status may be considered for PRC-approved privileges after 90 days from the time he/she is assigned to the RRL.

f. An inmate in long term AC status may be eligible for the General Labor Pool (GLP) compensation after 180 days with the **approval** of the Unit Management Team and PRC (GLP should only be considered when the inmate's long term AC confinement is based upon the facility's need for increased control). An inmate who is granted PC should not be considered as eligible. This **provision** applies to PC that is **because of** the inmate's actions, as opposed to a true need for protection (such as a sexual assault victim, a physical assault victim, former law enforcement officer, etc.). When an inmate who is receiving GLP compensation is transferred, he/she **shall** be reviewed for continued GLP compensation **by PRC/designee** upon arrival at the receiving facility.

(1) This **section** does not apply to an inmate housed in a SL5 specialized program. Compensation for an inmate housed in a SL5 specialized program shall be in accordance with Department policy **6.5.1**.

(2) The inmate must comply with the GLP requirements in accordance with Department policy **DC-ADM 816, "Inmate Compensation."** He/she must maintain an acceptable level of personal hygiene, **keep** the cleanliness of his/her living quarters, and accept work assignments within the housing unit. The inmate must follow all rules, participate in recommended programs, and be willing to accept any employment or school assignment offered.

(3) The GLP compensation rate for an AC status inmate shall be $.50 a day. **But, if** he/she loses GLP status **because of** a misconduct or Unit Management Team action, **then** he/she **shall** receive the $.50 compensation rate when the PRC reinstates him/her to GLP status.

3-3

(4)   Any additional privilege(s), if permitted, may be revoked by the PRC or SL5 Unit Management Team based on a change in individual need, safety and security, or inappropriate behavior of the inmate. Revocations of a privilege(s) must be properly documented in a **DC-141, Part 3, DC-17X,** and **ICAR**. If the inmate receives a misconduct for a violation directly involving the granted privilege(s), the eligibility guidelines previously identified must be achieved prior to the privilege(s) being reinstated.

11.   The ***PRC's*** denial and/or revocation of privileges shall not be subject to the appeal process set forth in **Section 2** of this procedures manual.

## B.   Program Considerations[7]

An inmate housed in AC status should be provided access to programs and services that include, but are not limited to:

1.   educational services;

2.   commissary (in accordance with Department policy **DC-ADM 815, "Personal Property, State Issued Items, and Commissary/Outside Purchases"**);

3.   library services;

4.   casework, counseling, and diagnostic and classification services;

5.   religious guidance in accordance with Department policy **DC-ADM 819, "Religious Activities;"** and

6.   ***recreational programs.***

---

[7] 4-4273

Issued: 10/31/2016
Effective: 11/14/2016

## Section 4 – Release from Administrative Custody Status

Adherence to the guidelines set forth in **Section 1, Subsection A.** of this procedures manual shall occur when inmates at a high risk for sexual victimization or inmates who have alleged sexual abuse are involuntarily placed into Protective Custody (PC) after a determination has been made that no other available alternative means of separation exist from likely abusers. **(28 C.F.R. §115.43)**

### A. General

1. The Unit Management Team may recommend that the Program Review Committee (PRC) release an inmate from Administrative Custody (AC) status.[1]

2. With the exception of a Capital Case inmate or an inmate on the Restricted Release List (RRL), the Facility Manager/designee or the PRC may release an inmate from AC status to general population at any time.[2]

3. The following factors shall be evaluated in making a decision to continue or release an inmate from AC status:[3]

   a. length of time in Restricted Housing Unit (RHU);

   b. number, type, and frequency of misconducts;

   c. continued public or facility risk;

   d. safety of the inmate, other inmates, and staff;

   e. the inmate's behavior while in AC status, including sanitation, personal hygiene/grooming, response to authority and other inmates, and to verbal and written orders; and

   f. recommendations of the unit and treatment staff.

4. The PRC or the Facility Manager/designee may release an inmate from PC to general population at any time when the rationale used for placing the inmate in PC status is no longer valid. The PRC or the Facility Manager/designee shall document the reasons for the release of the inmate from PC on a **DC-141, Part 3, Program Review Committee Action (Attachment 4-A)**.

5. Release from Psychiatric Observation Cell (POC), in accordance with Department policy **13.8.1, "Access to Mental Health Care," Section 3**.

---

[1] 5-4A-4254
[2] 5-4A-4254
[3] 5-4A-4254

Issued: 12/11/2018
Effective: 12/18/2018

    a. An inmate shall only be discharged from a POC upon being assessed face-to-face by the psychiatrist/Certified Registered Nurse Practitioner – Psychiatric Services (PCRNP) and only upon a written order by the psychiatrist/PCRNP. Verbal or telephone orders for discharge are not acceptable.

    b. The nursing supervisor shall ensure that the PRC is notified of planned POC discharges so that PRC may arrange for appropriate housing.

6. If the inmate's release from AC status involves a transfer from the facility, the following procedures are to be followed:

    a. the Facility Manager/designee shall make such a recommendation to the Director of the Office of Population Management (OPM) or designee via a transfer petition. The transfer petition rationale should include a recommendation regarding which facility, or other jurisdiction, would be best suited to house the inmate. The rationale should also include programming needs, as well as continuing security concerns; and

    b. OPM shall review the transfer petition and if approved, assign the inmate to an appropriate facility.

## B. Restricted Release List (RRL)

1. An inmate identified on the RRL may not be released from a Security Level 5 (SL5) Housing Unit or transferred to another facility without the written approval of the Secretary/designee.

2. The PRC may make a recommendation to the Facility Manager/designee if it is believed that an inmate on the RRL could be safely released to general population or to a Specialized Housing Unit.

3. If the Facility Manager recommends that an inmate be released from the RRL, the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** (refer to **Attachment 1-A** of this procedures manual) shall be completed requesting removal; it shall be forwarded, along with a current Psychological Evaluation, to the ***Executive Deputy Secretary for Institutional Operations (EDSI)***/Regional Deputy Secretary for review indicating approval/disapproval. The ***EDSI***/Regional Deputy Secretary shall forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Executive Deputy Secretary for review of the recommendation, indicating approval/disapproval.

4. The Executive Deputy Secretary will forward the **Restricted Release List Placement/Annual RRL Review/Removal Request Form** to the Secretary/designee. The Secretary/designee shall make the final determination regarding the inmate's removal from the RRL.

Issued: 12/11/2018
Effective: 12/18/2018

5.  If the recommendation to release the inmate is approved, the approval shall be forwarded to the OPM. The OPM shall update the RRL on DOCNet and remove the notation in the Unit Management System.

6.  ***The Facility Manager will determine if the inmate's RRL status can be suspended in order to proceed with the step down process. The recommendation to suspend the inmate's RRL status shall be forwarded to the EDSI/Regional Deputy Secretary's office for approval. The RRL suspension details will be outlined in memo form outlining the terms of suspension accompanying the RRL packet.***

Issued: 12/11/2018
Effective: 12/18/2018