# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HECTOR VARGAS TORRES, | No. 4:17-CV-01977 |
| Plaintiff, | (Judge Brann) |
| v. | |
| CAPT. B. HARRIS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### MAY 29, 2020

Plaintiff Hector Vargas Torres, a state prisoner confined at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment excessive force and failure to intervene claims against Defendants regarding his treatment while in a dry cell after ingesting a razor blade.[1] Presently before the Court are the parties' cross-motions for summary judgment, which are ripe for adjudication.[2] For the reasons that follow, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motions for summary judgment.

---

[1] Doc. 1.
[2] See Docs. 69 (Plaintiff's first motion for summary judgment), 81 (Plaintiff's second motion for summary judgment), 90 (Defendants' motion for summary judgment).  Despite requesting, and the Court granting, an extension of time to file an opposition, Plaintiff has failed to oppose Defendants' motion for summary judgment or to respond to their statement of facts.

## I.  FACTUAL BACKGROUND

Plaintiff initiated this civil action by complaint on October 30, 2017 against Defendants Harris, Wendle, Owens, Myers, and McCallister, asserting Eighth Amendment claims for excessive force and failure to intervene, along with state law claims regarding Plaintiff's treatment while in a dry cell at SCI Huntingdon.[3]

The Pennsylvania Department of Corrections has a policy regarding the placement of inmates in a dry cell.[4] According to DOC Policy and Procedure 6.3.1, an inmate may be placed in a dry cell when he has ingested an item.[5] Upon placement in a dry cell, the inmate is handcuffed to the bed by arm to the bunk furthest away from the toilet.[6] The medical department examines the restraint to ensure proper circulation.[7] Every two hours, the handcuffs must be removed so that the inmate can exercise his arm.[8] Even if an inmate refuses the exercise, the medical department must check an inmate's circulation.[9] These checks are called "dry cell exercises" and are recorded on video.[10]

---

[3] Doc. 1.
[4] Doc. 91 at 3-4.
[5] *Id.*
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

On April 18, 2017, Plaintiff swallowed a razor blade and went to the hospital.[11] The razor blade was not removed at the hospital.[12] Therefore, when he was returned to SCI Huntingdon, he was placed in a dry cell and secured to the wall.[13] On that day at approximately 6:30 a.m. Plaintiff was scheduled for a dry cell exercise.[14] A team consisting of Defendants Owens, Myers, and Wendle, Officer Barger, and LPN Wagman was assembled to perform this task.[15] Plaintiff did not want to exercise.[16] The team entered the dry cell to attempt to check his circulation.[17] Plaintiff was covered with a blanket and did not comply with the several attempts to check his circulation.[18] Defendant Owens used a control technique to secure Plaintiff's hand and to stop Plaintiff from pulling the blanket over his hand.[19] Defendants Owens and Myers attempted to remove the blanket covering Plaintiff when he became combative and struggled.[20] Defendants Owens and Myers then used a control technique to restrain him by securing his free arm and legs.[21]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 4-5.
[21] *Id.* at 5.

During this first dry cell exercise, Plaintiff was not struck, slapped, or punched, and he did not he have his head banged off the bunk or the wall.[22] This dry cell exercise was recorded on video.

Two hours later, at approximately 8:30 a.m., Plaintiff was scheduled for another dry cell exercise.[23] He again did not want to exercise, and became verbally combative.[24] He began yelling "assault" as soon as his door was open and before the officers were in his cell.[25] Plaintiff became resistant after Defendants Owens and Myers removed the blanket.[26] Defendants Owens and Myers again used control techniques to restrain his free arm and legs.[27] After the attempted circulation check, the officers began to walk away when Defendant Myers retrieved something he had dropped.[28] Plaintiff then jumped up and in the direction of Defendant Myers, and Defendant Owens pushed Plaintiff away.[29] Plaintiff was not struck, slapped, or punched, and did not have his head slammed off the bunk.[30] This second dry cell exercise was also recorded on video.

Plaintiff has provided two declarations and two statements of facts to support his motions for summary judgment. In Plaintiff's various statements of facts,

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

Plaintiff simply references the "assault" and various things other prison officials did or did not do, such as: Defendant Captain Harris refused to investigate the incident of assault; Defendant "McCallister saw the assault on Plaintiff . . . and refuse[d] to help or call for help;"[31] or that the Defendants "did observe[] Plaintiff being assaulted."[32] At no point does Plaintiff's description of the "assault" vary from what is depicted on the videos submitted by Defendants or what is contained in their statement of facts.  Rather, Plaintiff's facts attempt to describe the legal import of what is depicted on the video and what Plaintiff described as the "assault."

## II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[33]  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[34]  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[35]  The Court should view the facts in the light most favorable to the non-

---

[31] *See* Doc. 71
[32] Doc. 72. *See also* Docs. 82 (declaration attached to second motion for summary judgment), 83 (statement of facts attached to second motion for summary judgment).
[33] Fed. R. Civ. P. 56(c).
[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[35] *Id.* at 250.

moving party and make all reasonable inferences in that party's favor.[36] When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[37]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[38] Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[39] "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[40] "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[41]

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[42] Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the

---

[36] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[37] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[38] *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).
[39] *Anderson*, 477 U.S. at 257.
[40] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[41] Fed. R. Civ. P. 56(e)(2)-(3).
[42] *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[43]

Here, Plaintiff has failed to oppose the motion or the facts asserted in Defendants' statement of facts. Pursuant to Rule 56(e),[44] the Court has reviewed the facts contained in the statement of facts as well as each fact's citation to the record and will consider each fact undisputed.[45] Further, as the Court has noted *supra*, none of the "facts" alleged by Plaintiff in his statements of facts dispute or contradict Defendants' statement of facts. Simply describing what physical contact occurred as an "assault" does not create a dispute of fact, and a thorough and comprehensive review of the record makes clear that no material fact is in dispute as to the dispositive issues in this case. As such, summary judgment is appropriate.[46]

## III.  DISCUSSION

Plaintiff has brought his Eighth Amendment excessive force and failure to intervene claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

---

[43] *Celotex Corp.*, 477 U.S. at 322.
[44] *See* Fed. R. Civ. P. 56(e)(1).
[45] *See* Fed. R. Civ. P. 56(e)(2).
[46] *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").

party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[47] "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[48]

### A. Excessive Force Claim

The Eighth Amendment prohibits cruel and unusual punishment, such as the unnecessary and wanton infliction of pain by prison officials, including the application of excessive force against inmates by prison officials.[49] The relevant inquiry in evaluating a claim of excessive force by prison guards is whether the force used was applied in good faith to maintain or restore discipline, or sadistically or maliciously to cause harm.[50] The Supreme Court of the Unite States has set forth a number of factors that must be considered in evaluating the use of force by prison officials.[51] These include the extent of any injury to the prisoner, as well as "the

---

[47] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[48] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
[49] *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).
[50] *Hudson*, 503 U.S. at 6–7.
[51] *Whitley*, 475 U.S. at 319.

need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response."[52]

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[53] Deference must be given to prison officials' adoption of policies to restore order and discipline.[54] Finally, a *de minimus* use of force is not excessive force.[55]

Because analysis of an Eighth Amendment excessive force claim includes issues of motivation, excessive force claims often turn on factual disputes which cannot be resolved as a matter of law. Summary judgment in favor of a defendant is thus not appropriate if "it appears that the evidence, viewed in the light most

---

[52] *Id. See also Hudson*, 503 U.S. at 8; *Giles v. Kearney*, 571 F.3d 318, 328 (2009); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).
[53] *Graham v. Connor*, 490 U.S. 386, 396–7 (1989).
[54] *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).
[55] *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.") (concluding that punching an inmate in shoulder who looked as if he were about to spit on the officer was a *de minimus* use of force). *See also Taylor v. Sanders*, 2012 WL 4104871, at *7 (M.D. Pa. Sept. 18, 2012) (concluding that pushes from behind and physical contact on the back without evidence of injury is *de minimus* use of force).

favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain."[56]

That is not the case here. The undisputed facts and video evidence plainly demonstrate that while physical contact did occur between Defendants and Plaintiff, it was minimal, necessary, and for the benefit, health, and safety of Plaintiff. Plaintiff was given every opportunity to comply with the dry cell exercise, and his response was obstructive, combative, and non-compliant. The physical contact was used in good faith and lasted only moments; it was necessary so that Plaintiff's circulation could be checked.

Notably, Plaintiff has described no physical injuries resulting from this contact. While not explicit in the statement of facts, it would be a reasonable inference to conclude that greater injury might have occurred had Plaintiff's circulation been compromised but was not discovered because Defendants complied with Plaintiff's wishes not to undergo the dry cell exercise. The undisputed facts demonstrate that as a matter law any force used was *de minimus*, and the facts fail to establish as a matter of law even an inference of a sadistic or malicious motive. Therefore, the Court will grant summary judgment in favor of Defendants and against Plaintiff as to the claim of excessive force.

---

[56] *Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322).

### B. Failure to Intervene Claim

Courts recognize a closely related Eighth Amendment cause of action based upon a failure to intervene when other prison officials use excessive force. According to the United States Court of Appeals for the Third Circuit, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."[57] To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene."[58] "Additionally, it is plaintiff's burden to adduce evidence of [these] requirements."[59]

Here, the undisputed facts cannot establish a failure to intervene claim as a matter of law. Defendants had no duty to intervene, because at no point did any excessive force occur. Further, as Defendants point out, the physical force used lasted only seconds, and thus, even if the force were excessive, Defendants lacked a

---

[57] *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).
[58] *Knauss v. Shannon*, No. 08-cv-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010) (citing *Smith*, 293 F.3d at 650–51).
[59] *Smith v. Donate*, No. 10-cv-2133, 2012 WL 3537017, at *9 (M.D. Pa. June 15, 2012) (quoting *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 433 (D. Del. 2007)). *See also Gainor v. Douglas County, Ga.*, 59 F. Supp. 2d 1259, 1289 (N.D. Ga. 1998) ("[P]laintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.").

"realistic and reasonable" opportunity to intervene.[60] As such, the Court will grant summary judgment in favor of Defendants, and against Plaintiff on the failure to intervene claim.

### C. Remaining State Law Claim Claims

Having determined that Plaintiff has failed to raise genuine issues of material fact on his federal claims under 42 U.S.C. § 1983, the claims which remain present issues of state constitutional, statutory, and common law, over which this court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[61] Specifically, Plaintiff asserts a claim for negligent failure to protect.[62] The Court will exercise its discretion and will decline to exercise supplemental jurisdiction over this state law claim.

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."[63] "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants."[64] Additionally, federal courts should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter

---

[60] *See Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018); *Smith*, 293 F.3d at 651.
[61] There appears to be no diversity of citizenship between Plaintiff and the Defendants so jurisdiction under § 1332 cannot lie independently, separate and apart from the federal claims.
[62] *See* Doc. 1.
[63] 28 U.S.C. § 1367(c)(3).
[64] *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).

of comity and to promote justice between the parties."[65] Declining to exercise supplemental jurisdiction is especially warranted when the case calls for interpreting a state constitution.[66] Further, the Third Circuit has recognized that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.[67]

Because Plaintiff's remaining claim concerns interpretations of Pennsylvania law, and the federal claims have been dismissed before trial, the prudent course is to decline to exercise supplemental jurisdiction over those claims. For these reasons, the Court will dismiss Plaintiff's state law claim without prejudice, for lack of jurisdiction, in accordance with 28 U.S.C. § 1367(c)(1).

---

[65] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).
[66] *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 963 F. Supp. 395, 408 (D.N.J. 1997).
[67] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). *See also* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

## IV. CONCLUSION

Based on the foregoing, the Court will grant the Defendants' motion for summary judgment and deny the Plaintiff's motions for summary judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge